**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES E. ANDERSON, Trustee on behalf of PAINTER'S DISTRICT COUNCIL NO. 30 HEALTH AND WELFARE FUND, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 08 CV 1934 |
| JJ INTERIOR SPECIALTIES, INC. AND NORWOOD COMMERCIAL CONTRACTORS, INC. | ) ) ) ) | Judge St. Eve |
| | | Magistrate Judge Denlow |
| Defendants Third-Party Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, et al., | ) ) ) ) | |
| Third-Party Defendants | ) ) | |

### THIRD-PARTY DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

Third-Party Defendants, CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, et al., by and through their attorneys, Terrance B. McGann and Karen M. Rioux, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully move this Court to dismiss the Amended Third-Party Complaint for failure to state a claim upon which relief can be granted. In support of this Motion, Third-Party Defendants state as follows:

### BACKGROUND

1.    JJ Interiors is signatory to a collective bargaining agreement with the Chicago Regional Council of Carpenters that requires signatory contractors to make contributions to the

Trust Funds for each hour worked by its carpenter employees. (Exhibit A) On March 2, 2006, Trustees of the Chicago Regional Council of Carpenters, filed suit against JJ Interiors and Norwood Commercial Contractors, alleging that Norwood was the alter ego of JJ Interiors, and was therefore bound to the terms and provisions of the collective bargaining agreement between JJ Interiors and the Chicago Regional Council of Carpenters. (Case Number 06 C 1145).

2.      After filing suit and obtaining the books and records of Norwood Commercial Contractors, the Fund's auditors issued a report of preliminary findings for the time period of January 1, 2003 through June 30, 2005, detailing the delinquent contributions owed to the Carpenters' Trust Funds for bargaining unit work performed by the employees of JJ Interiors and Norwood. (Exhibit B, JJ/Norwood Audit, 1/03-6/05)

3.      On October 17, 2007, the parties participated in a settlement conference with Judge Denlow. As a result of the settlement conference, the parties reached an agreement regarding any and all alleged past due contributions for the hours worked by both JJ and Norwood employees. A portion of the hours worked by Ralph Tamez and James Earnest were included in the parties' settlement of JJ/Norwood's delinquent contributions for the period of January 1, 2003 through June 30, 2005. In addition to settling the amount of contributions owed as a result of the first audit, the parties agreed that there would be a second audit covering the period of July, 2005 through December, 2007.

4.      The hours worked by Abel Mariscal were not included in the Carpenters' first audit, and were not part of the delinquent contributions paid by JJ/Norwood pursuant to the Settlement Agreement. Mr. Mariscal's hours were, however, included in the second audit of JJ/Norwood, covering the period of July 1, 2005 through December 31, 2007. The second audit was completed on April 15, 2008.

5.      JJ/Norwood disputed their liability for delinquent contributions for hours worked by their employees on behalf of Norwood, and refused to pay any of the delinquent contributions resulting from the second audit.

6.      On April 28, 2008, Trustees of the Painters District Council No. 30, filed suit against JJ Interior Specialties Inc. and Norwood Commercial Contractors, Inc. ("JJ/Norwood") to collect delinquent employee benefit fund contributions.

7.      As a result of the dispute over the terms of the Settlement Agreement, on April 29, 2008, the Carpenters' Trust Funds filed a Motion to Enforce the Settlement Agreement.  That same day, JJ/Norwood filed a Third-Party Complaint, alleging that the Carpenters' Trust Funds are liable to the Painters' Trust Funds for delinquent contributions for hours worked by Able Mariscal.  JJ/Norwood allege that they paid contributions on behalf of Abel Mariscal to the Carpenters' Trust Funds as a result of the Fund's first audit and the Painters' Funds have filed suit seeking delinquent contributions on behalf of Able Mariscal for the same time period. (Third-Party Complaint, ¶¶ 7, 8).

8.      The Carpenters' Trust Funds filed a Rule 12(b)(1) and 12(b)(6) Motion to Dismiss, arguing that there is no basis in the law for JJ/Norwood to seek reimbursement of trust fund contributions owed pursuant to their obligations under the collective bargaining agreement with the Carpenters Union.  The Carpenters' Trust Funds' Motion to Dismiss also argued that JJ/Norwood's claim for reimbursement for contributions paid on behalf of Abel Mariscal were premature because Mr. Mariscal's hours are part of an audit for which JJ/Norwood have not paid and for which their liability was in dispute.

9.      In light of the arguments made in the Carpenters' Trust Funds' Motion to Dismiss, JJ/Norwood filed an Amended Third-Party Compliant seeking the reimbursement of

contributions made to the Carpenters Trust Funds on behalf of James Earnest and Ralph Tamez, which were paid by JJ/Norwood as part of a settlement agreement regarding the Carpenters' Trust Funds' first audit. In addition, JJ/Norwood's Amended Third-Party Complaint still seeks reimbursement for contributions on behalf Able Mariscal.

10.    On June 13, 2008, Judge Denlow denied the Carpenters' Trust Funds' Motion, ruling that the parties' Settlement Agreement does not include work performed on behalf of Norwood. As a result of Judge Denlow's Order, JJ/Norwood are not liable to the Carpenters' Trust Funds for delinquent contributions on behalf of Able Mariscal. (Exhibit C, Order dated 6/13/08).

## ARGUMENT

11.    JJ/Norwood's claim for reimbursement of contributions that they may have owed as a result of the Carpenters' Trust Funds' second audit must be dismissed in light of Judge Denlow's denial of the Funds' Motion to Enforce the Settlement Agreement. Paragraph 7 of JJ/Norwood's Amended Third-Party Complaint alleges that the Carpenters Trust Funds are attempting to collect contributions for work performed by Able Mariscal based on the second audit by the Carpenters' Trust Funds. In addition to the fact that JJ/Norwood's claim was premature, as argued in the Fund's first Motion to Dismiss, their claim for reimbursement is now moot. Judge Denlow's ruling states that the parties' Settlement Agreement did not encompass work performed on behalf of Norwood. Therefore, JJ/Norwood's claim for reimbursement of contributions that they never paid and are not liable to pay as a result of the Carpenters' Trust Fund's second audit, must be dismissed.

12.    With respect to JJ/Norwood's claim for reimbursement for contributions paid on behalf of Ralph Tamez and James Earnest, there is no basis in fact or law upon which relief can

be granted.  Therefore, the entire Amended Third-Party Complaint should be dismissed with prejudice.

13.     The contributions paid by JJ/Norwood to the Carpenters' Trust Funds for hours worked by Ralph Tamez and James Earnest, were paid as part of the settlement of the Carpenters' first audit.  ERISA does not establish a cause of action by which employers may seek to compel a refund of contributions.  *UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steel Workers of America*, 998 F.2d 509, 512-513 (7th Cir. 1993); *see also*, *Operating Engineers Local 139, et al., v. Fustafson Construction Corp.,* 258 F.3d 645, 651 (7th Cir. 2001).  The recovery of contributions mistakenly made can be attempted under a common law theory of restitution. *UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steel Workers of America*, 998 F.2d at 512-513.  However, "if restitution would be inequitable, as where the payor obtained a benefit that he intends to retain from the payment that he made and now seeks to take it back, it is refused."  *Operating Engineers Local 139, et al., v. Fustafson Construction Corp.,* 258 F.3d at 651.

14.     JJ/Norwood cannot recover contributions made on behalf of Ralph Tamez and James Earnest, or any other employees whose hours were included in the settlement of the first audit, because those contributions were not made by mistake.  The parties spent hours in Judge Denlow's courtroom working out the details of the settlement of the first audit.  The settlement discussions focused on the categories of employees included in the first audit.  Specifically, the parties agreed that JJ/Norwood would be responsible for delinquent contributions for employees who had, at one time, been reported to the Carpenters' Trust Funds and who had received payroll checks and cash disbursements from the non-signatory, Norwood Commercial Contractors, Inc. Those employees, who included Carpenters Union members, Ralph Tamez and James Earnest,

are denoted in the audit under "Discrepancy Code 503 and 503A." (Exhibit B).  The parties also agreed that individuals performing covered work, Codes 505 and 685, would be included in the settlement of the first audit.  JJ/Norwood were provided with a copy of the audit and could therefore identify the employees whose hours were part of the settlement.

15.    Further, to allow the recovery of the funds under a common law theory of restitution would be inequitable in the case at bar.  JJ/Norwood paid delinquent contributions on behalf of Ralph Tamez and James Earnest as part of the settlement of the first audit.  They obtained the benefit of the compromise of the Settlement Agreement, i.e. no further litigation with respect to the first audit.  Now, after obtaining that benefit, JJ/Norwood are now trying to take back the contributions that were part of that settlement.  Restitution should, therefore, be refused.  *Operating Engineers Local 139, et al., v. Fustafson Construction Corp.,* 258 F.3d at 651.

16.    JJ/Norwood's allegation that Ralph Tamez and James Earnest performed painting work is irrelevant and unsupported by the deposition testimony attached as Exhibit 5 to the Amended Third-Party Complaint.  Mr. Tamez's testified that **Joe Earnest** performed carpentry work and painting.  (Amended Third-Party Complaint, Ex. 6, Tamez Dep., p. 68, lines 12-22). Paragraph 8 of JJ/Norwood's Amended Third-Party Complaint seeks reimbursement for contributions made to the Carpenters' Trust Funds on behalf of **James Earnest** because he allegedly preformed non-bargaining unit work.  However, the testimony cited by JJ/Norwood does not support their allegation that either Tamez, or James Earnest, performed work other than carpentry work.

17.    Even assuming, *arguendo*, that Ralph Tamez or James Earnest performed some painting work in addition to the carpentry work they performed, JJ/Norwood are still obligated to

pay contributions "for each hour of the first one hundred and seventy-five (175) hours worked for an employer during each calendar month by all Employees who are covered by this Agreement." (Exhibit A, CBA, Articles XII, XIII and XIV).  The Collective Bargaining Agreement does not exclude contributions for hours worked performing non-bargaining unit work.  Therefore, even if Ralph Tamez and James Earnest preformed some non-bargaining unit work, JJ/Norwood are still obligated to pay fringe benefit contributions to the Carpenters' Trust Funds for each hour of the first one hundred and seventy-five (175) hours worked in a calendar month.  *Chicago District Council of Carpenters Pension Fund, et al., v. Exhibition Contractors Co. Inc.,* 618 F. Supp. 234 (N.D. Ill. 1985).

18.     Further, JJ/Norwood cannot evade its obligation to pay contributions pursuant to the terms of its collective bargaining agreement with the Carpenters Union by assigning work within the Carpenters Union's jurisdiction to nonunion employees or members of a different union.  *Trustees of the Glaziers Local Union No. 27, et al., v. Glas Masters Ltd.*, 99 Fed. Appx. 740, 741 (7th Cir. 2004).

19.     Neither ERISA, nor a common law theory of restitution, provides a basis upon which JJ/Norwood's claims for relief can be granted.  The allegations contained in JJ/Norwood's Amended Third-Party Complaint are without a basis in law or fact and, therefore, must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.


WHEREFORE, Third-Party Defendants pray that the Amended Third-Party Complaint be dismissed pursuant to 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,


By: /s/ Karen M. Rioux    _____
    One of the attorneys for Third-Party
    Defendants



Terrance B. McGann (6199967)
Raymond J. Sanguinetti (6244798)
Gregory N. Freerksen (0874612)
Karen M. Rioux (6279378)
Whitfield McGann & Ketterman
111 East Wacker Drive, Suite 2600
Chicago Illinois, 60601
(312) 251-9700 Fax (312) 251-9701

# EXHIBIT A

# CHICAGO REGIONAL COUNCIL OF CARPENTERS
## UNITED BROTHERHOOD OF CARPENTERS
## AND JOINERS OF AMERICA

# COMMERCIAL AREA AGREEMENT

## COOK, LAKE AND DUPAGE COUNTIES,
## IN ILLINOIS

## 2005 - 2008
## CONSTRUCTION DIVISION

Offices:

12 East Erie Street

Chicago, IL 60611

Telephone: (312) 787-3076

# INDEX

| Article | | Page |
|---|---|---|
| | Joint Agreement | 1 |
| I | Bargaining Unit | 1 |
| | Recognition | 2 |
| II | Union Security | 2 |
| III | Sub-Contracting | 3 |
| IV | Wages | 5 |
| | Show Up Time | 5 |
| | Minimum Hours After Work Commenced | 5 |
| V | Pay Day | 5 |
| | Pay on Termination of Employment | 6 |
| VI | Hours of Labor | 8 |
| | Transportation | 10 |
| VII | Shift Work | 11 |
| VIII | Insurance | 12 |
| IX | Safety | 12 |
| X | Job Steward | 12 |
| XI | Foreman | 14 |
| XII | Health and Welfare Fund | 14 |
| XIII | Pension Fund | 17 |
| XIV | Training Fund | 19 |
| XV | Bonding | 22 |
| XVI | Tools | 22 |
| XVII | Apprentices | 23 |
| XVIII | Settlement of Disputes | 25 |
| XIX | Use of Machinery, Tools and Factory Made Products | 27 |
| XX | Miscellaneous Provisions | 27 |
| XXI | Most Favored Nations | 32 |
| XXII | Pile Driving - Scope of Work | 34 |
| | Working Rules | 35 |
| | Territorial Jurisdiction | 37 |
| XXIII | Millwright - Working Rules | 37 |
| XXIV | Shingling, Siding and Insulating Mechanics General | 39 |
| | Claims and Jurisdiction of the Shingling Mechanic | 39 |
| | Claims and Jurisdiction of the Siding Mechanic | 39 |
| | Claims and Jurisdiction of the Insulating Mechanic | 39 |
| XXV | Installers of Floor and Wall Products | 40 |
| XXVI | Lathers - Scope of Work | 41 |
| | Lathers Working Rules | 42 |
| | Local Dues | 42 |
| | Registration Day | 43 |

2 of this Article, shall forfeit his right of employment, and the EMPLOYER shall, within three (3) working days of being notified by the UNION in writing as to the failure of an Employee to join the UNION or to maintain his membership therein, discharge such Employee. For this purpose the requirements of membership and maintaining membership shall be in accordance with State and Federal Laws. The EMPLOYER shall not be in default unless it fails to act within the required period after receipt of written notice. .

2.4    The EMPLOYER shall, on the day that he hires an Employee who is not a member of the UNION, notify the UNION, or the Job Steward of the name, address and date of initial employment of such Employee, as well as the jobsite. In the absence of a Job Steward, the EMPLOYER also agrees to advise the Employee of the provisions of this Article.

**ARTICLE III**
**SUB-CONTRACTING**

3.1    The parties hereto being in the Construction Industry qualify under the proviso of Section 8 (e) of the National Labor Relations Act, 1947 as amended.

3.2    EMPLOYER shall not contract or subcontract any work coming within the jurisdictional claims of the UNION to any person, firm or corporation not covered by a Collective Bargaining Agreement with the UNION, provided, however, that the provisions of this paragraph shall apply only to the contracting and subcontracting of work to be done at the site of construction, alteration, painting or repair of a building, structure or other work.

3.3    EMPLOYER, in recognition of the territorial and occupational jurisdiction of the UNION, shall not subcontract or contract out jobsite work coming within the jurisdiction of the Carpenters Union nor utilize on the jobsite the services of any other person, company or concern to perform such work that does not observe the same wages, fringe benefits, hours and conditions of employment as enjoyed by the Employees covered by this Agreement.

3.4    Any EMPLOYER who sublets any of the work coming within the jurisdiction of Carpenters shall assume the obligations of any subcontractor to the extent of Carpenter labor employed on work under contract with the EMPLOYER for prompt payment of Employee's Wages, Health and Welfare, Pension and Apprentice Training Contributions, including reasonable attorney fees incurred in enforcing the provisions hereof, provided the subcontractor is not bond-

-3-

5.3    In the event that an Employee does not receive the wages according to the foregoing, then in that event he shall be paid in addition thereto at the regular rate, all time he spends, (1) waiting to be paid, and/or (2) all time expended by him to receive his pay, but in no event less than one (1) hour of pay nor more than four (4) hours for any time so spent. Saturday, Sundays and National Holidays are excluded.

5.4    (a)    Employees working from a "Bos'ns Chair," or suspended from cables or ropes shall receive not less than twenty-five cents ($0.25) per hour above the applicable rate of journeyman's pay.

(b)    Employees required to work on or with any materials that are treated with any creosote materials, or acid that may cause rashes, burns, or toxic reaction, or are required to wear any type of special breathing apparatus as protection against inhalation of noxious gas or dust, shall not receive less than twenty-five cents ($0.25) per hour above the applicable rate of journeyman's pay.

(c)    The EMPLOYER shall furnish any necessary protective medication such as petroleum jelly, to prevent burns from said creosote or chemicals which may prove injurious to the skin. Gloves shall also be furnished by the EMPLOYER.

(d)    Nothing in this section of this Agreement (premium pay) shall be so construed as to prohibit the opening to arbitration between the EMPLOYER and the UNION at any time during the term of this Agreement of any work to be performed by Employees, of such nature as the UNION deems hazardous or which makes exceptional demands on an Employee's health and safety and thereby qualify for premium pay, which is not covered by Articles in this section.

(e)    In the event that the UNION notifies the EMPLOYER that certain work is hazardous in nature, as defined in sub-section (b) above, a determination shall be made to establish the wage scale as well as working conditions and such scale shall be retroactive to commencement of such hazardous work.

6.13    On all jobs where the Employees are required to use EMPLOYER transportation to the jobsite, wages shall commence at 8:00 a.m.

## ARTICLE VII
## SHIFT WORK

7.1    There shall not be more than one (1) shift of work (8:00 a.m. to 4:30 p.m.) performed in any one (1) day and at any one (1) site, except with UNION permission.

7.2    A pre-job conference shall take place between the President of the Carpenters Regional Council and the Business Representative of the district, wherein the work will be performed, and with the EMPLOYER or his representative before shift work will be allowed.

7.3    No shift work shall be permissible unless the shifts shall run a minimum of five (5) consecutive working days. When a jobsite qualifies for the use of a second and third shift the following shall be applicable:

(1)    The First Shift shall start at 8:00 a.m. and end at 4:30 p.m., which shall be eight (8) hours.

(2)    The Second Shift shall start at 4:30 p.m. and end at 12:00 midnight.

(3)    The Third Shift shall start at 12:00 midnight and end at 7:30 a.m.

(4)    The Second and Third Shifts shall receive eight (8) hours pay for seven (7) hours worked.

(5)    Lunch hours for shift work shall be:
First Shift - 12:00 noon to 12:30 p.m.
Second Shift - 8:30 p.m. to 9:00 p.m.
Third Shift - 4:00 a.m. to 4:30 a.m.

7.4    Employees required to work through their specified lunch hour shall be paid double time for that period.

7.5    Any work done in excess of eight (8) hours on the first shift and in excess of seven hours on the second shift and third shift shall be paid wages at the rate of double time.

7.6    All Employees working between the hours of 8:00 a.m. Saturday and 8:00 a.m. Monday shall be paid wages at the rate of double time.

7.7    No Employee shall work more than one (1) shift in any twenty-four hour period.

-11-

of the first one hundred and seventy-five (175) hours worked for an EMPLOYER during each calendar month by all of its Employees who are covered by this Agreement in amounts determined and allocated by the Executive Committee of the Union effective June 1, 2005, June 1, 2006 and June 1, 2007.

The one hundred seventy-five (175) hour cap will remain in effect throughout the term of this contract providing that the reserve does not fall below fifty-three percent (53%) of the previous twelve (12) months operating expenses of the Health and Welfare Fund. While the one hundred seventy-five (175) hour cap shall cease to be in effect on the last day of the Agreement, contributions for the month of May 2008 will be calculated as in the preceding month and not exceed one hundred seventy-five (175) hours.

12.2    The EMPLOYER agrees to be bound by the Agreement and Declaration of Trust establishing the Chicago Regional Council of Carpenters Health and Welfare Fund, by any present and future amendments thereto and irrevocably designates as his representative on the Board of Trustees such Trustees as are named in said Agreement and Declaration of Trust, as EMPLOYER Trustees, together with their successors selected in the manner provided in said Agreement and Declaration of Trust as it may be amended from time to time, and agrees to be bound by all action taken by said EMPLOYER Trustees pursuant to the said Agreement and Declaration of Trust as amended from time to time.

12.3    The contributions of the EMPLOYERS covered by this Agreement shall be used exclusively to provide group insurance and other related Health and Welfare Benefits for eligible Employees and/or their families in such form or amount as the Trustees of the Health and Welfare Fund may determine.

12.4    Payment of EMPLOYER contributions to the Health and Welfare Fund shall be made on the dates and in the manner and form prescribed by the Trust Agreement or as designated by the Trustees.

12.5    The said Health and Welfare Fund is and shall continue to be administered by an equal number of representatives of the EMPLOYERS and of the UNION pursuant to the Agreement and Declaration of Trust heretofore signed by the EMPLOYERS and the UNION, as now in effect and as it may be amended from time to time, in the manner provided in the

13.8    In the event that an EMPLOYER becomes delinquent in making any of the afore-said reports and payments and is so advised by formal notification in writing by the Administrative Fund Office, the EMPLOYER shall pay in addition to the amount due, reasonable fees of Certified Public Accountants as expressly used to establish the amount due, reasonable fees of Attorney in effectuating payment, and liquidated damages in an amount as determined in accordance with the Agreement and Declaration of Trust.

13.9    The EMPLOYER shall make contributions on behalf of each of its Employees employed by EMPLOYER in a management or supervisory position who is also engaged in work of a character falling within the jurisdiction covered by this Collective Bargaining Agreement in an amount of no less than one hundred and sixty (160) hours per month. Each such EMPLOYER shall execute a Participation Agreement with the Trustees of the Chicago Regional Council of Carpenters Pension Fund, upon the request of such Trustees, for such greater or lesser amounts of hours as the Trustees may deem appropriate.

13.10   The contributions referred to in this Article shall be paid with respect to all hours worked by an Employee covered by this Agreement irrespective of the geographical area where work is performed or the geographical jurisdiction of the UNION, provided that EMPLOYER shall not be required to pay contributions to the Chicago Regional Council of Carpenters Pension Fund for hours worked outside the geographical jurisdiction of the UNION if EMPLOYER is required to pay contributions to another multi-employer pension benefit fund based on such hours.

13.11   The collection of amounts due under this Article shall not be subject to the Settlement of Disputes procedures established in Article XVIII.

## ARTICLE XIV
## TRAINING FUND

14.1    Each EMPLOYER shall pay into the Chicago  Regional Council of Carpenters Apprentice Training Fund (hereafter referred to as "Training Fund") an amount per hour for each of the first one hundred and seventy-five (175) hours worked for an EMPLOYER during each cal-endar month by all Employees who are covered by this Agreement in amounts determined and

nish or rent any power operated tools, machinery, or equipment, to be used on any work to be per-
formed by his EMPLOYER.

16.2    EMPLOYER shall provide, for the exclusive use of Carpenters, suitable lighted
and heated places for them to eat and change their clothes.

16.3    EMPLOYER shall also provide a safe and secure place, on the job, for the storage
of tools, shoes and clothing, both during and after working hours, however, the EMPLOYER shall
replace or pay for the loss of any tools, shoes, clothing, but in no event shall the EMPLOYER pay
more than two thousand five hundred ($2,500.00) dollars for each Employee. On the request of
the EMPLOYER it shall be the responsibility of the Employee, when storing tools, to furnish a
list of tools and indicate the estimated value of such tools on forms supplied by the EMPLOYER.
A duplicate copy of said list shall be given to the Employee signed by Management.

16.4    EMPLOYER shall furnish and make available at the jobsite all equipment gener-
ally and customarily used to sharpen the various tools used by Employees hereunder, but not
including hand saws. Except for hand saws, sharpening of his own tools shall be the choice of the
Employee at all times although the Employee may, if he chooses, permit his tools to be sharpened
other than on the jobsite by and at the expense of the EMPLOYER. Employees may sharpen tools
during working hours, and the time thereby used shall be considered time worked. Hand saws
may be sharpened other than at the jobsite by and at the expense of the EMPLOYER. Any auto-
matic equipment provided by the EMPLOYER on the jobsite for the purpose of sharpening tools
(e.g. Foley Filer) shall be operated by a member of the Bargaining Unit.

### ARTICLE XVII
### APPRENTICES

17.1    Every EMPLOYER who employs an average of five (5) Journeymen during six
(6) months of a twelve (12) month period must employ one (1) Apprentice for every three (3)
Carpenters, but not more than five (5) Apprentices for each EMPLOYER on any one jobsite.
Additional Apprentices may be granted to any EMPLOYER upon proper application to the
Trustees of the Chicago Regional Council of Carpenters Apprentice Training Fund.

# INDEX

| Article | | Page |
|---|---|---|
| | Joint Agreement | 1 |
| I | Bargaining Unit | 1 |
| | Recognition | 2 |
| II | Union Security | 2 |
| III | Sub-Contracting | 3 |
| IV | Wages | 5 |
| | Show Up Time | 5 |
| | Minimum Hours After Work Commenced | 5 |
| V | Pay Day | 5 |
| | Pay on Termination of Employment | 6 |
| VI | Hours of Labor | 8 |
| | Transportation | 10 |
| VII | Shift Work | 11 |
| VIII | Insurance | 12 |
| IX | Safety | 12 |
| X | Job Steward | 12 |
| XI | Foreman | 14 |
| XII | Health and Welfare Fund | 14 |
| XIII | Pension Fund | 17 |
| XIV | Training Fund | 19 |
| XV | Bonding | 22 |
| XVI | Tools | 22 |
| XVII | Apprentices | 23 |
| XVIII | Settlement of Disputes | 25 |
| XIX | Use of Machinery, Tools and Factory Made Products | 27 |
| XX | Miscellaneous Provisions | 27 |
| XXI | Most Favored Nations | 32 |
| XXII | Pile Driving - Scope of Work | 34 |
| | Working Rules | 35 |
| | Territorial Jurisdiction | 37 |
| XXIII | Millwright - Working Rules | 37 |
| XXIV | Shingling, Siding and Insulating Mechanics General | 39 |
| | Claims and Jurisdiction of the Shingling Mechanic | 39 |
| | Claims and Jurisdiction of the Siding Mechanic | 39 |
| | Claims and Jurisdiction of the Insulating Mechanic | 39 |
| XXV | Installers of Floor and Wall Products | 40 |
| XXVI | Lathers - Scope of Work | 41 |
| | Lathers Working Rules | 42 |
| | Local Dues | 42 |
| | Registration Day | 43 |

|        | Rocklath ................................................. 43 |
|--------|----|
|        | Lather Territorial Jurisdiction ....................................... 43 |
| XXVII  | Dues Check-Off ..................................................... 43 |
| XXVIII | Industry Advancement Fund ........................................ 44 |
| XXIX   | Chicagoland Construction Safety Council .............................. 44 |
| XXX    | Construction Industry Service Corporation ........................... 45 |
| XXXI   | Market and Geographic Area Committee .............................. 45 |
| XXXII  | Substance Abuse and Recovery Program .............................. 47 |
| XXXIII | Divers and Diver Tenders |
|        | Scope of Work .................................................. 51 |
|        | Rates of Pay ................................................... 51 |
|        | Working Conditions ............................................. 52 |
|        | Training & Safety ............................................... 52 |
| XXXIV  | United Brotherhood of Carpenters National Fund ....................... 53 |
| XXXV   | Labor/Management Union Carpentry Cooperation Promotion Fund ........... 53 |
| XXXVI  | Savings Clause .................................................. 54 |

## JOINT AGREEMENT

THIS AGREEMENT is effective June 1, 2005, by and between the: MID-AMERICA REGIONAL BARGAINING ASSOCIATION, for and on behalf of the present and future members, together with such other employers who become signatory to this Agreement (referred to herein as "Employer or Employers") and the CHICAGO REGIONAL COUNCIL OF CARPENTERS, for and on behalf of the Local Unions under its jurisdiction in Cook, Lake and DuPage Counties, Illinois (hereinafter referred to as the "Union").

This Agreement shall be in full force and effect from June 1, 2005 through May 31, 2008.

NOW THEREFORE, it is hereby agreed as follows:

## ARTICLE I
## BARGAINING UNIT

1.1    The Bargaining Unit shall consist of all Journeymen, Foremen, Apprentices and Trainees engaged in work at the construction site covered by the occupational jurisdiction of the "UNION" including, but not limited to, the milling, fashioning, joining, assembling, erection, fastening or dismantling of all material of wood, plastic, metal, fiber, cork, and composition, and all other substitute materials; the handling, erecting, installing and dismantling of machinery and equipment, hydraulic jacking and raising, and the manufacturing of all material where the skill, knowledge and training of the Employees are required, either through the operation of machine or hand tools. The Bargaining Unit shall also consist of all Journeymen, Foremen, Apprentices and Trainees engaged in work as Carpenters and Joiners, Millwrights, Pile Drivers; Bridge Dock and Wharf Carpenters, Divers, Underpinners, and Timbermen and Core-drillers; Ship Wrights, Boat Builders and Ship Carpenters, Joiners and Caulkers, Cabinet Makers, Bench Hands, Stair Builders, Millmen, Wood and Resilient Floor Layers, and Finishers, Carpet Layers, Shinglers, Siders, Insulators, Acoustic and Dry Wall Applicators; Shorers and House Movers; Loggers, Lumber and Sawmill Workers; Casket and Coffin Makers; Furniture Workers, Reed and Rattan Workers; Shingle Weavers, Box Makers, Railroad Carpenters and Car Builders and Show, Display and Exhibition Workers and Lathers, regardless of material used; and all those engaged in the operation of wood working or the machinery required in the fashioning, milling or manufacturing of products used in the trade, or engaged as helpers to any of the above divisions or sub-

-1-

divisions, and the handling, erecting and installing material on any of the above divisions or sub-divisions; burning, welding, rigging and the use of any instrument or tool for layout work, incidental to the trade. When the term "Carpenter and Joiner" is used, it shall mean all the subdivisions of the Trade. However, the Union agrees that it will not interfere with existing practices of other unions affiliated with the Building Trades.

## RECOGNITION

1.2    The ASSOCIATION and the EMPLOYER recognizes the UNION as the sole and exclusive Bargaining Representative for the Employees, now or hereafter employed in the Bargaining Unit for the purpose of Collective Bargaining in respect to pay, wages, hours of employment, or other conditions of employment. All work covered by this Agreement shall be performed by the Employees in this Bargaining Unit.

1.3    Any Employee of this Bargaining Unit may perform any or all of the work described herein provided he observes the special rules as described for the particular subdivision or specialty of the trades.

1.4    The EMPLOYER and the UNION agree that neither party shall discriminate against any person directly or indirectly, in such matters as race, creed, color, sex, national origin, age or religion.

## ARTICLE II
## UNION SECURITY

2.1    Maintenance of Membership: All Employees now included in the Bargaining Unit represented by the UNION and having a membership therein must, during the term hereof, as a condition of employment maintain their membership in the UNION.

2.2    All other Employees covered by this Agreement shall, as a condition of employment, become members of the UNION after the seventh (7) day of, but not later than the eighth (8) day following the beginning of, such employment, or the effective date of this Agreement, whichever is later and they shall maintain such membership as a condition of continued employment as hereinafter provided.

2.3    Any Employee who refuses or fails to become a member of the UNION or refuses or fails to maintain his membership therein in accordance with the provisions of Sections 1 and

2 of this Article, shall forfeit his right of employment, and the EMPLOYER shall, within three (3) working days of being notified by the UNION in writing as to the failure of an Employee to join the UNION or to maintain his membership therein, discharge such Employee. For this purpose the requirements of membership and maintaining membership shall be in accordance with State and Federal Laws. The EMPLOYER shall not be in default unless it fails to act within the required period after receipt of written notice.

2.4    The EMPLOYER shall, on the day that he hires an Employee who is not a member of the UNION, notify the UNION, or the Job Steward of the name, address and date of initial employment of such Employee, as well as the jobsite. In the absence of a Job Steward, the EMPLOYER also agrees to advise the Employee of the provisions of this Article.

**ARTICLE III**
**SUB-CONTRACTING**

3.1    The parties hereto being in the Construction Industry qualify under the proviso of Section 8 (e) of the National Labor Relations Act, 1947 as amended.

3.2    EMPLOYER shall not contract or subcontract any work coming within the jurisdictional claims of the UNION to any person, firm or corporation not covered by a Collective Bargaining Agreement with the UNION, provided, however, that the provisions of this paragraph shall apply only to the contracting and subcontracting of work to be done at the site of construction, alteration, painting or repair of a building, structure or other work.

3.3    EMPLOYER, in recognition of the territorial and occupational jurisdiction of the UNION, shall not subcontract or contract out jobsite work coming within the jurisdiction of the Carpenters Union nor utilize on the jobsite the services of any other person, company or concern to perform such work that does not observe the same wages, fringe benefits, hours and conditions of employment as enjoyed by the Employees covered by this Agreement.

3.4    Any EMPLOYER who sublets any of the work coming within the jurisdiction of Carpenters shall assume the obligations of any subcontractor to the extent of Carpenter labor employed on work under contract with the EMPLOYER for prompt payment of Employee's Wages, Health and Welfare, Pension and Apprentice Training Contributions, including reasonable attorney fees incurred in enforcing the provisions hereof, provided the subcontractor is not bond-

-3-

ed as provided for in Article XV hereof. The UNION will, upon written request, furnish written certification to any EMPLOYER as to whether a subcontractor is adequately bonded including expiration date of bond, and that wages and payments to Health and Welfare, Pension and Apprentice Contributions are current. The UNION also agrees to notify M.A.R.B.A. of any subcontractor whose bond is being terminated. If the Employees are withdrawn from any job in order to collect contributions to the Carpenters Health and Welfare, Pension and Apprentice Training Program, the Employees who are affected by such stoppage of work shall be paid for lost time up to sixteen (16) hours, provided that two (2) days notice of the intention to remove Employees from the job is given to the EMPLOYER and the subcontractor by the UNION by registered mail.

       The EMPLOYER shall furnish the UNION with the names of its subcontractor(s) on each jobsite and with a copy of the subcontractors surety or cash bond agreement evidencing that such subcontractor(s) is obligated to this Agreement and has posted the bond required by Article XV. Such EMPLOYER, from the date the UNION receives such information and for the work performed on the specific referenced jobsite, will not be liable for the subcontractor's wage or fringe benefit obligation. If the UNION notifies the EMPLOYER in writing that the subcontractor is no longer properly bonded, then from that date and for work subsequently performed in the specific referenced jobsite the EMPLOYER'S liability under this section for such subsequent work will resume until such time as the proper bond has been replaced.

       3.5    If an EMPLOYER, bound by this Agreement, contracts or subcontracts any work covered by this Agreement to be done at the jobsite of the construction, alteration, painting or repair of a building, structure or other work to any person or proprietor who is not signatory to this Agreement, the EMPLOYER shall require such subcontractor to be bound by all the provisions of this Agreement, or the EMPLOYER shall maintain daily records of the subcontractor's or the subcontractor's Employees jobsite hours and be liable for payments to the Chicago Regional Council of Carpenters Welfare Fund, the Chicago Regional Council of Carpenters Pension Fund, the Chicago Regional Council of Carpenters Apprentice and Training Program, as provided in Articles XII, XIII and XIV of this Agreement.

## ARTICLE IV
## WAGES

4.1    The rate of wages shall be as follows:

(a)    Effective June 1, 2005 – Wages shall be $35.32 per hour.
Effective June 1, 2006 – $3.00 economic increase to be allocated by the Union.
Effective June 1, 2007 – $3.25 economic increase to be allocated by the Union.

The allocation among the wages and any other contribution shall be at the discretion of the Executive Committee of the UNION. Notice in writing of the allocation shall be given to the EMPLOYER by the UNION thirty (30) days prior to the effective date.

(b)    The Apprentice rates of wages shall be as follows:
1st Year 40% of Journeyman's Wages
2nd Year 50% of Journeyman's Wages
3rd Year 65% of Journeyman's Wages
4th Year 80% of Journeyman's Wages

### SHOW UP TIME

4.2    Any Employee reporting for work on direction of the EMPLOYER or in the course of the regular job schedule and not being put to work for any reason shall receive two (2) hours pay. Employees who are notified by the EMPLOYER not to report for work shall not be entitled to any pay under this provision. EMPLOYERS may notify Employees by telephone at least two (2) hours prior to the start of work not to report for work. Employees will be required to provide the EMPLOYER with a telephone number that can be used to notify them not to report for work.

### MINIMUM HOURS AFTER WORK COMMENCED

4.3    If an Employee commences work on a job the minimum pay he shall receive for that day shall be four (4) hours pay, except for conditions such as weather, fire, accident or other unavoidable cause beyond the control of the EMPLOYER.

## ARTICLE V
## PAY DAY

5.1    Employees shall be paid once each week, not later than 4:30 p.m. on the regularly established pay day, except in cases of holidays in which case they may be paid on the following work day. Wages are to be paid in full up to two (2) work days preceding the regular desig-

nated pay day. Wages may be paid by mail. If wages are to be paid by mail the paycheck must be received on or before the regularly established pay day. If the EMPLOYER fails to have sufficient funds for wages due, or for pay checks issued, he shall pay in addition thereto a sum equal to the costs incurred in collecting same, including reasonable attorney fees. If the EMPLOYER issues a check for the payment of wages or fringe benefits which is returned due to a lack of sufficient funds, the EMPLOYER shall be required to make all payments of wages and fringe benefits in cash or by certified check, and in addition the EMPLOYER will be required to reimburse each Employee for any charges assessed.

## PAY ON TERMINATION OF EMPLOYMENT

5.2     (a)     Involuntary Dismissal.

### By Discharge

EMPLOYER may discharge any Employee at any time on any working day provided, however, Employee is given fifteen (15) minutes with pay to gather his tools, and is immediately tendered in hand on the job all wages due him. The parties hereto agree that the payment procedure upon discharge, as outlined above, is a condition precedent to lawful discharge.

### By Lay-Off

When an Employee is laid off due to lack of work, he shall be paid immediately all wages due him to date and he shall receive at least one (1) hour notice prior to 4:30 p.m. In the event such notice is not given, EMPLOYER shall pay one (1) hour of wages in addition to all wages due him. However, when the one (1) hour penalty is in effect, then in that event the one (1) hour wages shall be mailed to the home of the Employee within a twenty-four (24) hour period. If he is not paid on the job at the time he is laid off, he shall be paid four (4) hours of additional pay all of which shall be included in his last pay check.

(b)     Voluntary Termination of Employment.

When an Employee quits his job on his own accord, he may be required to wait, at the option of the EMPLOYER, until the next regular pay day for the wages due him.

5.3     In the event that an Employee does not receive the wages according to the foregoing, then in that event he shall be paid in addition thereto at the regular rate, all time he spends, (1) waiting to be paid, and/or (2) all time expended by him to receive his pay, but in no event less than one (1) hour of pay nor more than four (4) hours for any time so spent. Saturday, Sundays and National Holidays are excluded.

5.4     (a)     Employees working from a "Bos'ns Chair," or suspended from cables or ropes shall receive not less than twenty-five cents ($0.25) per hour above the applicable rate of journeyman's pay.

(b)     Employees required to work on or with any materials that are treated with any creosote materials, or acid that may cause rashes, burns, or toxic reaction, or are required to wear any type of special breathing apparatus as protection against inhalation of noxious gas or dust, shall not receive less than twenty-five cents ($0.25) per hour above the applicable rate of journeyman's pay.

(c)     The EMPLOYER shall furnish any necessary protective medication such as petroleum jelly, to prevent burns from said creosote or chemicals which may prove injurious to the skin. Gloves shall also be furnished by the EMPLOYER.

(d)     Nothing in this section of this Agreement (premium pay) shall be so construed as to prohibit the opening to arbitration between the EMPLOYER and the UNION at any time during the term of this Agreement of any work to be performed by Employees, of such nature as the UNION deems hazardous or which makes exceptional demands on an Employee's health and safety and thereby qualify for premium pay, which is not covered by Articles in this section.

(e)     In the event that the UNION notifies the EMPLOYER that certain work is hazardous in nature, as defined in sub-section (b) above, a determination shall be made to establish the wage scale as well as working conditions and such scale shall be retroactive to commencement of such hazardous work.

## ARTICLE VI
## HOURS OF LABOR

6.1    (a)    Eight (8) hours shall constitute a regular day's work, Monday through Friday, beginning at 8:00 a.m. and ending at 4:30 p.m. with one-half (½) hour off from 12:00 noon to 12:30 p.m. for lunch. The lunch period may be adjusted at the EMPLOYER'S option during placement of concrete only, in any one-half (½) hour period between 12:00 noon and 1:00 p.m. The regular work day as described above may be adjusted for cause. In such event, the EMPLOYER must receive approval of the Business Representative of the district or the Regional Council of Carpenters prior to effecting the adjusted work day schedule and in no case should a job begin before 6:00 a.m.

(b)    Provided, however, upon twenty-four (24) hour written notice to Business Representative of the district or the Regional Council, the UNION will grant an adjusted work day which shall be at the option of the Employees upon certification of the Job Steward.

(c)    When work to be performed in occupied buildings is of such a nature that it is not appropriate or practical during the regular work day, such as renovation, alteration and modernization, such work may be performed at an adjusted time; provided a pre-job conference takes place between the Carpenters Regional Council and the EMPLOYER and permission is granted by the Carpenters Regional Council. Contractors utilizing the provision shall notify the Carpenters Regional Council by requesting the pre-job conference on the form provided by the Carpenters Regional Council. By mutual consent of the EMPLOYER and the UNION, the starting and quitting times of any shift, including day work, may be changed for all or any portion of a particular job. However, the adjusted shift shall run a minimum of five (5) consecutive days. All Employees working under this provision shall receive eight (8) hours pay for seven and one-half (7½) hours work. Any and all work in excess of seven and one half (7½) hours work in this provision shall be paid at a rate of double time. An EMPLOYER who violates this section shall pay as a penalty double time for all hours worked.

6.2    There shall be no work done on the following holidays designated herein or days celebrated as such, except with written approval of the UNION and when work is authorized, the rate of pay shall be at the rate of double time:

-8-

NEW YEAR'S DAY, MEMORIAL DAY, FOURTH OF JULY, LABOR DAY, THANKSGIVING DAY, CHRISTMAS DAY.

6.3     Overtime shall be paid for work done before and after the regular work day or the adjusted work day as defined above, except where shift work has been approved. Work performed between 8:00 a.m. and 4:30 p.m. on Saturday or during the first eight (8) hours of an approved adjusted work day on Saturday shall be paid at the rate of time and one-half (1½). Overtime pay for work performed after 4:30 p.m. on Saturday or after the first eight (8) hours of an approved adjusted work day on Saturday and the start of the regular or adjusted work day on Monday, shall be paid at the rate of double time. In the event that there is more than one (1) shift of work on Saturday, overtime pay for all hours of work on Saturday shall be paid at the rate of double time.

6.4     The first two (2) hours of overtime work after working a regular eight (8) hour work day or an approved adjusted work day, Monday through Friday, shall be paid for at the rate of time and one-half (1½) and shall not be mandatory but shall be at the option of the Employee. All other overtime shall be paid for at the rate of double time. At the discretion of the EMPLOY-ER overtime will be permitted for work as required for emergencies such as for the protection of life or property, weather protection, completion of work caused by breakdown of deliveries or failures in concrete form work. In all other cases, overtime work shall require permission of the Business Representative of the district or the Regional Council, for each such case.

6.5     All Employees shall be given time in which to gather their tools prior to quitting time.

6.6     The hours of work for which an Employee shall receive pay shall commence and terminate at the facility provided for Carpenters to change their clothes, provided however, that said facility is at ground level. In the event that such facility is other than at ground level, "time" shall commence and terminate at ground level.

6.7     When an Employee is directed either expressly or impliedly to go from one job-site to another, he shall be paid for all time spent in traveling from the initial site to any other site.

6.8     Employees who are required to work during the regularly defined lunch hour period shall eat no later than one (1) hour after the normal lunch period.

-9-

6.9     If an Employee covered by this Agreement sustains an accidental injury arising out of his employment which requires immediate medical care off the premises, during working hours, such Employee shall be paid his regular wages for the time necessarily spent in going to a physician's office, medical center or hospital, as well as the time required to return to the jobsite. Except in unusual circumstances, this provision shall be effective only on the date of injury, unless subsequent visits during working hours are required by EMPLOYER'S physician(s). When it is necessary for an Employee to be taken to a hospital immediately following an injury, he shall be taken to the hospital nearest to the jobsite at the EMPLOYER'S expense.

6.10    Safe and adequate transportation from a jobsite following an injury other than for a minor injury, shall be furnished by the EMPLOYER. The Job Steward shall be notified of all such injuries. If the Steward determines that someone must accompany the injured Employee to the hospital, medical center, physician's office, or Employee's home, the EMPLOYER shall select such person, who shall be compensated at his regular rate for such services. However, nothing contained in this Section 6.9 and Section 6.10 shall prevent an EMPLOYER from discharging an Employee for adequate cause.

In the event an Employee is injured in the course of his employment, he shall not be dismissed from such employment because of his injury, nor shall he be dismissed during the period of medical care required by said injury, unless there is no work available with his EMPLOYER of which he is capable to perform, or unless his dismissal is due to conditions beyond the control of the EMPLOYER.

### TRANSPORTATION

6.11    An Employee who is required to travel to a jobsite shall be reimbursed for lodging when required to remain away from his home overnight. The expense allowance for lodging for each night shall be a minimum of $50 per night.

6.12    On all mill jobs or other jobs where the men cannot drive to the jobsite the EMPLOYER shall furnish transportation to the jobsite when the distance is greater than 3/10ths of a mile.

-10-

6.13    On all jobs where the Employees are required to use EMPLOYER transportation to the jobsite, wages shall commence at 8:00 a.m.

## ARTICLE VII
## SHIFT WORK

7.1    There shall not be more than one (1) shift of work (8:00 a.m. to 4:30 p.m.) performed in any one (1) day and at any one (1) site, except with UNION permission.

7.2    A pre-job conference shall take place between the President of the Carpenters Regional Council and the Business Representative of the district, wherein the work will be performed, and with the EMPLOYER or his representative before shift work will be allowed.

7.3    No shift work shall be permissible unless the shifts shall run a minimum of five (5) consecutive working days. When a jobsite qualifies for the use of a second and third shift the following shall be applicable:

(1)    The First Shift shall start at 8:00 a.m. and end at 4:30 p.m., which shall be eight (8) hours.

(2)    The Second Shift shall start at 4:30 p.m. and end at 12:00 midnight.

(3)    The Third Shift shall start at 12:00 midnight and end at 7:30 a.m.

(4)    The Second and Third Shifts shall receive eight (8) hours pay for seven (7) hours worked.

(5)    Lunch hours for shift work shall be:
First Shift - 12:00 noon to 12:30 p.m.
Second Shift - 8:30 p.m. to 9:00 p.m.
Third Shift - 4:00 a.m. to 4:30 a.m.

7.4    Employees required to work through their specified lunch hour shall be paid double time for that period.

7.5    Any work done in excess of eight (8) hours on the first shift and in excess of seven hours on the second shift and third shift shall be paid wages at the rate of double time.

7.6    All Employees working between the hours of 8:00 a.m. Saturday and 8:00 a.m. Monday shall be paid wages at the rate of double time.

7.7    No Employee shall work more than one (1) shift in any twenty-four hour period.

-11-

7.8    In the event permissible shift work does not fulfill the requirements as stated above, except for conditions beyond EMPLOYER'S control, time worked will revert to premium wages for the second and third shift.

## ARTICLE VIII
## INSURANCE

8.1    EMPLOYER agrees to elect to be bound by the provisions of the Illinois Workmen's Occupational Diseases Act and shall furnish to the UNION a Certificate of Insurance covering all liability under such Act, and agrees to further furnish to the UNION a Certificate of Insurance from an insurance company authorized to do business in the State of Illinois covering liability under the provisions of the ILLINOIS Worker's Compensation Act.

8.2    It is agreed that all EMPLOYERS not otherwise required to pay contributions under the Illinois Unemployment Compensation Act, and regardless of the number of men employed, shall voluntarily elect to become subject thereto and liable for the payment of contributions thereunder.

## ARTICLE IX
## SAFETY

9.1    The EMPLOYER agrees to adhere to and comply with the provisions of OSHA, the Illinois Health and Safety Act; standards of the American Standards Association; the Safety Provision of the Walsh Healy Public Contracts Act; recommended practices of the National Safety Act; Local Building and Safety Codes and shall also comply with manufacturers' specifications for safe operations of equipment.

9.2    Should a Carpenter be required by law to accompany a Safety Inspector, City, State or Federal (O.S.H.A.) on a Safety Inspection of the jobsite, he shall do so with pay.

## ARTICLE X
## JOB STEWARD

10.1    The parties agree that the following basic principles apply to the selection of a Job Steward:

(1)    The UNION requires that a Steward must fully protect the interest of the UNION.

-12-

(2)    The EMPLOYER requires that the Steward be a Carpenter who can efficiently perform his duties as a Carpenter and who will not disrupt the job unnecessarily in discharging his duties as a Steward.

(3)    To meet the two basic principles agreed to by the parties, it is further agreed:

(a)    The Job Steward shall be a working Carpenter;

(b)    The Steward shall be selected by the Business Representative of the UNION;

(c)    In selecting a Steward preference shall be given UNION Members presently employed in the Bargaining Unit of the EMPLOYER on the specific site, provided, however, that if, in the judgment of the Business Representative, no presently employed UNION Member is competent to act as Steward, the Steward shall be selected from outside the Bargaining Unit. A reason shall be given by the Business Representative why no member is competent. However, the reason shall not infringe upon the right of the Business Representative to select the Steward;

(d)    The UNION shall have the right to replace any Steward at any time;

(e)    So long as he is competent to perform the work to be done on the job, the Steward shall be the last Carpenter laid off, except for the Foreman;

(f)    These provisions shall not apply to the work of Pile Driving where the work is performed by a small crew. In the Pile Driving crew, one (1) in the crew shall be designated by the Business Representative as a Steward;

(g)    A Millwright Steward shall be appointed by the Millwright Business Representative on any job where Millwright work is being performed.

(h)    If there is a dispute as to any of the Sections or Subsections of this Article, the provisions of Article XVIII will apply.

10.2 The duties of the Job Steward shall be to report to the Business Representative of the UNION:

(a)    Members' dues delinquencies;

(b)    Violations of Collective Bargaining Agreement;

-13-

(c)     Carpenters employed seven (7) days or more, who have not become members of the UNION;

(d)     Disputes and grievances of members;

He shall not have authority to:

(1)     Adjust violations of the Collective Bargaining Agreement.

(2)     Collect any money due the UNION from any person or applicant for membership or any other person.

10.3    Whenever one (1) or more Carpenters are required to work overtime, one (1) of their members shall be the regularly designated Steward, or someone designated by him.

## ARTICLE XI
## FOREMEN

11.1    Where there are three (3) or more Carpenters on any one (1) jobsite and one (1) journeyman shall be assigned the duties of Foreman, and shall receive the wages of a Foreman.

11.2    The wages of a Foreman shall be computed as follows:

(a)     In the case of a Foreman who directs up to four (4) carpenters, the Foreman wage shall be two dollars ($2.00) per hour above the rate of wages for a journeyman.

(b)     In the case of a Foreman who directs five (5) or more carpenters, the Foreman wage shall be two dollars and fifty cents ($2.50) per hour above the rate of wages for a journeyman.

11.3    Where there are ten (10) or more Carpenters on any one (1) jobsite, one (1) must be designated a Foreman, and he shall receive Foreman's wages, he shall devote his time to supervision of the work and he shall not work with the tools.

11.4    Whenever a Foreman or General Foreman is chosen by the EMPLOYER, he shall be a person from the unit described in Article I, paragraph 1.1.

## ARTICLE XII
## HEALTH AND WELFARE FUND

12.1    Each EMPLOYER shall pay into the Chicago Regional Council of Carpenters Welfare Fund (hereinafter referred to as "Health and Welfare Fund") an amount per hour for each

-14-

of the first one hundred and seventy-five (175) hours worked for an EMPLOYER during each calendar month by all of its Employees who are covered by this Agreement in amounts determined and allocated by the Executive Committee of the Union effective June 1, 2005, June 1, 2006 and June 1, 2007.

The one hundred seventy-five (175) hour cap will remain in effect throughout the term of this contract providing that the reserve does not fall below fifty-three percent (53%) of the previous twelve (12) months operating expenses of the Health and Welfare Fund. While the one hundred seventy-five (175) hour cap shall cease to be in effect on the last day of the Agreement, contributions for the month of May 2008 will be calculated as in the preceding month and not exceed one hundred seventy-five (175) hours.

12.2     The EMPLOYER agrees to be bound by the Agreement and Declaration of Trust establishing the Chicago Regional Council of Carpenters Health and Welfare Fund, by any present and future amendments thereto and irrevocably designates as his representative on the Board of Trustees such Trustees as are named in said Agreement and Declaration of Trust, as EMPLOYER Trustees, together with their successors selected in the manner provided in said Agreement and Declaration of Trust as it may be amended from time to time, and agrees to be bound by all action taken by said EMPLOYER Trustees pursuant to the said Agreement and Declaration of Trust as amended from time to time.

12.3     The contributions of the EMPLOYERS covered by this Agreement shall be used exclusively to provide group insurance and other related Health and Welfare Benefits for eligible Employees and/or their families in such form or amount as the Trustees of the Health and Welfare Fund may determine.

12.4     Payment of EMPLOYER contributions to the Health and Welfare Fund shall be made on the dates and in the manner and form prescribed by the Trust Agreement or as designated by the Trustees.

12.5     The said Health and Welfare Fund is and shall continue to be administered by an equal number of representatives of the EMPLOYERS and of the UNION pursuant to the Agreement and Declaration of Trust heretofore signed by the EMPLOYERS and the UNION, as now in effect and as it may be amended from time to time, in the manner provided in the

-15-

Agreement and Declaration of Trust. Said Agreement and Declaration of Trust and any present and future amendments thereto are made a part of the Agreement as if set forth herein at length.

12.6    The EMPLOYER shall furnish the Trustees with such information as the names of the Employees, classifications, Social Security numbers, wages, and/or hours worked, and such other information as may be required for the proper and efficient administration of the Health and Welfare Fund.

12.7    The EMPLOYER representatives serving as Trustees, with their successors select-ed in the manner provided by the Agreement and Declaration of Trust, shall represent all EM-PLOYERS in the administration of the Health and Welfare Fund.

12.8    The EMPLOYER may make contributions for all hours worked by Superintendents and other management personnel for whom contributions to the Health and Welfare Fund were heretofore made when such individuals were employed as journeymen Carpenters. Such contributions shall be made in a monthly amount equal to at least 160 times the hourly contribution rate specified in this Article.

12.9    Failure of any EMPLOYER after reasonable written notice by the Administrative Fund Office to furnish reports, pay contributions or comply with the rules and regulations formu-lated and promulgated by the Trustees of the Chicago Regional Council of Carpenters Health and Welfare Fund, shall be considered a violation of the terms and conditions of this Collective Bargaining Agreement and shall subject this Agreement to cancellation as to such EMPLOYER.

12.10   In the event that an EMPLOYER becomes delinquent in making any of the afore-said reports and payments and is so advised by formal notification in writing by the Administrative Fund Office, the EMPLOYER shall pay in addition to the amount due, reasonable fees of Certified Public Accountants as expressly used to establish the amount due, reasonable fees of Attorney in effectuating payment, and liquidated damages in an amount as determined in accordance with the Agreement and Declaration of Trust.

12.11   The EMPLOYER shall make contributions on behalf of each of its Employees employed by EMPLOYER in a management or supervisory position who is also engaged in work of a character falling within the jurisdiction covered by this Collective Bargaining Agreement in

-16-

an amount of no less than one hundred and sixty (160) hours per month. Each such EMPLOYER shall execute a Participation Agreement with the Trustees of the Chicago Regional Council of Carpenters Welfare Fund, upon the request of such Trustees, for such greater or lesser amounts of hours as the Trustees may deem appropriate.

12.12   The contributions referred to in this Article shall be paid with respect to all hours worked by an Employee covered by this Agreement irrespective of the geographical area where work is performed or the geographical jurisdiction of the UNION, provided that EMPLOYER shall not be required to pay contributions to the Chicago Regional Council of Carpenters Welfare Fund for hours outside the geographical jurisdiction of the UNION, if EMPLOYER is required to pay contributions to another multi-employer welfare benefit fund based on such hours.

12.13   The collection of amounts due under this Article shall not be subject to the Settlement of Disputes procedures established in Article XVIII.

### ARTICLE XIII
### PENSION FUND

13.1    Each EMPLOYER shall pay into the Chicago Regional Council of Carpenters Pension Fund (hereinafter referred to as "Pension Fund") an amount per hour for each of the first one hundred and seventy-five (175) hours worked for an EMPLOYER during each calendar month by all Employees who are covered by this Agreement in amounts determined and allocated by the Executive Committee of the Union effective June 1, 2005, June 1, 2006 and June 1, 2007.

The one hundred seventy-five (175) hours cap will remain in effect throughout the term of this contract providing that the reserve does not fall below fifty-three percent (53%) of the previous twelve (12) months operating expenses of the Health and Welfare Fund. While the one hundred seventy-five (175) hour cap shall cease to be in effect on the last day of the Agreement, contributions for the month of May 2008 will be calculated as in the preceding month and not exceed one hundred seventy-five (175) hours.

13.2    The EMPLOYER agrees to be bound by the Agreement and Declaration of Trust establishing the Chicago Regional Council of Carpenters Pension Fund and by any present and future amendments thereto and irrevocably designates as his representative on the Board of

-17-

Trustees such Trustees as are named in said Agreement and Declaration of Trust as EMPLOYER Trustees, together with their successors selected in the manner provided in said Agreement and Declaration of Trust, as it may be amended from time to time, and agrees to be bound by all action taken by said EMPLOYER Trustees pursuant to the said Agreement and Declaration of Trust as amended from time to time.

13.3    The said Pension Fund is and shall continue to be administered by an equal number of representatives of the EMPLOYERS and the UNION, pursuant to the Agreement and Declaration of Trust heretofore signed by the EMPLOYERS and the UNION and now in effect and as it may be amended from time to time in the manner provided in the Agreement and Declaration of Trust. Said Agreement and Declaration of Trust and any present or future amendments thereto are made a part of this Agreement as if set forth herein at length.

13.4    The EMPLOYER shall furnish the Trustees with information such as the names of the Employees, classifications, Social Security numbers, wages and/or hours worked, and such other information as may be required for the proper and efficient administration of the Pension Fund.

13.5    The EMPLOYER representatives serving as Trustees, with their successors selected in the manner provided by the Agreement and Declaration of Trust, shall represent all EMPLOYERS in the administration of the Pension Fund.

13.6    The EMPLOYER may make contributions for all hours worked by Superintendents and other management personnel for whom contributions to the Pension Fund were heretofore made where such individuals were employed as journeymen Carpenters. Such contributions shall be made in a monthly amount equal to at least one hundred and sixty (160) times the hourly contribution rate specified in this Article.

13.7    Failure of any EMPLOYER after reasonable written notice by the Administrative Fund Office so to do, to furnish reports, pay contributions, or comply with the rules and regulations formulated and promulgated by the Trustees of the Chicago Regional Council of Carpenters Pension Fund, shall be considered a violation of the terms and conditions of the Collective Bargaining Agreement and shall subject this Agreement to cancellation as to such EMPLOYER.

-18-

13.8    In the event that an EMPLOYER becomes delinquent in making any of the afore-said reports and payments and is so advised by formal notification in writing by the Administrative Fund Office, the EMPLOYER shall pay in addition to the amount due, reasonable fees of Certified Public Accountants as expressly used to establish the amount due, reasonable fees of Attorney in effectuating payment, and liquidated damages in an amount as determined in accordance with the Agreement and Declaration of Trust.

13.9    The EMPLOYER shall make contributions on behalf of each of its Employees employed by EMPLOYER in a management or supervisory position who is also engaged in work of a character falling within the jurisdiction covered by this Collective Bargaining Agreement in an amount of no less than one hundred and sixty (160) hours per month. Each such EMPLOYER shall execute a Participation Agreement with the Trustees of the Chicago Regional Council of Carpenters Pension Fund, upon the request of such Trustees, for such greater or lesser amounts of hours as the Trustees may deem appropriate.

13.10    The contributions referred to in this Article shall be paid with respect to all hours worked by an Employee covered by this Agreement irrespective of the geographical area where work is performed or the geographical jurisdiction of the UNION, provided that EMPLOYER shall not be required to pay contributions to the Chicago Regional Council of Carpenters Pension Fund for hours worked outside the geographical jurisdiction of the UNION if EMPLOYER is required to pay contributions to another multi-employer pension benefit fund based on such hours.

13.11    The collection of amounts due under this Article shall not be subject to the Settlement of Disputes procedures established in Article XVIII.

## ARTICLE XIV
## TRAINING FUND

14.1    Each EMPLOYER shall pay into the Chicago Regional Council of Carpenters Apprentice Training Fund (hereafter referred to as "Training Fund") an amount per hour for each of the first one hundred and seventy-five (175) hours worked for an EMPLOYER during each cal-endar month by all Employees who are covered by this Agreement in amounts determined and

allocated by the Executive Committee of the Union effective June 1, 2005, June 1, 2006 and June 1, 2007.

The one hundred seventy-five (175) hour cap will remain in effect throughout the term of this contract providing that the reserve does not fall below fifty-three percent (53%) of the previous twelve (12) months operating expenses of the Health and Welfare Fund. While the one hundred seventy-five (175) hour cap shall cease to be in effect on the last day of the Agreement, contributions for the month of May 2008 will be calculated as in the preceding month and not exceed one hundred seventy-five (175) hours.

14.2    The EMPLOYER agrees to be bound by the Agreement and Declaration of Trust establishing the Chicago Regional Council of Carpenters Apprentice and Training Program and by any present and future amendments thereto and irrevocably designates as his representative on the Board of Trustees such Trustees as are named in said Agreement and Declaration of Trust as EMPLOYER Trustees, together with their successors selected in the manner provided in said Agreement and Declaration of Trust, as it may be amended from time to time, and agrees to be bound by all action taken by said Agreement and Declaration of Trust as amended from time to time.

14.3    The said Training Fund is and shall continue to be administered by an equal number of representatives of the EMPLOYER and the UNION, pursuant to the Agreement and Declaration of Trust heretofore signed by the EMPLOYERS and the UNION as now in effect and as it may be amended from time to time in the manner provided in the Agreement and Declaration of Trust. Said Agreement and Declaration of Trust and any present and future amendments thereto are made a part of this Agreement as if set forth herein at length.

14.4    The EMPLOYER shall furnish the Trustees with information such as the names of the Employees, classifications, Social Security numbers, wages and/or hours worked, and such other information as may be required for the proper and efficient administration of the Training Fund.

14.5    The EMPLOYER representatives serving as Trustees, with their successors selected in the manner provided by the Agreement and Declaration of Trust, shall represent all EMPLOYERS in the administration of the Training Fund.

-20-

14.6   The EMPLOYER may make contributions for all hours worked by Superintendents and other management personnel for whom contributions to the Training Fund were heretofore made when such individuals were employed as journeymen Carpenters. Such contributions shall be made in a monthly amount equal to at least one hundred and sixty (160) times and hourly contribution rate specified in this Article.

14.7   Failure of any EMPLOYER after reasonable written notice by the Administrative Fund Office so to do, to furnish reports, Pay contributions or comply with the rules and regulations formulated and promulgated by the Trustees of the Chicago Regional Council of Carpenters Apprentice and Training Program, shall be considered a violation of the terms and conditions of this Collective Bargaining Agreement and shall subject this Agreement to cancellation as to such EMPLOYER.

14.8   In the event that an EMPLOYER becomes delinquent in making any of the aforesaid reports and payments and is so advised by formal notification in writing by the Administrative Fund Office, the EMPLOYER shall pay in addition to the amount due, reasonable fees of Certified Public Accountants as expressly used to establish the amount due, reasonable fees of Attorney in effectuating payment, and liquidated damages in an amount as determined in accordance with the Agreement and Declaration of Trust.

14.9   The EMPLOYER shall make contributions on behalf of each of its Employees employed by EMPLOYER in a management or supervisory position who is also engaged in work of a character falling within the jurisdiction covered by this Collective Bargaining Agreement in an amount of no less than one hundred and sixty (160) hours per month. Each such EMPLOYER shall execute a Participation Agreement with the Trustees of the Chicago Regional Council of Carpenters Apprenticeship and Training Program, upon the request of such Trustees, for such greater or lesser amounts of hours as the Trustees may deem appropriate.

14.10   The contributions referred to in this article shall be paid with respect to all hours worked by an Employee covered by this Agreement irrespective of the geographical area where work is performed or the geographical jurisdiction of the UNION, provided that EMPLOYER shall not be required to pay contributions to the Chicago Regional Council of Carpenters Apprenticeship and Training Program for hours worked outside the geographical jurisdiction of

the UNION if EMPLOYER is required to pay contributions to another multi-employer Apprenticeship Trainee Fund based on such hours.

14.11   The collection of amounts due under this Article shall not be subject to the Settlement of Disputes procedures established in Article XVIII.

## ARTICLE XV
## BONDING

15.1   Each EMPLOYER signatory to this Agreement agrees at the time of execution of this Agreement the EMPLOYER shall have procured a cash bond or Surety Bond in the Principal sum as indicated below. Such Bond shall be written by an insurance carrier authorized, licensed, or permitted to do business in the State of Illinois. The surety bond and/or cash bond shall be payable to the UNION as Trustee for the benefit of Employees employed by the EMPLOYER and for those acting on the Employees' behalf to insure prompt payment of wages and contributions to the Health and Welfare, Pension and Apprentice Training Funds. Such surety bond and/or cash bond shall be executed only on a uniform bond form furnished by the UNION and must be filed with the UNION. Unless otherwise increased by the President of the UNION, the principal amount of the bond shall be:

| | |
|---|---|
| One (1) to Five (5) Employees | $10,000 |
| Six (6) to Ten (10) Employees | $15,000 |
| Eleven (11) to Fifteen (15) Employees | $20,000 |
| For those Employees in excess of Fifteen (15) | $50,000 |

The Association may furnish a blanket bond for all of its members, each of which is to be bonded for the sum of $50,000. The UNION may withdraw bargaining unit Employees from EMPLOYERS who fail to maintain the bond required by this Article.

15.2   The EMPLOYER assigns all right, title and interest in the Surety bond and/or cash bond to the UNION and Fringe Benefit Trust Funds, which shall have a priority interest to such Funds, and supersede the claims of all EMPLOYER'S creditors.

15.3   This Article shall not be subject to the Settlement of Disputes provisions contained in Article XVIII.

## ARTICLE XVI
## TOOLS

16.1   Each Employee is required to furnish, for his individual use only, all of those tools customarily required of a Carpenter to perform his duties. Employee shall not own, transport, fur-

nish or rent any power operated tools, machinery, or equipment, to be used on any work to be performed by his EMPLOYER.

16.2    EMPLOYER shall provide, for the exclusive use of Carpenters, suitable lighted and heated places for them to eat and change their clothes.

16.3    EMPLOYER shall also provide a safe and secure place, on the job, for the storage of tools, shoes and clothing, both during and after working hours, however, the EMPLOYER shall replace or pay for the loss of any tools, shoes, clothing, but in no event shall the EMPLOYER pay more than two thousand five hundred ($2,500.00) dollars for each Employee. On the request of the EMPLOYER it shall be the responsibility of the Employee, when storing tools, to furnish a list of tools and indicate the estimated value of such tools on forms supplied by the EMPLOYER. A duplicate copy of said list shall be given to the Employee signed by Management.

16.4    EMPLOYER shall furnish and make available at the jobsite all equipment generally and customarily used to sharpen the various tools used by Employees hereunder, but not including hand saws. Except for hand saws, sharpening of his own tools shall be the choice of the Employee at all times although the Employee may, if he chooses, permit his tools to be sharpened other than on the jobsite by and at the expense of the EMPLOYER. Employees may sharpen tools during working hours, and the time thereby used shall be considered time worked. Hand saws may be sharpened other than at the jobsite by and at the expense of the EMPLOYER. Any automatic equipment provided by the EMPLOYER on the jobsite for the purpose of sharpening tools (e.g. Foley Filer) shall be operated by a member of the Bargaining Unit.

### ARTICLE XVII
### APPRENTICES

17.1    Every EMPLOYER who employs an average of five (5) Journeymen during six (6) months of a twelve (12) month period must employ one (1) Apprentice for every three (3) Carpenters, but not more than five (5) Apprentices for each EMPLOYER on any one jobsite. Additional Apprentices may be granted to any EMPLOYER upon proper application to the Trustees of the Chicago Regional Council of Carpenters Apprentice Training Fund.

-23-

17.2    Any EMPLOYER who averages less than five (5) Carpenters during six (6) months of a twelve (12) month period, may be granted one (1) Apprentice upon proper application to the above mentioned Trustees.

17.3    EMPLOYER agrees also to be bound by the rules and regulations promulgated by the aforementioned Trustees.

17.4    EMPLOYER agrees that there shall be no discrimination in the employment of Apprentices based on race, creed, color, sex, national origin or religion, and that Apprentices shall be a minimum age of 17. The EMPLOYER and the UNION agree to be bound by all of the applicable provisions of the United States Code, Title 29, Part 5 and Part 30.

17.5    EMPLOYER who needs Certification of Apprentice for federally funded projects must request and receive such Certification from the Bureau of Apprenticeship and Training of the U.S. Department of Labor.

17.6    Any EMPLOYER notified by the Apprentice Program that an Apprentice has been dropped from Apprenticeship for violations of rules and regulations governing Apprentices, must terminate employment of said Apprentice. The Apprentice or EMPLOYER may appeal the decision to drop him from Apprenticeship by filing an appeal in accordance with the provisions of Section 5 of his Indenture Agreement.

17.7    EMPLOYER agrees to train an Apprentice in ALL phases of the carpentry trade in which the EMPLOYER is engaged. Upon refusal by EMPLOYER to comply with request by Apprentice to have his work assignment changed to another phase of carpentry, the Apprentice Program may assign Apprentice to new EMPLOYER. EMPLOYER agrees not to abuse the privilege of having the services of Apprentices by using them to do work that does not come under the jurisdiction of Carpenters.

17.8    EMPLOYER who employs trainees in the specialty branches of the Trade: (1) drywall and ceiling systems, and (2) shingle, siding and insulators, agrees to use said trainees only for the work which comes under the specialty branch of the trade for which he is indentured as stated herein.

## ARTICLE XVIII
## SETTLEMENT OF DISPUTES

18.1    Except as provided in Sections 12, 13, 14, 15, 27, 28, 34, 35, 36 and 37, any dispute concerning the proper interpretation and application of this Agreement shall be handled in the first instance by a meeting between a representative of the UNION and the EMPLOYER within seven (7) days after the dispute has been initiated. In the event the dispute involves an issue concerning wages or other issues wherein the UNION must have information or documents in order to proceed, the EMPLOYER must provide such requested information within three (3) days of a written request. Failure of the EMPLOYER to timely provide such information shall be deemed an admission of the UNION or Employee's claim. This limitation period will only be extended by mutual agreement between the UNION and the EMPLOYER. Disputes must be raised within thirty (30) days of the date the Employee or the EMPLOYER become aware of the event, giving rise to the dispute. However, the UNION may file a grievance under this provision for a violation of the collective bargaining agreement within thirty (30) days of a representative of the UNION first being made aware of the alleged violation. A representative of the UNION is defined as any elected Regional Council officer or any appointed Business Representative.

18.2    In the event that the dispute is not resolved within seven (7) calendar days after the parties' first meeting, the matter shall be referred to the Permanent Arbitration Board ("PAB") in writing by the grieving party within seven (7) calendar days after the expiration of the seven (7) calendar day period. This limitation period will only be extended by mutual written agreement between the UNION and the EMPLOYER.

18.3    The arbitration hearing shall begin not later than fourteen (14) days after the date of referral to arbitration. Upon completion of the arbitration hearing, the parties may elect to submit written briefs to the Arbitrator no later than seven (7) calendar days after the close of the arbitration hearing. The Arbitrator shall issue a written decision and findings fourteen (14) calendar days after the completion of the arbitration hearing unless the Arbitrator requests written briefs from the parties, in which the time for the Arbitrator's decision shall be twenty-one (21) calendar days after the completion of the hearing. This limitation period may only be extended by mutual written agreement of the UNION and EMPLOYER.

-25-

18.4    The PAB shall consist of the following five Arbitrators mutually agreed upon between the UNION and the EMPLOYER Association:

Steven Briggs
Neil Gunderman
Lisa Salkovitz-Kohn
Robert McAllister
Donald Peterson

In the event that any designated Arbitrator shall be unable or unwilling to act on the PAB, the UNION and EMPLOYER Association shall mutually agree and designate a substitute. The grievance shall be sent to the Arbitrators in rotation, each grievance being submitted to the next arbitrator on the list following the one to whom the most recently submitted grievance has been sent. Upon submission of the grievance, the Arbitrator shall be requested to advise both parties promptly as to his earliest available hearing date or dates. If an Arbitrator to whom a submission has been made shall be unable to offer a hearing date earlier than fourteen (14) calendar days from the date of delivery of the letter of submittal of a grievance, then unless the parties agree otherwise, such grievance shall be sent to the next arbitrator in the rotational sequence. If no Arbitrator on the list is able to meet the fourteen (14) calendar day deadline, then unless the parties agree otherwise, submission shall be submitted to the listed Arbitrator with the earliest available hearing date. The expense of the Arbitrator shall be shared by the parties in equal proportions. The decision of the Arbitrator shall be final and binding upon both parties. The Arbitrator shall have no authority to add to, subtract from or modify, any provision of this Agreement. There shall be no strikes, slow downs or withdrawal of men by the UNION while the dispute is being processed through this procedure.

18.5    The parties shall mutually exchange all documentation that is relevant to the dispute and requested prior to the arbitration hearing.

18.6    In the event that a party refuses to arbitrate or fails to comply with the decision of the Arbitrator, the other party has the right to avail itself of any lawful means necessary to compel compliance, including but not limited to, judicial intervention, work stoppage by withdrawing bargaining unit Employees from the EMPLOYER who violates this article, and strike activities.

-26-

18.7    In any arbitration hearing brought pursuant to this Article, the Arbitrator shall have the authority to award the prevailing party its reasonable attorney fees and costs incurred in the action.

18.8    The administration of the PAB, including the selection of the Arbitrators shall be by mutual agreement of the UNION and MARBA. The administrative procedures will be determined by mutual agreement of the UNION and MARBA and set forth in a separate document.

## ARTICLE XIX
## USE OF MACHINERY, TOOLS AND FACTORY MADE PRODUCTS

19.1    There shall be no restrictions on the use of machinery or tools, or use of factory made products.

19.2    Nothing in this Article shall be construed to assign the installation or assembly of factory made products to a person or persons outside the Bargaining Unit.

## ARTICLE XX
## MISCELLANEOUS PROVISIONS

20.1    EMPLOYER shall give notice to the UNION and the appropriate Fund Office in writing no later than ten (10) days after the occurrence of any of the events relating to the EMPLOYER, occurring after the date hereof:

(1)    Formation of partnerships;

(2)    Termination of business;

(3)    Changes of name commonly used in business operation;

(4)    Change in form of business organization;

(5)    Incorporation of business;

(6)    Dissolution of corporation;

(7)    Name and business organization of successor;

(8)    Admission to or withdrawal from any association operating as a multi-employer bargaining agent.

(9)    Name and identity of any parent company, subsidiary company or division.

20.2    The EMPLOYER shall maintain an office and a telephone where he can be contacted during the usual working hours.

20.3    Whenever the EMPLOYER party to this Agreement is a partnership, it is agreed as follows:

-27-

(1)     That one partner will execute the Agreement for the partnership and he shall be the only partner of that firm who shall work with the tools.

(2)     In the case of a partnership which is a part of a multi-employer Bargaining Unit, only one partner may work with the tools and his name shall be supplied to the UNION on request.

(3)     All other parties are specifically prohibited from working with the tools and shall not become Carpenter Employees of the firm to circumvent the provisions hereof.

20.4     EMPLOYER agrees to provide Employee with a statement each payday setting forth the following information:

(1)     Hourly rate and number of hours worked in payroll period.

(2)     Gross Salary.

(3)     Itemization of each and every deduction being made against Gross Salary.

Said statement can be part of a stub attached to Employee's payroll check.

20.5     EMPLOYER further agrees upon request of the Carpenters Regional Council to provide copies of payroll checks prior to their being delivered to any Employee to the business representative by facsimile or delivered to his office.

20.6     EMPLOYER agrees that, by appointment, and within forty-eight (48) hours of notice during the normal working days, he or his representative will meet with, at EMPLOYER'S office or shop, anyone designated by the President of the UNION for the purpose of inspecting lists of Employees, payroll records, and time cards solely to determine whether the provisions of this Agreement are being complied with.

20.7     Business Representatives of the UNION have the right to enter, go upon, or inspect any construction site, whether or not Carpenters are actually employed thereon, to effectuate the purposes of this Agreement but they shall not in any way interfere with the EMPLOYER'S affairs thereon.

20.8     The EMPLOYER shall furnish at all times and places suitable drinking water and sanitary facilities.

-28-

20.9    Employees covered by this Agreement shall not perform work on a piece-work basis.

20.10   The EMPLOYER agrees that he will not sublet any work to any Employee or Employees.

20.11   This Agreement shall not be transferable by any EMPLOYER either by action of such EMPLOYER or by operation of law. In the event any EMPLOYER, whether an individual, partnership, or corporation covered by this Agreement, merges, consolidates or transfers a controlling interest in his, their, or its business, this contract may be canceled as to such EMPLOYER by the UNION.

20.12   The breach by an EMPLOYER of any of the provisions of this Agreement may, by written notice, be declared by the UNION to be a breach of the entire Agreement.

20.13   Before EMPLOYER commences work on any job, he must first give the UNION reasonable advance notice of that fact, unless the Steward is on the job. The notice can be given by mail or telephone and must include the location of the work.

20.14   Notwithstanding any other provision of this Agreement, the EMPLOYER shall have the right to take such action as shall be necessary to comply with Federal or State legislation lawful regulations or requirements set forth in proposal documents by Federal or State users of construction services, with respect to providing equal employment opportunity.

20.15   When EMPLOYER is engaged in work within the geographical jurisdiction of the Regional Council, not less than sixty-six percent (66%) of the Carpenters employed by such EMPLOYER shall be from among the members of the bargaining unit who are represented by Local Unions within such geographic jurisdiction or counties bordering such geographic jurisdiction.

The EMPLOYER may at its sole option request that the UNION refer applicants to fulfill the EMPLOYER'S obligation in Article 20.15. If the UNION is unable to refer such applicants as required by the EMPLOYER within forty-eight (48) hours, then the EMPLOYER may hire Carpenters without respect to geographic jurisdiction or geographic area. All Carpenters employed under this paragraph shall be classified as permanent Employees, subject to the provisions of Articles 2.1, 2.2, 2.3 and 2.4.

20.16  In the event of municipal work requiring shifts to occur at times other than those specified in the Article because of traffic congestion, public safety, municipal requirements or other situations; different shifts and starting times can be established upon mutual agreement by Owner, Contractor and UNION.

20.17  No EMPLOYER who first becomes signatory to or bound by this Agreement after May 31, 1984 shall work with the tools of the trade unless he is currently employing at least one (1) journeyman who is working for such EMPLOYER full time.

20.18  (a)      Peak Demand Permits. The provisions of this subsection shall be limited to periods when there are no Journeymen or Apprentices reasonably available for employment as determined by the President of the Regional Council.

(b)      Notwithstanding any other provisions in the Agreement, the EMPLOYER may not employ Employees other than Journeymen and Apprentices except by UNION permit. When the following conditions are met, the UNION shall issue the requested permits for permit Employees:

(1)      The EMPLOYER regularly employs Apprentices or trainees; and

(2)      The EMPLOYER notifies the UNION of the name, address, phone number, if available, and social security number of each permit Employee; and

(3)      The established permit fee is submitted to the UNION; and

(4)      The EMPLOYER has notified the UNION of an unmet need for Employees and the location of the jobsite(s), if available, and the UNION cannot provide Employees within forty-eight (48) hours of such notice. Provided, however that the President of the Regional Council or his designee shall have the authority to waive such forty-eight (48) hour notice in his discretion for good cause shown.

(c)      EMPLOYER shall notify the UNION upon the termination of the employment of such permit Employee.

-30-

(d)    An EMPLOYER may, unless determined otherwise by the President of the Regional Council or his designee in his discretion for good cause shown, hire not more than one (1) Employee on permit for each three (3) Journeymen employed by the EMPLOYER.

(e)    No Journeyman or Apprentice shall be laid off for lack of work while any Employee on permit is employed.

(f)    Journeymen and Apprentices shall be given preference to all overtime work.

(g)    The EMPLOYER may request the enrollment of any Employee working on permit into the apprentice program in accordance with procedures established by the Board of Trustees.

(h)    Permits shall only be issued by the President of the Regional Council or his designee for a thirty (30) day period and shall be renewed for an additional thirty (30) day period upon the request of the EMPLOYER. Failure of the EMPLOYER to renew the permit after the thirty (30) day period shall entitle the Employee to full payment of Journeymen wages for all the hours worked after the expiration of the permit. The EMPLOYER may request additional thirty (30) day periods. Failure of the UNION to deny the request in writing within five (5) work days shall constitute the issuance of a permit for an additional thirty (30) days.

(i)    EMPLOYER shall make contributions to the fringe benefit funds for each hour worked under this Agreement by Employees, including Employees on permit. Employees working under a permit issued in accordance with this subsection 20.18 shall receive wages at a rate of pay equal to that of a first year Apprentice.

20.19 (a)    Apprentice Applicant Permits. This subsection shall apply only when an Employer has requested the enrollment of an Employee in the Apprentice program in accordance with procedures established by the Board of Trustees. A permit shall be issued to such Employee pursuant to this subsection provided that:

(1)    The EMPLOYER regularly employs Apprentices or trainees; and

(2)    The EMPLOYER notifies the UNION of the Name, address, phone number, if available, and social security number of each Employee for whom a permit is requested under this subsection; and

-31-

(3)　　The established permit fee is submitted to the UNION.

(b)　　An EMPLOYER may, unless determined otherwise by the President of the Regional Council or his designee in his discretion for good cause shown, hire not more than one (1) such Employee on permit for each three (3) Journeymen em-ployed by the EMPLOYER.

(c)　　EMPLOYER shall make contributions to the fringe benefit funds for each hour worked under this Agreement by Employees, including Employees on permit. Employees working under a permit issued in accordance with this subsection 20.19 shall receive wages at no less than the rate of pay of a first year Apprentice.

(d)　　Permits shall only be issued by the President of the Regional Council or his designee for a thirty (30) day period and shall be renewed for an additional thirty (30) day period upon the request of the EMPLOYER. The EMPLOYER may request additional thirty (30) day periods. Failure of the EMPLOYER to renew the permit after the thirty (30) day period shall entitle the Employee to full payment of Journeymen wages for all hours worked after the expiration of the permit. Failure of the UNION to deny the request in writing within five (5) work days shall constitute the issuance of a permit for an additional thirty (30) days.

(e)　　No Employee to whom a permit has been granted under this subsection shall be eligible to have such permit renewed unless he or she continues to be employed by the EMPLOYER.

(f)　　No permit shall be renewed, except for renewal requests by the Board of Trustees of the Training Fund, under this subsection at any time during which the President of the Regional Council finds that there are a significant number of unemployed Apprentices who are reasonably available for employment.

## ARTICLE XXI
## MOST FAVORED NATIONS

21.1　　(a)　　In no event shall any EMPLOYER be required to pay higher wage rates or be subject to more unfavorable wage rates, contract terms or work rules, than those agreed to by the UNION in any Collective Bargaining Agreement with any other construction industry EMPLOYER within Cook, Lake and DuPage Counties, Illinois. In no event, shall wage rates,

-32-

contract terms, or work rules granted any sub-trade (including sub-trades whether or not dealt with in Articles I, XXII, XXIII, XXIV and XXV) be applied to general carpentry or any other sub-trade. However, all EMPLOYERS operating within a sub-trade shall have the benefit of this provision within that sub-trade. This paragraph shall not apply to the terms and conditions of any national or international agreement, nor the terms and conditions of any contract involving shop, stair shops, in-plant, industrial, municipal, factory, millmen, component parts, maintenance agreements, CEDA and such other similar governmentally funded community programs and governmental agreements, nor to the terms and conditions in effect for the first one hundred and eighty (180) days of an agreement with an EMPLOYER who had not been bound to an agreement with the UNION during the prior twelve (12) month period. (Agreements lasting more than one hundred and eighty (180) days must be approved by the Labor-Management Committee established under this Article.) Notwithstanding anything to the contrary above, in the event the UNION shall establish prior to bidding or award for particular contract, or identifiable sector or specialty work, any wage rates, contract terms or work rules that will be applicable to that contract, sector or specialty work which are more favorable to the EMPLOYER than those contained in this Agreement, then all EMPLOYERS bidding on that project, sector or specialty work shall be entitled to the benefit of such more favorable terms. The UNION shall promptly provide the Labor-Management Committee established under this Article with written notice of the establishment of such more favorable terms. In the event that subsequent to the award of a particular contract, the UNION through the President of the Regional Council or his designee for good cause desires to establish more favorable wage rates, contract terms or work rules for that contract, said more favorable terms shall become effective with the concurrence of the Labor-Management Committee established under this Article.

(b)      The Labor Management Committee established under this Article shall consist of the President of the Regional Council and one representative appointed by the Association.

(c)      Notwithstanding anything to the contrary above in this Article XXI, the terms and conditions of any Amendment which results from the application of or pursuant to Article XXXI of this Agreement (or any counterpart thereof in any other Agreement with the

-33-

UNION) shall not be subject to the prior subsections of this Article XXI except as may be specifically provided in such Amendment(s).

## ARTICLE XXII
## PILE DRIVING - SCOPE OF WORK

22.1    EMPLOYER recognizes that the UNION claims jurisdiction of the work performed on all Pile Driving operations, the driving of wood pile and the heading and the pointing of same, including: (1) the driving of all steel piling, including pipe sheeting, H beams, I beams and caissons; (2) the driving of concrete pile, pre-cast or cast in place, mini piles and bulb piles; (3) the driving of all composite pile; (4) the driving of cofferdams, installation, and removal of all bracing and walers in cofferdams; (5) the erection of all trestles, false work and docks; (6) the jobsite erecting and dismantling of derricks, A frames, cranes and gin poles, when used in conjunction with pile driving work; (7) the cribbing, shoring and underpinning of buildings when pile driving is involved; (8) the erection, dismantling and jacking of pile load tests and all jacking for and during tests; (9) the jobsite loading, unloading and distribution of all pile driving equipment and piling except when truck drivers can roll off or dump load; (10) the jobsite maintenance of pile driving equipment; (11) "all burning, welding, and splicing of piling, including welding of all end plates and bearing plates prior to driving and after installation of piling, and the first weld off of piling in all cases, except for Mill fabrication and manufacturing, including by not limited to pile tips and end plates"; (12) the jobsite preparation of all barges, scows, rafts, floats and pontoons to be used in pile driving work; (13) the operation of spud engines and deck engines or rigs doing pile driving work; (14) crane signaling pertaining to all pile driving work; (15) the firing of boilers on derricks or barges being used on pile driving work; (16) the jobsite positioning, repositioning, flooding, refloating, to such point as is the final floating position of watertight midsection hulls used as temporary breakwaters on pile driving work; (17) the installation of all skimmer plates when attached to piles; (18) the installation of mooring buttons, bollards, cleats, bumpers, chains, fenders and barge deflectors; (19) installation of hog rods, anchors and tie backs; and (20) any work pertaining to pile driving from ground level down to portal on tunnels and shafts; (21) setting of rocks or boulders for jetties and or break waters working off of floating equipment when a signal man is required. (22) If signaling of land crabs or fork lifts is required,

it shall be the work of the journeyman/apprentice; and (23) all other work hereafter awarded to pile drivers.

## PILE DRIVING - WORKING RULES

22.2    On all rigs engaged in driving of piles there shall be no less than four (4) journeymen/apprentice and a foreman to constitute a crew.

22.3    On cranes engaged in driving of bearing piles, soldier piles and sheeting and extracting sheeting and piles, there shall be no less than four (4) journeymen/apprentice and a foreman to constitute a crew. When driving or extracting occurs, two (2) Employees can be used to do pile driving work within 200 feet of the crew.

22.4    When loading and/or unloading piling or pile driving equipment on a jobsite, there shall be no less than the crew size as determined by the referenced type of operation.

22.5    All pile load tests shall be jacked by no less that one (1) journeyman per shift for duration of test.

22.6    A crew shall consist of two (2) journeymen/apprentice or more as needed for cutting of wood piling underneath existing building.

22.7    On caisson work when pile hammer or extractor is used installing or removing caisson shell one (1) journeyman shall be included in the regular caisson crew.

22.8    "A minimum of two (2) journeyman/apprentice and a working foreman shall be used for:

A)    Driving piling with a crane when the hammer is rated at 2,500 foot pounds or less.

B)    Driving piling with a vibrator mounted on a backhoe up to a maximum of ten (10) tons of dynamic force.

C)    Driving piling with a restricted headroom of twenty-four (24) feet or less and a forklift is used to support the hammer of any size."

22.9    "There shall be one (1) journeyman used only on rigs to pre-drill holes for bearing piling. There shall be a minimum of two (2) journeymen/apprentice and working foreman on any type of auger cast pile, tie back operation, mini pile, pin pile, cast pile, and soil nails. Two (2)

-35-

journeymen/apprentice and a working foreman shall be used to drill for, prepare, and set soldier piles. If the drill is more than 200 feet from the installation, one (1) journeyman will be added to the crew and shall remain with the drill rig."

22.10   When there is steady welding during driving of piling an additional journeyman will be required in a crew. When bearing pile are being spiced in a horizontal position, and the set fabricated pile are to be driven by the same crew, there shall be an additional journeyman in the crew. This extra journeyman can also be used to install end plates or pile points. The above provisions shall in no way restrict the regular crew members from helping the extra journeyman.

22.11   When a crew of two (2) or more welders is employed on a job operation, one (1) shall be designated as a working foreman and shall receive the current foreman's rate of pay so long as there is no other pile driver foreman on the job.

22.12   "The installation of lagging will be a composite crew including a journeyman/apprentice whose size and composition will be determined by the Contractor."

22.13   "Not withstanding the provisions of Section 17.1 of the Area Agreement, the EMPLOYER, may employ one pile driving apprentice for each three journeymen employed on a crew size." Pile Driver apprentices will be given preference.

22.14   Minimum crew size may be increased if efficiency and safety conditions require with mutual consent of the EMPLOYER and the UNION.

22.15   Pile driver employees shall carry with them on the job a six-foot (6') rule, and adjustable wrench twelve inch (12") and a claw hammer. The EMPLOYER shall furnish all other tools required to do the pile driving work.

22.16   In the event the EMPLOYER decides it is necessary to work at any time during inclement weather, the EMPLOYER shall make foul weather gear available for the Employees.

22.17   When a man is working in water where hip boots are insufficient, the EMPLOYER shall pay the man a premium of twenty-five cents ($0.25) an hour for straight time and fifty cents ($0.50) an hour for overtime.

22.18   All Employees directed to work for the EMPLOYER must be qualified and skilled in their trade.

-36-

22.19   Any special certification test of a qualified pile driver-welder, taken for the convenience of the EMPLOYER, shall be paid for by the EMPLOYER. Before a qualified pile driver-welder commences the welding test, he shall be placed on the payroll of the EMPLOYER and to be paid pile driver's wages. A qualified pile driver-welder is one who passed a qualification test given by a recognized testing laboratory within the area covered by this Agreement.

22.20   When a welder is transferring, his/her certification papers may be sent to the Carpenters Union. The Carpenters Union will maintain the papers for future use by contractors.

### PILE DRIVING TERRITORIAL JURISDICTION

22.21   The pile driving territorial jurisdiction of the Chicago Regional Council of Carpenters, as determined by the United Brotherhood of Carpenters and Joiners of America, includes Cook, Lake and DuPage Counties, Illinois.

All waterfront pile driving work on the Lake Michigan Shores of Lake, Porter and LaPorte Counties, Indiana. Waterfront pile driving work shall include all pile driving work on any building, structure or project, any part of which is in or over water. This shall include reclaimed land in areas previously a part of the Lake Michigan waterfront. All pile driving work in Lake and Porter Counties, Indiana other than highway work.

### ARTICLE XXIII
### MILLWRIGHT WORKING RULES

23.1   EMPLOYER shall furnish, if required, all precision levels over twelve (12") inches, all calipers over eight (8") inches, outside micrometers over one (1") inch, inside micrometers over eight (8") inches, all adjustable wrenches over twelve (12") inches, all socket wrenches over one half (½") inch drive, box socket and open end wrenches over one and one fourth (1¼") inches, all drills, taps, files, emery cloth, sand paper, hack saw blades and all hammers over two (2) pounds.

23.2   When it is necessary for Millwrights to furnish any precision tools, the Contractor shall be responsible for the repair, or replacement if necessary, of any of these tools which are damaged while being used on the job. These tools shall include: Dial Indicators and Magnetic Bases, Precision Levels, Calipers, Outside Micrometers, Inside Micrometers, Precision Feeler

Gauges, and Precision Plumb Bobs. Upon initial employment, Employee shall furnish an inventory in duplicate to EMPLOYER, of any of the above mentioned tools he may have on the jobsite.

23.3    When it is necessary to store Employee tools on the jobsite during his nonworking hours, the Contractor shall be responsible for loss due to fire or burglary at seventy percent (70%) of the cost to a maximum of two thousand five hundred ($2,500) dollars. On the request of the EMPLOYER, it shall be the responsibility of the Employee when storing tools, to furnish a list in duplicate to the EMPLOYER to obtain this protection.

23.4    Any special certification test of a qualified Millwright welder, taken for the convenience of the EMPLOYER, shall be paid for by the EMPLOYER. Before a Qualified Millwright welder commences the welding test, he shall be placed on the payroll of the EMPLOYER and be paid Millwright's wages.

23.5    An Employee who is required to travel to a jobsite shall be reimbursed for lodging when required to remain away from his home overnight. The expense allowance for lodging for each night shall be fifty ($50.00) dollars per night.

23.6    Where there are two (2) or more Millwrights on any one jobsite and one Journeyman assumes responsibility other than that of a Journeyman, the one (1) assuming the duties shall be designated a foreman, and shall receive the wages of a foreman.

23.7    Where there are eight (8) or more Millwrights on any one jobsite one (1) must be designated a non-working foreman, who shall devote his time to supervision of the work and shall not work with the tools.

23.8    Before a Millwright commences attending any special schooling or training, such as radiation school, upon the request of the EMPLOYER, he shall be placed on the payroll of the EMPLOYER and be paid Millwright's wages.

## ARTICLE XXIV
## SHINGLING, SIDING AND INSULATING MECHANICS
## GENERAL

24.1    All scaffolding shall be inspected to determine that such scaffolding is in safe condition and meets all safety standards.

24.2    An Employee shall not transport, or in any way carry, any equipment or materials in the automobile or truck of such Employee, with the exception of sundry material items which are necessary for the uninterrupted continuance of the job. Nor shall such Employee own, furnish, or rent any equipment to be used on any work to be performed for the EMPLOYER.

### CLAIMS AND JURISDICTION OF THE
### SHINGLING MECHANIC

24.3    All asphalt, wood, plastic, metal or composition roofing applied to any and every type of roof shall be the work of the shingler.

24.4    A shingler shall not carry any material weighing over sixty (60) pounds to a height in excess of two (2) story building.

24.5    Roof jacks and stages or planks shall be provided on all roof jobs with eight-twelfths ($\frac{8}{12}$) or greater pitch as the bottom scaffold. Unfavorable weather conditions on roofs with a pitch less than eight-twelfths ($\frac{8}{12}$) shall require sufficient roof jacks and staging or planks to provide safe working conditions.

### CLAIMS AND JURISDICTION
### OF THE SIDING MECHANIC

24.6    All asphalt, insulated asphalt, asbestos, cement, aluminum and other metals or plastics applied to the outside wall of any building; underlying materials, such as aluminum foil, building paper, plastic or asphalt felt, shall be the work of the siding mechanic.

### CLAIMS AND JURISDICTION
### OF THE INSULATING MECHANIC

24.7    All insulation, batts laid, tacked or stapled, glued or cemented on the building in any form; all blown insulation, wet or dry to walls, ceilings, or floors, shall be the work of the insulator.

-39-

24.8    One (1) Journeyman or Apprentice Carpenter shall be in attendance of the blowing machine, and all men on batts or blown jobs shall be provided with masks at all times by the EMPLOYER.

## ARTICLE XXV
## INSTALLERS OF FLOOR AND WALL PRODUCTS

25.1    An Employee who is required to use his automobile to carry the EMPLOYER'S materials or the EMPLOYER'S tools shall be compensated at the rate of three ($3.00) dollars per day.

25.2    The EMPLOYER shall pay for all business calls made by the Employee as well as for all parking fees and toll charges.

25.3    No EMPLOYER of Floor and Wall Installers shall work with the tools of the trade unless he is currently employing two (2) Journeymen who are working for such EMPLOYER full time.

25.4    An Employee shall not transport EMPLOYER'S materials, with the exception of sundry items which are necessary for the uninterrupted continuance of the job, in any conveyance owned by the Employee nor shall the Employee rent or lease such conveyance to the EMPLOYER for such purpose.

25.5    By way of illustration and not limitation, the work of installers of Floor and Wall Products consists of preparation and/or forming of all materials, whether accomplished by hot iron, cemented, cemented tape, tacked, stapled or sewed method, for installing on floors, walls, stairs, ceilings, fixtures, furnishings or exterior applications on structures, patios, pool perimeters, area ways, all other like or similar applications and as simulated turf.

Installation of all resilient floor, wall, ceiling and simulated turf materials to include linoleum, rubber, asphalt, mastipave, vinyl, plastic, metal, cork, wood and all similar materials in sheet, interlocking tile, performed or seamless compound form of liquid, plastic, epoxy, urethane or materials of like nature.

Installation of carpet, carpet tiles, rugs or runners and cutting or fitting of same, whether installed by tacked, tackless, glue-down, self-adhering, any manner of tape adhesion, stapled, or loose-lay method on wood, steel, concrete, plaster, plastic or base of like or similar composition.

Installation of all lining felt, carpet pad, underlayment compositions, matting, linen crash and/or like or similar materials.

Installation of all resilient type and carpet type materials on floors, walls, stairs, ceilings, fixtures, furnishings or exterior applications on structures, patios, pool perimeters, area ways, all other like and similar applications and as simulated turf.

The take-up and relaying, spreading of all adhesives, priming of all surfaces, sanding and necessary patching and preparation, removal of old material, finishing where required to complete Manufacturers' process, handling, distributing and unpacking, drilling of holes and insertion of sockets, pins, dowels or similar fastening device, placing or stripping, fitting of all devices for the attachment of material and the installation of all metal, rubber, vinyl, wood and/or plastic trim or accessory materials, the aforementioned to cover materials listed in above jurisdiction.

## ARTICLE XXVI
## LATHERS - SCOPE OF WORK

26.1    The EMPLOYER recognizes that the UNION claims jurisdiction of work performed on all lathing operations. It shall have jurisdiction over the following work: handling, erecting, installing and welding of all light iron construction, furring, making and erecting of brackets, clips and hangers; wood, wire and metal lath; plasterboard or other material which takes the place of same to which plastic or acoustical material is adhered; corner beads; all floor construction; arches erected for the purposes of holding plaster, cement, concrete, or any other plastic or acoustical material.

26.2    All carrying bars, purlins and furring regardless of size; light iron and metal furring of all descriptions, such as rods, channels, flat iron, Nailock, Screwlock, Pomeroy, T. bar; all light iron and metal studs such as Stran steel, Penn metal, Soule, Truscon, and all other types of light iron and metal studs, no matter what the manufacturer, when such studs are to receive metal lath, rock lath or other material for the application of plaster or other sprayed on wet material; and all other light iron furring erected to receive lath and plastic or acoustic materials.

26.3    The nailing, tying, or screwing of all wires and metallic lath such as wirecloth, wire mesh, expanded metal lath, hyrib lath and all ribs and flat expanded metal lath and wire of all descriptions as well as the placing of all hangers and all inserts used for the purpose of sup-

-41-

porting suspended ceilings of any of the above types of floor lath, such as hyrib lath, paperback Steeltex floor lath, Penn metal rib, and all other appurtenances connected therewith.

26.4 The nailing, screwing, clipping or fastening by any other means, of all types of plasterboards and stripping, to all types of stud, which is to act as a base for plaster.

26.5 The erection of all metal, vinyl or plastic plastering accessories such as metal corner beads, door and window casing beads, metal picture mould, metal chair rail, metal base and base screed, and any and all other metal plastering accessories which are covered and/or serve as a ground, steel corner guard, vinyl or plastic corner guard, or screed for plastic material.

26.6 The prefabrication by the contractor, of furring iron and metal lath, whether fabricated on the job or in a warehouse or shop operation, will be fabricated by Employees covered by these Working Rules.

26.7 All other work hereafter awarded to Lathers.

26.8 The Working Rules in this Agreement shall be interpreted and applied in a manner consistent with the intent and purpose of this Agreement.

**LATHER WORKING RULES**
**LOCAL DUES**

26.9 It is agreed that each EMPLOYER will withhold from the wages of a member of Local Union No. 74-L in his employ that amount per hour for each hour worked as is set forth in a signed authorization received by the EMPLOYER from the members. It is further agreed that the EMPLOYER will forward the withholding to the office of Local Union No. 74-L by the fifteenth (15th) day of the month following the month for which the withholding is made, with an itemized return form listing the name of each Employee. Such forms to be furnished to the EMPLOYER by the UNION.

The UNION agrees that it will secure from each of the members of Local Union No. 74-L a written assignment executed by such member authorizing an EMPLOYER to deduct the amount hereinabove fixed from his wages and to transmit such amount to the Local Union in payment of membership dues.

Copies of such assignments shall be sent to EMPLOYER by the UNION upon EMPLOYER request.

-42-

## REGISTRATION DAY

26.10  No work will be permitted on the first Saturday in June of each election year (Local 74-L Registration Day) except in emergency.

## ROCKLATH

26.11  Rocklath or similar substitutes must be erected with broken joints, or straight joint stripped with metal lath not less than four (4) inches wide.

## LATHER TERRITORIAL JURISDICTION

26.12  The recognized territorial jurisdiction of Local No. 74-L shall be established by the United Brotherhood of Carpenters and Joiners of America which is as follows:

Starting at a point where the Indiana-Illinois State lines meet at Lake Michigan, then South along the Indiana-Illinois State line to Route 24. West on Route 24 to Route 52. Northwest on Route 52 to where it becomes Route 52, 45 and 116. West on Routes 52, 45 and 116 to the northern outskirts of Pontiac to Route 23. North, West and North again on route 23 to the western outskirts of Ottawa to Route 6. West on Route 6 to Route 51 and 52. North on Route 51 to Route 64. East on Route 64 to Route 23. North on Route 23 to Route 173. East on Route 173 to the Lake County line. North on the Lake County line to the Illinois-Wisconsin State line. Then east on the Illinois-Wisconsin State line to Lake Michigan.

26.13  The terms and conditions of this Agreement shall only be effective in that portion of the territorial jurisdiction described in 26.12 which lies within Cook, Lake and DuPage Counties.

## ARTICLE XXVII
## DUES CHECK-OFF

27.1  It is agreed by the parties that after May 31, 1977, by written notice to EMPLOYER, a Union Dues Check-Off may be required at the option of the UNION. The EMPLOYER shall deduct current UNION dues as certified by the UNION from the pay of each Employee who furnishes him with a signed and valid "Check-Off Authorization Form." This amount shall be set by the UNION. A change in this amount will be communicated in writing by the UNION.

27.2    The aforesaid deductions shall be remitted monthly by EMPLOYER to the UNION on the form customarily used for submitting monthly Welfare and Pension Contributions.

27.3    The UNION shall indemnify, defend, and save EMPLOYER harmless against any and all claims, demands, suits or other forms of liability including the payment of costs and reasonable fees of Attorney that shall arise out of or by reason of action taken, or not taken by EMPLOYER for the purpose of complying with any provision of this Article, or in reliance upon any lists, notices or assessments furnished under this Article. The collection of amounts due under this Article shall not be subject to the Settlement of Disputes procedures established in Article XVIII.

### ARTICLE XXVIII
### INDUSTRY ADVANCEMENT FUND

28.1    Each EMPLOYER shall contribute four ($0.04) cents for each hour worked for the EMPLOYER by those of his Employees covered by this Agreement to the MID-AMERICA REGIONAL BARGAINING ASSOCIATION INDUSTRY ADVANCEMENT FUND (MIAF) or such other fund as MARBA in its sole discretion may direct at any time during the term of this Agreement. Inasmuch as the existence and utilization of the Industry Fund should result in increased construction and greater job opportunities, the UNION agrees to cooperate in assuring that the contributions required by this Article are in fact made by EMPLOYERS bound by this Agreement.

28.2    The collection of amounts due under this Article shall not be subject to the Settlement of Disputes procedures established in Article XVIII.

### ARTICLE XXIX
### CHICAGOLAND CONSTRUCTION SAFETY COUNCIL

29.1    Each EMPLOYER shall contribute one ($0.01) cent for each hour worked for the EMPLOYER by those of his Construction Employees covered by this Agreement to the CHICAGOLAND CONSTRUCTION SAFETY COUNCIL, a not-for-profit corporation.

## ARTICLE XXX
## CONSTRUCTION INDUSTRY SERVICE CORPORATION

30.1    Each EMPLOYER shall contribute one ($0.01) cent for each hour worked for the EMPLOYER by those of his Construction Employees covered by this Agreement to the CONSTRUCTION INDUSTRY SERVICE CORPORATION, a not-for-profit corporation.

## ARTICLE XXXI
## MARKET AND GEOGRAPHIC AREA COMMITTEE

31.1    Purpose. The purpose of the Committee shall be to provide a mechanism to assist signatory EMPLOYERS in remaining competitive in certain market and/or geographic areas so as to protect and assure continued work opportunities for Employees covered by the Area Agreement.

31.2    Scope and Authority.

(a)    The Market and Geographic Area Committee is authorized and created pursuant to this Article XXXI of the Area Agreement.

(b)    The Committee shall review only formal EMPLOYER requests for changes or modifications to the Area Agreement believed necessary to meet market or geographic area competition, or formal requests for multi-craft project agreements initiated by the National Heavy and Highway Committee and/or the National Building and Construction Trades Department, and it shall determine if adequate economic justification is present to warrant recommending any changes, modifications, or project agreement(s).

(c)    Unless otherwise mutually agreed to, the Committee shall review EMPLOYER requests involving private work and Project agreement requests from the National Heavy and Highway Committee and/or National Building and Construction Trades Department.

(d)    The Committee shall not be authorized to add to, subtract from or otherwise modify terms of the Area Agreement, except as provided in this Article.

(e)    The Committee shall not act in an arbitrary or capricious manner.

31.3 Definitions.

-45-

(a)    Market Area. A "market area" is considered to be a type or category of work.

(b)    Geographic Area. Geographic Area means a particular geographic area within the territorial jurisdiction of the Chicago Regional Council of Carpenters Area Agreement.

(c)    Adequate Economic Justification. As used in 30.2(b) of the Area Agreement, it means the request must be supported by VERIFIABLE data. The Committee may accept the data as presented, or request that it be verified and substantiated by the UNION, which shall have authority to do so.

31.4    Committee Composition. The Committee shall be composed of three (3) representatives of the EMPLOYER and three (3) representatives of the UNION.

31.5    Meetings and Voting.

(a)    A Committee meeting may be called by any two members of the Committee at the request of any party to the Area Agreement, and such requests shall be made by mail to all participants at least ten (10) days prior to the desired meeting date. However, the ten (10) day notice requirement may be waived upon mutual agreement if the circumstances so dictate.

(b)    The Committee at its meeting shall ascertain whether a market area has been substantially lost, or is rapidly being lost. If an affirmative determination is made, the Committee may recommend an addendum to the Master Agreement, the content of which will be subject to a majority vote of the Committee. Any addendum would become effective upon approval of the Council and the Association party to the Area Agreement and becomes effective on the date specified in any such Addendum as to each EMPLOYER only within those portions of the Geographic Area(s) in which such EMPLOYER is bound to a collective bargaining agreement with the UNION and only as to those portions of the Geographic Area and/or Market Area as specifically described in any such Addendum.

(c)    The Committee shall also determine from time to time whether or not to recommend that any addendum shall continue to apply, be terminated or otherwise modified.

Provided, however, that any job or project covered by an addendum shall remain covered until job/project completion.

## ARTICLE XXXII
## SUBSTANCE ABUSE AND RECOVERY PROGRAM

32.1    The parties recognize the problems created by drug and alcohol abuse and the need to develop prevention and treatment programs. The EMPLOYER and the UNION seek to protect people and property and to provide a safe working environment. The purpose of the following program is to establish and maintain a drug free, alcohol free, safe, healthy work environment for all its Employees.

32.2    Definitions.

a.    Company Premises - The term "Company Premises" as used in this policy includes all property, facilities, land, buildings, structures, automobiles, trucks and other vehicles owed. leased or used by the company. Construction job sites for which the company has responsibility are included.

b.    Prohibited Items & Substances - Prohibited substances include illegal drugs including controlled substances, look alike drugs and designer drugs, alcoholic beverages, and drug paraphernalia in the possession of or being used by an Employee on the job.

c.    Employee - Individuals who perform work for the EMPLOYER, including, but not limited to, management, supervision, engineering, craft workers and clerical personnel.

d.    Accident - Any event resulting in injury to a person or property to which an Employee, or contractor/contractor's Employee, contributed as a direct or indirect cause.

e.    incident - An event which has all the attributes of an accident, except that no harm was caused to person or property.

f.    Reasonable Cause - Reasonable cause shall be defined as excessive tardiness, excessive absenteeism, and erratic behavior such as noticeable imbalance, incoherence, and disorientation.

32.3    Confidentiality

-47-

a.    All parties to this policy and program have only the interests of Employees in mind, therefore, encourage. any Employee, with substance abuse problem to come forward and voluntarily accept our assistance in dealing with the illness. An Employee assistance program will provide guidance and direction for an Employee during the Employee's recovery period. If an Employee volunteers for help, the company will make every reasonable effort to return the Employee to work upon the Employee's recovery. The company will also take action to assure, that the, illness is handled in a confidential manner.

b.    All actions taken under this policy and program will be confidential and disclosed only to those, with a "need to know".

c.    When a test is required, the specimen will be identified by a code number, not by name, to insure confidentiality of the donor. Each specimen container will be properly labeled and made tamper proof. The donor must witness this procedure.

d.    Unless an initial positive result is confirmed as positive, it shall be deemed negative and reported by the laboratory as such.

c.    The handling and transportation of each specimen will be properly documented through the strict chain of custody procedures.

31.4    Rules-Disciplinary Actions-Grievance Procedures

1.    Rules - All Employees must report to work in a physical condition that will enable them to perform their jobs in a safe and efficient manner. Employees shall not:

a.    Use, possesses, dispense or receive prohibited substances on or at the job site.; or

b.    Report to work with any measurable amount of prohibited substances in their system.

2.    Discipline - when the company has reasonable cause to believe an Employee is under the influence of a prohibited substance for reasons of safety, the Employee may be suspended until test results are available. If no test results are received after three (3) working.days, the Employee, if available, shall be returned to work with back pay. If the test results prove negative, the Employee shall be reinstated with back pay. In all other cases:

-48-

a.     Applicants testing positive for drug use will not be hired.

b.     Employees who have not voluntarily come forward, and who test positive for a drug use, will be terminated.

c.     Employees who refuse to cooperate with testing procedures will be terminated.

d.     Employees found in possession of drugs or drug paraphernalia will be terminated.

e.     Employees found selling or distributing drugs will be terminated.

f.     Employees found under the influence of alcohol while on duty, or while operating a company vehicle, will be subject to terminate.

3.     Prescription Drugs - Employees using a prescribed medication which may impair the performance of job duties, either mental or motor functions, must immediately inform their supervisor of such prescription drug use. For the safety of all Employees, the company will consult with an Employees physician to determine if a re-assignment of duties is necessary. The company will attempt to accommodate an Employee's needs by making an appropriate re-assignment. However, if a re-assignment is not possible, an Employee will be place on temporary medical leave until released as fit for duty by the prescribing physician.

4.     Grievance - All aspects of this policy and program shall be subject to the grievance procedure of the applicable collective bargaining agreement.

32.5    Drug/Alcohol Testing

The parties to this policy and program agreement that under certain circumstances, the company will find it necessary to conduct drug and alcohol testing. While "random" testing is not necessary for the proper operation of this policy and program, it may be necessary to require testing under the, following conditions:

a.     A pre-employment drug and alcohol test may be administered to all applicants for employment;

b.     A test may be administered in the event a supervisor has reasonable cause to believe that the Employee has reported to work under the influence, or is or has been under the

influence while on the job: or has violated this drug policy. During the process of establishing reasonable cause for testing the Employee has the right to request his on site representative to be present;

    c.    Testing may be required if an Employee is involved in a workplace accident/incident or if there is a workplace injury;

    d.    Testing may be required as part of a follow-up to counseling or rehabilitation for substance abuse, for up to a one (1) year period,

    e.    Employee may also be tested on a voluntary basis.

Each Employee will be required to sign a consent and chain of custody form, assuring proper documentation and accuracy. If an Employee refuses to sign a consent form authorizing the test, ongoing employment by the company will be terminated.

Drug testing will be conducted by an independent accredited laboratory (National Instituted on Drug Abuse and/or College of American Pathology) and may consist of either blood or urine tests, or both as required. Blood test will be utilized for post accident investigation only.

The company will bear the costs of all testing procedures.

32.6    Rehabilitation and Employee Assistance Program

    (a)    Employees are encouraged to seek help for a drug or alcohol problem before it deteriorates into a disciplinary matter. If an Employee voluntarily notifies supervision that he or she may have a substance abuse problem the company will assist the Employee to enroll in the Member Assistance Program (MAP) for that treatment, and will also counsel the Employee regarding medical benefits available under the company or union health and welfare/insurance program.

    (b)    If treatment necessitates time away from work, the company shall provide for the Employee an unpaid leave of absence for purposes of participation in an agreed upon treatment program. An Employee who successfully completes a rehabilitation program shall be reinstated to his/her former employment status, if work for which he/she is qualified exists.

(c) Employees returning to work after successfully completing the rehabilitation program will be subject to drug tests without prior notice for a period of one year. A positive test will than result in disciplinary action as previously outlined in this policy and program.

## ARTICLE XXXIII
## DIVERS AND DIVER TENDERS
## SCOPE OF WORK

33.1    EMPLOYER recognizes that the UNION claims jurisdiction of the work performed by divers and diver tenders on diving operations, the maintenance of all equipment including submarine diving in all its branches and phases, such as salvaging of all ships, vessels, barges, etc.; underwater installation, repair, maintenance and cleaning, modification and inspection of docks, bridges, breakwater and piers, cofferdams, intake and discharge structures an conduits, locks and dams, flumes, sewerage and water systems; underwater construction and reconstruction, underwater and habitat welding and cutting; concrete forming, pouring, drilling, sawing and breaking; ariel lift and trash pump dredging and jetting requiring diver assistance; application of underwater coatings and sealants such as epoxies, paints, cement and grouts; underwater demolition and blazing rigging; and steel erection. Also claimed herein is industrial diving of all kinds such as is found at power plants, steel mills, refineries and other heavy industries. This is to include the underwater installation, repair, maintenance and cleaning, modification and inspection of: intake and discharge structures and piping, tunnels, wells, forebays, flumes, water pumping and screening equipment, trash racks, stoplogs and bulkheads, valves and gates, cooling towers and canals, clarifiers and thickeners, liquid vessels of all kinds, floating booms, fish barrier nets, reactor vessels and fuel pools; all pipes; installation and burial of utility and telephone cables beneath the seabed; installation and maintenance of pond and canal liner materials such as geotestiles and polymeric textiles where a diver is required; installation and maintenance of underwater instrumentation, searches, surveys and recoveries of any kind.

## RATES OF PAY

33.2    A diver shall receive the regular Journeyman Carpenter's rate of pay as established in their area agreement; for any day or part thereof the diver is required to descend below the surface down to fifty (50) feet.

33.3   A tender may be paid a minimum of fifty (50%) percent of the Journeyman Carpenter's wage rate. When no diving takes place on a given day, then the tender will be paid for all actual hours worked.

## WORKING CONDITIONS

33.4   When a diver is performing diving work under the terms and conditions of this Agreement, the diver shall be tendered by a tender who is satisfactory to the diver concerned. The tender is in the bargaining unit and therefore covered by their Agreement.

33.5   No tender shall tend, maintain or assist more than one (1) diver at a time and no working diver shall be left untended.

33.6   The minimum crew size shall be one (1) diver and one (1) tender for air diving; one (1) diver, one (1) tender, and one (1) manifold operator for mixed gas diving.

33.7   Divers will dress in and out as part of the workday. Tenders will prepare, maintain, and secure equipment as part of the workday.

33.8   Suitable facilities will be provided, by the contractor, for divers to dress and dry their gear, with heating as needed.

## TRAINING AND SAFETY

33.9   Contractors and Employees with regard to diving operations must comply with O.S.H.A. - 1910.410. Dive training achieved from field experience and classroom training in hard hat diving must be verifiable with a "dive log book" and an approved "dive certification" prior to employment. (Military or company training records can determine Employee qualifications and technical ability.) All dive team personnel must be properly trained in CPR and First Aid with current certifications.

33.10  Mixed-Gas diving, being more sophisticated, shall require a written notice and arrangements being made with the Regional Council.

33.11  This Article covers the geography jurisdiction of Cook, Du Page, Grundy, Iroquois, Kane, Kankakee, Kendall, Lake, McHenry, and Will Counties, Illinois, as well as diving work on Lake Michigan and its waterfront in Lake, Porter, and La Porte Counties, Indiana.

## ARTICLE XXXIV
## UNITED BROTHERHOOD OF CARPENTERS
## NATIONAL FUNDS

34.1    In addition to any contributions otherwise called for herein, the parties agree that the Employer shall make a contribution of four cents ($.04) per hour worked for each employee covered by this Agreement to the Carpenters International Training Fund ("Training Fund"). The parties also agree that the Employer shall make a contribution of two cents ($.02) per hour worked for each employee covered by this Agreement to the UBC Labor Management Education and Development Fund ("Eduction Fund"). Payment shall be made to the Training Fund and the Education Fund or to such collection agent as it is designed by the Training Fund and Education Fund on or before the 20th day of the month following the month of the work performed. The Employer hereby agrees to be bound by the Agreements and Declarations of Trust for the Training Fund and the Education Fund as they exist and as they may be amended or restated, and to such rules, regulations and other governing documents adopted pursuant to such Trusts.

## ARTICLE XXXV
## LABOR/MANAGEMENT UNION CARPENTRY
## COOPERATION PROMOTION FUND

35.1    The parties hereby establish a Labor/Management Union Carpentry Cooperation Promotion Fund to enhance the use of Union Carpentry Construction to increase opportunities for UNION members and signatory EMPLOYERS. This Fund shall be collected by the fringe bene-fit offices affiliated with the Chicago Regional Council of Carpenters. This Fund shall be used solely to promote the Union Carpentry Industry and shall be governed by a Board of Trustees based on the equal representation of three (3) UNION and three (3) EMPLOYER Representatives. All expenses, remuneration and salaries shall be decided by a majority vote of Fund Trustees. Each EMPLOYER shall contribute $0.02 cents per hour for each hour worked for the EMPLOYER by those of his Employees covered by this Agreement.

The collection of amounts due under this Article shall not be subject to the Settlement of Disputes procedures established in Article XVIII.

## ARTICLE XXXVI
## SAVINGS CLAUSE

36.1    Should any part of or any provisions herein contained be rendered or declared invalid by reason of any existing or subsequent enacted legislation, or by any decree of a court of competent jurisdiction, such invalidation of such part or portion of this Agreement shall not invalidate the remaining portions thereof; provided, however, upon such invalidation the parties signatory hereto agree to immediately meet to renegotiate such parts or provisions affected.

36.2    All of the provisions contained in Articles I through XXI shall be and they are hereby made a part of Articles XXII through XXVI, except that if any of the provisions pertaining to the respective classifications, as set out in Articles XXII through XXVI are deemed to be inconsistent with any of the provisions of Articles XXII through XXVI shall apply, but only to the Employees referred to in Articles XXII through XXVI.

IN WITNESS WHEREOF, the parties have executed this Agreement on the 1st day of June, 2005.

CHICAGO REGIONAL COUNCIL OF CARPENTERS.

Martin C. Umlauf, President/Executive Secretary Treasurer

Jeffrey Isaacson, First Vice President


BUILDERS' ASSOCIATION OF GREATER CHICAGO


LAKE COUNTY CONTRACTORS ASSOCIATION


ILLINOIS ROAD BUILDERS ASSOCIATION


UNDERGROUND CONTRACTORS ASSOCIATION

By: MID-AMERICA REGIONAL BARGAINING ASSOCIATION

Their Collective Bargaining Agent:


Paul Hellerman, President

-54-

# EXHIBIT B

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Discrepancy Summary By Reporting Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number** 23301 | January, 2003 To June, 2005 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br>1 of 33<br><br>**Total Discrepancies This Report**<br>51,308.25 Hours |

| Reporting Period | Discrepancy Hours | Contribution Rate | Discrepancy Dollars |
|---|---|---|---|
| January, 2003 | 1,516.75 | 8.80 | $ 13,347.40 |
| February, 2003 | 1,886.25 | 8.80 | 16,599.00 |
| March, 2003 | 1,814.00 | 8.80 | 15,963.20 |
| April, 2003 | 1,660.75 | 8.80 | 14,614.60 |
| May, 2003 | 1,943.00 | 8.80 | 17,098.40 |
| June, 2003 | 1,657.50 | 9.65 | 15,994.88 |
| July, 2003 | 1,707.50 | 9.65 | 16,477.38 |
| August, 2003 | 1,360.75 | 9.65 | 13,131.24 |
| September, 2003 | 2,282.00 | 9.65 | 22,021.30 |
| October, 2003 | 2,067.25 | 9.65 | 19,948.96 |
| November, 2003 | 1,076.50 | 9.65 | 10,388.23 |
| December, 2003 | 1,012.25 | 9.65 | 9,768.21 |
| January, 2004 | 1,329.00 | 9.65 | 12,824.85 |
| February, 2004 | 1,044.25 | 9.65 | 10,077.01 |
| March, 2004 | 1,157.00 | 9.65 | 11,165.05 |
| April, 2004 | 1,252.25 | 9.65 | 12,084.21 |
| May, 2004 | 1,346.75 | 9.65 | 12,996.14 |
| June, 2004 | 2,166.00 | 11.05 | 23,934.30 |
| July, 2004 | 1,670.75 | 11.05 | 18,461.79 |
| August, 2004 | 1,427.25 | 11.05 | 15,771.11 |
| September, 2004 | 1,620.00 | 11.05 | 17,901.00 |
| October, 2004 | 1,261.25 | 11.05 | 13,936.81 |
| November, 2004 | 1,611.25 | 11.05 | 17,804.31 |
| December, 2004 | 1,373.25 | 11.05 | 15,174.41 |
| January, 2005 | 1,499.50 | 11.05 | 16,569.48 |
| February, 2005 | 1,754.25 | 11.05 | 19,384.46 |
| March, 2005 | 2,294.75 | 11.05 | 25,356.99 |
| April, 2005 | 2,538.75 | 11.05 | 28,053.19 |
| May, 2005 | 3,133.50 | 11.05 | 34,625.18 |
| June, 2005 | 2,844.00 | 12.70 | 36,118.80 |

| | | | |
|---|---|---|---|
| **Report Sub-Total** | 51,308.25 | | $   527,591.89 |
| **Liquidated Damages (1)** | | | 105,518.38 |
| **Grand Total Due** | | | $   633,110.27 |

(1) Details Attached.

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Liquidated Damages

| Report on the Compliance of | Covering The Period of |
|---|---|
| **Account Number**   23301 | January, 2003 To June, 2005 |
| J & J INTERIORS SPECIALTIES INC | **Page Number** |
| 214 PARK ST | 2 of 33 |
| BENSENVILLE, IL. 60106 | **Total Discrepancies This Report** |
| (630)694-0700 | 51,308.25 Hours |

| Reporting Period | Discrepancy Dollars | Compounding Periods | Computed Damages (2) | Total (3) Damages For Reporting Period |
|---|---|---|---|---|
| January, 2003 | 13,347.40 | 55 | 16,923.76 | |
| February, 2003 | 16,599.00 | 54 | 20,490.26 | |
| March, 2003 | 15,863.20 | 53 | 19,478.29 | |
| April, 2003 | 14,614.60 | 52 | 17,082.62 | |
| May, 2003 | 17,098.40 | 51 | 19,417.02 | |
| June, 2003 | 15,994.88 | 50 | 17,678.22 | |
| July, 2003 | 16,477.58 | 49 | 17,698.85 | |
| August, 2003 | 13,131.24 | 48 | 13,702.16 | |
| September, 2003 | 22,021.30 | 47 | 22,313.12 | |
| October, 2003 | 19,948.96 | 46 | 19,620.33 | |
| November, 2003 | 10,388.23 | 45 | 9,912.58 | |
| December, 2003 | 9,768.21 | 44 | 9,038.85 | |
| January, 2004 | 12,824.85 | 43 | 11,502.35 | |
| February, 2004 | 10,077.01 | 42 | 8,755.38 | |
| March, 2004 | 11,165.05 | 41 | 9,392.36 | |
| April, 2004 | 12,084.21 | 40 | 9,836.77 | |
| May, 2004 | 12,996.14 | 39 | 10,230.69 | |
| June, 2004 | 23,934.30 | 38 | 18,209.17 | |
| July, 2004 | 18,461.79 | 37 | 13,565.29 | |
| August, 2004 | 15,771.11 | 36 | 11,183.92 | |
| September, 2004 | 17,901.00 | 35 | 12,242.16 | |
| October, 2004 | 13,936.81 | 34 | 9,184.31 | |
| November, 2004 | 17,804.31 | 33 | 11,296.46 | |
| December, 2004 | 15,174.41 | 32 | 9,261.31 | |
| January, 2005 | 16,569.18 | 31 | 9,778.54 | |
| February, 2005 | 19,384.46 | 30 | 10,915.01 | |
| March, 2005 | 25,356.99 | 29 | 13,692.28 | |
| April, 2005 | 28,053.19 | 28 | 14,509.73 | |
| May, 2005 | 31,625.18 | 27 | 17,132.55 | |
| June, 2005 | 36,118.80 | 26 | 17,073.70 | |
| 30 Period(s) | $ 527,591.89 | | $ 420,779.35 | $ 105,518.38 |

(2) 1.5 % Compounded per Month (or portion thereof)
(3) Total Damages Not To Exceed The 20% ERISA Limitation

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Legend of Discrepancy Codes Encountered

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number** 23301 | January, 2003 To June, 2005 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630) 694-0700 | **Page Number**<br><br>3 of 33<br><br>**Total Discrepancies This Period**<br><br>51,308.25 Hours |

| Code | Discrepancy Description | Amount |
|---|---|---:|
| | **SIGNATORY EMPLOYER – PAYROLL** | |
| 101 | Clerical Error | 374.95 |
| 101A | Clerical Error | 0.00 |
| 102 | Hours Worked Prior To Reporting | 2,779.20 |
| 103 | Omission – Reported Individual | 2,507.10 |
| 107 | Individual Receiving Comparable Wages | 366.70 |
| 113A | Omission – Record Individ. Performing Covered Work | 0.00 |
| | **ASSOCIATED COMPANY(S) – PAYROLL** | |
| 502 | Hours Worked Prior To Reporting | 81,968.82 |
| 503 | Omission – Reported Individual | 190,827.40 |
| 503A | Omission – Reported Individual | 1,331.70 |
| 504 | Omission – Electronic Record Individual | 21,819.10 |
| 505 | Omission – Individual Performing Covered Work | 6,751.45 |
| 507 | Individual Receiving Comparable Wages | 34,508.58 |
| 513 | Omission – Record Individ. Performing Covered Work | 5,346.84 |
| 525 | Omission – Supplemental Pay | 49.73 |
| | **ASSOCIATED COMPANY(S) – CASH DISBURSEMENTS** | |
| 601 | Subcontracting – 100 % Labor Factor Applied | 24,340.31 |
| 604 | Subcontracting – Labor Stated | 6,295.74 |
| 610A | Omission – Record Individ. Performing Covered Work | 288.95 |
| 682 | Hours Worked Prior to Reporting | 17,685.79 |
| 682A | Hours Worked Prior to Reporting | 4,943.40 |
| 683 | Omission – Reported Individual | 73,470.36 |
| 683A | Omission – Reported Individual | 2,587.20 |
| 684 | Omission – Electronic Record Individual | 43,362.08 |
| 685 | Omission – Individual Performing Covered Work | 1,140.58 |
| 687 | Omission – Individual Receiving Comparable Wages | 4,845.91 |

| | | |
|---|---|---:|
| Report Sub-Total | $ | 527,591.89 |
| Liquidated Damages (1) | | 105,518.38 |
| Grand Total Due | $ | 633,110.27 |

*[handwritten annotation in left margin: "Not included in settlement of 1st Audit"]*

*[handwritten annotation: "1/15"]*

(1) Details Attached.

James Egan & Associates, Ltd,
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number    23301** | January, 2003 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br><br>4 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br><br>1,516.75 Hours |

| Social Security Number | Employee Name | Hours Reported | Actual Hours Compensated In Period | | | | | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 01/07 | 01/14 | 01/21 | 01/28 | | | | | |
| 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 | BARCO, DANIEL | 22.50 | 22.50 | 0.00 | 0.00 | 0.00 | 0.00 | 22.50 | 22.50 | 0.00 | 101 |
| 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 | 1 BARCO, DANIEL | 0.00 | 100.00 | 8.00 | 20.00 | 0.00 | 0.00 | 128.00 | 152.50 | 128.00 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 129.00 | 27.50 | 0.00 | 0.00 | 0.00 | 156.50 | 175.00 | 156.50 | 503 |
| 102 | CONTINENTAL EXTERIORS, INC. | 0.00 | 29.75 | 0.00 | 0.00 | 0.00 | 0.00 | 29.75 | N/A | 29.75 | 601 |
| 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 | DEHMLOW JR GLENN M | 0.00 | 109.25 | 9.00 | 0.00 | 0.00 | 0.00 | 118.25 | 175.00 | 118.25 | 504 |
| 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 | EARNEST, JAMES S | 16.00 | 16.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16.00 | 16.00 | 0.00 | 101 |
| 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 | 2 EARNEST, JAMES S | 0.00 | 107.00 | 20.00 | 0.00 | 0.00 | 0.00 | 127.00 | 159.00 | 127.00 | 503 |
| 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 | EARNEST, JOSEPH A | 0.00 | 24.50 | 0.00 | 0.00 | 0.00 | 0.00 | 24.50 | 175.00 | 24.50 | 683 |
| 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 | HERMANOWICZ, CHESTER J | 0.00 | 75.00 | 0.00 | 0.00 | 0.00 | 0.00 | 75.00 | 175.00 | 75.00 | 504 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 45.00 | 8.00 | 0.00 | 0.00 | 0.00 | 53.00 | 175.00 | 53.00 | 502 |
| 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 | HUDSON, FRANK A | 0.00 | 87.00 | 0.00 | 0.00 | 0.00 | 0.00 | 87.00 | 175.00 | 87.00 | 503 |
| 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 | HUDSON, SHARON | 0.00 | 0.00 | 0.00 | 27.25 | 26.75 | 0.00 | 54.00 | 175.00 | 54.00 | 687 |
| 109 | J F PHILLIPS, INC | 0.00 | 0.00 | 40.75 | 0.00 | 0.00 | 0.00 | 40.75 | N/A | 40.75 | 601 |
| 110 | K KEUP CONCRETE CONSTRUCTION | 0.00 | 0.00 | 141.00 | 94.00 | 0.00 | 0.00 | 235.00 | N/A | 235.00 | 601 |
| 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 | KNAPPENBURGER, BRIAN | 0.00 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 504 |
| 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 | MRNAK, JEFFREY D | 0.00 | 84.50 | 33.00 | 0.00 | 0.00 | 0.00 | 117.50 | 175.00 | 117.50 | 502 |
| 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 | SMITH, DONALD M | 0.00 | 28.00 | 0.00 | 0.00 | 0.00 | 0.00 | 28.00 | 28.00 | 28.00 | 101 |
| 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 | 3 SMITH, DONALD M | 0.00 | 0.00 | 16.50 | 0.00 | 0.00 | 0.00 | 16.50 | 147.00 | 16.50 | 683 |
| 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 | STOFFEL, JOSEPH E | 0.00 | 0.00 | 28.25 | 0.00 | 18.75 | 47.00 | 94.00 | 175.00 | 94.00 | 684 |
| 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 | TAMEZ III, RALPH | 28.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 175.00 | (28.00) | 101 |
| | **Total Hours This Page** | 66.50 | 332.00 | 45.50 | 1,583.25 | | | | | | |
| | | | 1,017.50 | 141.25 | 47.00 | | | | | 1,516.75 | |

Total Items Listed This Period :    20

Total Difference In Hours This Period :.    1,516.75

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number   23301** | February, 2003 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br><br>5 of 33 |
| [ Actual Hours Compensated In Period ] | **Total Discrepancies This Period**<br><br>1,886.25 Hours |

| Social Security Number | Employee Name | Hours Reported | 02/04 | 02/11 | 02/18 | 02/25 | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BARCO, DANIEL | 160.00 | 40.00 | 40.00 | 40.00 | 40.00 | 0.00 | 160.00 | 160.00 | 0.00 | 101 |
| 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 | .1 BARCO, DANIEL | 0.00 | 16.50 | 0.00 | 0.00 | 0.00 | 0.00 | 16.50 | 15.00 | 15.00 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 105.50 | 56.50 | 6.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | DEHMLOW JR, GLENN W | 0.00 | 93.50 | 57.00 | 9.50 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 504 |
| 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 | EARNEST, JAMES P S | 0.00 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | EARNEST, JOSEPH A | 0.00 | 0.00 | 0.00 | 16.50 | 27.00 | 0.00 | 43.50 | 175.00 | 43.50 | 683 |
| 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 | HUDSON JR, WILLIAM F | 0.00 | 0.00 | 0.00 | 0.00 | 12.50 | 0.00 | 12.50 | 175.00 | 12.50 | 684 |
| 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 | HUDSON, ANTHONY P | 0.00 | 13.25 | 0.00 | 6.25 | 11.75 | 0.00 | 31.25 | 175.00 | 31.25 | 683 |
| 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 | HUDSON, DOUGLAS W | 0.00 | 126.50 | 42.50 | 3.00 | 0.00 | 0.00 | 172.00 | 175.00 | 172.00 | 502 |
| 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 | HUDSON, FRANK A | 0.00 | 229.50 | 0.00 | 0.00 | 0.00 | 0.00 | 229.50 | 175.00 | 175.00 | 503 |
| 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 | HUDSON, SHARON | 0.00 | 27.00 | 0.00 | 0.00 | 23.25 | 0.00 | 50.25 | 175.00 | 50.25 | 687 |
| 109 | J P PHILLIPS, INC. | 0.00 | 0.00 | 0.00 | 0.00 | 56.25 | 0.00 | 56.25 | N/A | 56.25 | 601 |
| 110 | K KEUF CONCRETE CONSTRUCTION | 0.00 | 0.00 | 0.00 | 0.00 | 235.00 | 0.00 | 235.00 | N/A | 235.00 | 601 |
| 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 | KNAPPENBURGER, BRIAN | 0.00 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 504 |
| 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 | MANAK, JEFFREY D | 0.00 | 241.00 | 23.00 | 3.00 | 0.00 | 0.00 | 267.00 | N/A | 267.00 | 502 |
| 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 | SMITH, DONALD M | 56.00 | 0.00 | 0.00 | 16.00 | 40.00 | 0.00 | 56.00 | 56.00 | 0.00 | 113A |
| 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 | .2 SMITH, DONALD M | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 0.00 | 8.00 | 175.00 | 8.00 | 683A |
| 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 | SORIA, VICENTE | 72.00 | 0.00 | 0.00 | 32.00 | 40.00 | 0.00 | 72.00 | 72.00 | 0.00 | 113A |
| 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 | .3 SORIA, VICENTE | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 0.00 | 8.00 | 175.00 | 8.00 | 682A |
| 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 | STOFFEL, JOSEPH F | 0.00 | 0.00 | 0.00 | 47.00 | 78.25 | 47.25 | 0.00 | 172.50 | 175.00 | 172.50 | 684 |
| Total Hours This Page | | 288.00 | | 248.00 | | 549.00 | | 2,230.25 | | 1,886.25 | |
| | | | 1,212.75 | | 220.50 | | 0.00 | | | | |

Total Items Listed This Period :        20

Total Difference In Hours This Period :        1,886.25

**James Egan & Associates, Ltd.**
**Certified Public Accountants**

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number   23301**<br><br>J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700<br><br>[ Actual Hours Compensated In Period ] | March, 2003<br><br>**Page Number**<br><br>6 of 33<br><br>**Total Discrepancies This Period**<br><br>1,814.00 Hours |

| Social Security Number | Employee Name | Hours Reported | Actual Hours Compensated In Period 03/04 | 03/11 | 03/18 | 03/25 | 04/01 | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BARCO, DANIEL | 68.00 | 40.00 | 28.00 | 0.00 | 0.00 | 0.00 | 68.00 | 68.00 | 0.00 | 101 |
| 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 | 1 BARCO, DANIEL | 0.00 | 124.25 | 8.00 | 0.00 | 0.00 | 0.00 | 132.25 | 107.00 | 107.00 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 152.00 | 39.50 | 9.50 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 503 |
| 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 | DEHMLOW JR, GLENN W | 0.00 | 193.25 | 6.75 | 0.00 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 504 |
| 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 | EARNEST, JAMES S | 0.00 | 131.50 | 39.50 | 21.00 | 0.00 | 0.00 | 192.00 | 175.00 | 175.00 | 503 |
| 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 | EARNEST, JOSEPH A | 0.00 | 30.50 | 0.00 | 31.50 | 11.00 | 0.00 | 73.00 | 175.00 | 73.00 | 683 |
| 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 | HUDSON JR, WILLIAM P | 0.00 | 31.25 | 6.25 | 0.00 | 0.00 | 0.00 | 37.50 | 175.00 | 37.50 | 684 |
| 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 | HUDSON, ANTHONY P | 0.00 | 48.50 | 24.00 | 50.50 | 53.75 | 0.00 | 176.75 | 175.00 | 175.00 | 683 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 65.50 | 60.00 | 21.00 | 0.00 | 0.00 | 146.50 | 175.00 | 146.50 | 502 |
| 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 | HUDSON, FRANK A | 0.00 | 137.00 | 8.00 | 0.00 | 0.00 | 0.00 | 145.00 | 175.00 | 145.00 | 503 |
| 109 | JOE PHILLIPS, INC | 0.00 | 0.00 | 0.00 | 6.25 | 0.00 | 0.00 | 6.25 | N/A | 6.25 | 601 |
| 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 | MRNAK, JEFFREY D | 0.00 | 169.50 | 38.50 | 4.00 | 0.00 | 0.00 | 212.00 | 175.00 | 175.00 | 502 |
| 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 | MRNAK, JEFFREY D | 0.00 | 20.25 | 0.00 | 0.00 | 0.00 | 0.00 | 20.25 | 0.00 | 0.00 | 682 |
| 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 | SMITH, DONALD M | 0.00 | 40.00 | 24.00 | 32.00 | 0.00 | 0.00 | 96.00 | 175.00 | 96.00 | 683 |
| 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 | SORIA, VICENTE | 40.00 | 40.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40.00 | 40.00 | 0.00 | 112A |
| 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 | 3 SORIA, VICENTE | 0.00 | 0.00 | 44.50 | 40.50 | 75.75 | 0.00 | 160.75 | 175.00 | 160.75 | 682A |
| 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 | TAMEZ III, RALPH | 24.00 | 24.00 | 0.00 | 0.00 | 0.00 | 0.00 | 24.00 | 24.00 | 0.00 | 113A |
| 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 | 4 TAMEZ III, RALPH | 0.00 | 0.00 | 27.00 | 52.25 | 75.75 | 0.00 | 155.00 | 175.00 | 155.00 | 683A |
| 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 | WELCH, DONALD E | 20.50 | 0.00 | 20.50 | 0.00 | 0.00 | 0.00 | 20.50 | 20.50 | 0.00 | 113A |
| 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 | 5 WELCH, DONALD E | 0.00 | 0.00 | 4.00 | 8.00 | 0.00 | 0.00 | 12.00 | 175.00 | 12.00 | 610A |
| Total Hours This Page : | | 152.50 | 377.50 | 216.25 | | | | 2,117.75 | | | |
| | | | 1,247.50 | 276.50 | | | 0.00 | 1,814.00 | | | |

Total Items Listed This Period :    20

Total Difference In Hours This Period :    1,814.00

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number**  23301 | April, 2003 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630) 694-0700 | **Page Number**<br>7 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br>1,660.75 Hours |

| Social Security Number | Employee Name | Hours Reported | Actual Hours Compensated In Period | | | | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 04/08 | 04/15 | 04/22 | 04/29 | | | | |
| 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 | BARCO, DANIEL | 130.00 | 40.00 | 40.00 | 14.50 | 35.50 | 0.00 | 130.00 | 130.00 | 0.00 | 101 |
| 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 | 1 BARCO, DANIEL | 0.00 | 25.75 | 0.00 | 0.00 | 0.00 | 0.00 | 25.75 | 45.00 | 25.75 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 91.00 | 25.00 | 0.00 | 0.00 | 0.00 | 116.00 | 175.00 | 116.00 | 503 |
| 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 | DEHMLOW JR, GLENN W | 0.00 | 120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 120.00 | 175.00 | 120.00 | 504 |
| 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 | EARNEST, JAMES S | 0.00 | 50.00 | 37.50 | 32.50 | 0.00 | 0.00 | 120.00 | 135.00 | 120.00 | 503 |
| 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 | EARNEST, JOSEPH A | 0.00 | 27.00 | 51.50 | 0.00 | 0.00 | 0.00 | 78.50 | 175.00 | 78.50 | 683 |
| 107 | GARCIA'S DRYWALL CONSTRUCTION | 0.00 | 0.00 | 0.00 | 0.00 | 47.00 | 0.00 | 47.00 | N/A | 47.00 | 601 |
| 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 | HUDSON, ANTHONY P | 0.00 | 55.75 | 58.00 | 52.75 | 0.00 | 0.00 | 166.50 | 175.00 | 166.50 | 683 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 128.00 | 43.00 | 50.50 | 0.00 | 0.00 | 221.50 | 175.00 | 175.00 | 502 |
| 112 | MARSCH CONCRETE CONSTRUCTION | 0.00 | 0.00 | 0.00 | 156.50 | 0.00 | 0.00 | 156.50 | N/A | 156.50 | 601 |
| 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 | HRNAK, JEFFREY | 0.00 | 103.00 | 22.50 | 62.00 | 0.00 | 0.00 | 187.50 | 175.00 | 175.00 | 502 |
| 115 | OVERHEAD DOOR COMPANY OF ? | 0.00 | 0.00 | 4.25 | 0.00 | 0.00 | 0.00 | 4.25 | N/A | 4.25 | 601 |
| 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 | SMITH, DONALD M | 74.50 | 0.00 | 0.00 | 34.50 | 40.00 | 0.00 | 74.50 | 74.50 | 0.00 | 101 |
| 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 | 2 SMITH, DONALD M | 0.00 | 12.00 | 57.00 | 41.00 | 29.00 | 0.00 | 139.00 | 100.50 | 100.50 | 683 |
| 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 | SORIA, VICENTE | 71.00 | 0.00 | 0.00 | 31.00 | 40.00 | 0.00 | 71.00 | N/A | 0.00 | 113A |
| 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 | 3 SORIA, VICENTE | 0.00 | 41.75 | 73.25 | 65.00 | 38.00 | 0.00 | 218.00 | N/A | 218.00 | 682A |
| 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 | YANEZ III, RALPH | 0.00 | 41.75 | 23.00 | 47.50 | 45.50 | 0.00 | 157.75 | 175.00 | 157.75 | 683 |
| **Total Hours This Page** | | 275.50 | 430.75 | | 275.00 | | | 2,033.75 | | | |
| | | | 736.00 | | 592.00 | | 0.00 | | | 1,660.75 | |

Total Items Listed This Period :  17

Total Difference In Hours This Period :  1,660.75

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| ⬥ Report on the Compliance of ⬥ | ⬥ Covering the Period of ⬥ |
|---|---|
| **Account Number** 23301 | May, 2003 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | ⬥ Page Number ⬥<br>8 of 33 |
| [ Actual Pay Date ] | ⬥ Total Discrepancies This Period ⬥<br>1,943.00 Hours |

| Social Security Number | Employee Name | Hours Reported | 05/06 | 05/13 | 05/20 | 05/27 | 06/03 | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BARCO, DANIEL | 29.00 | 29.00 | 0.00 | 0.00 | 0.00 | 0.00 | 29.00 | 29.00 | 0.00 | 101 |
| 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 | 1 BARCO, DANIEL | 0.00 | 131.25 | 0.00 | 0.00 | 0.00 | 0.00 | 131.25 | 146.00 | 131.25 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 195.00 | 0.00 | 0.00 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 503 |
| 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 | DEHMLOW JR, GLENN W | 0.00 | 200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 504 |
| 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 | EARNEST, JAMES S | 21.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 21.00 | 21.00 | 0.00 | 101 |
| 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 | 2 EARNEST, JAMES S | 0.00 | 165.50 | 6.50 | 0.00 | 0.00 | 0.00 | 172.00 | 154.00 | 154.00 | 503 |
| 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 | EARNEST, JOSEPH A | 0.00 | 0.00 | 0.00 | 14.00 | 0.00 | 0.00 | 14.00 | 14.00 | 14.00 | 683 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 75.50 | 64.00 | 21.00 | 0.00 | 0.00 | 160.50 | 175.00 | 160.50 | 502 |
| 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 | HUDSON, SHARON | 0.00 | 46.50 | 23.25 | 23.25 | 23.25 | 0.00 | 116.25 | 175.00 | 116.25 | 687 |
| 111 | LA FORCE, INC. | 0.00 | 0.00 | 0.00 | 232.00 | 0.00 | 0.00 | 232.00 | N/A | 232.00 | 601 |
| 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 | MRNAK, JEFFREY D | 0.00 | 232.00 | 13.00 | 21.50 | 0.00 | 0.00 | 268.50 | N/A | 268.50 | 502 |
| 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 | SMITH, DONALD M | 93.00 | 19.00 | 37.00 | 13.00 | 24.00 | 0.00 | 93.00 | 93.00 | 0.00 | 101 |
| 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 | 3 SMITH, DONALD M | 0.00 | 31.00 | 1.75 | 19.00 | 15.50 | 0.00 | 67.25 | 82.00 | 67.25 | 683 |
| 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 | SORIA, ANTONIO | 38.00 | 38.00 | 0.00 | 0.00 | 0.00 | 0.00 | 38.00 | 38.00 | 0.00 | 113A |
| 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 | 4 SORIA, ANTONIO | 0.00 | 30.00 | 46.25 | 53.50 | 74.00 | 0.00 | 203.75 | 175.00 | 175.00 | 682A |
| 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 | SORIA, VICENTE | 81.00 | 37.00 | 0.00 | 12.00 | 32.00 | 0.00 | 81.00 | 81.00 | 0.00 | 101A |
| 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 | 5 SORIA, VICENTE | 0.00 | 33.50 | 46.25 | 63.25 | 29.25 | 0.00 | 152.25 | 131.00 | 131.00 | 682A |
| 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 | TAMEZ III, RALPH | 15.50 | 0.00 | 0.00 | 15.50 | 0.00 | 0.00 | 15.50 | 15.50 | 0.00 | 101 |
| 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 | 6 TAMEZ III, RALPH | 0.00 | 103.75 | 39.50 | 0.00 | 0.00 | 0.00 | 143.25 | 159.50 | 143.25 | 683 |
| | **Total Hours This Page** | 277.50 | | 292.50 | | 198.00 | | 2,338.50 | | 1,943.00 | |
| | | | 1,327.00 | | 321.00 | | 0.00 | | | | |

Total Items Listed This Period :    19

Total Difference In Hours This Period :    1,943.00

**James Egan & Associates, Ltd.**
**Certified Public Accountants**

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number  23301** | June, 2003 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br>9 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br>1,657.50 Hours |

| Social Security Number | Employee Name | Hours Reported | 06/10 | 06/17 | 06/24 | 07/01 | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BARCO, DANIEL | 112.50 | 37.50 | 37.50 | 37.50 | 0.00 | 0.00 | 112.50 | 112.50 | 0.00 | 101 |
| 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 | 1 BARCO, DANIEL | 0.00 | 12.00 | 28.00 | 0.00 | 0.00 | 0.00 | 40.00 | 62.50 | 40.00 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 138.50 | 7.50 | 16.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | DEHMLOW JR, GLENN W | 0.00 | 93.00 | 44.00 | 23.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 504 |
| 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 | EARNEST, JAMES S | 0.00 | 92.00 | 52.00 | 16.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | EARNEST, JOSEPH A | 0.00 | 0.00 | 18.00 | 59.00 | 27.75 | 0.00 | 104.75 | 175.00 | 104.75 | 683 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 108.00 | 15.50 | 10.00 | 0.00 | 0.00 | 134.00 | 175.00 | 134.00 | 502 |
| 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 | HUDSON, SHARON | 0.00 | 0.00 | 23.25 | 0.00 | 0.00 | 0.00 | 23.25 | 175.00 | 23.25 | 687 |
| 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 | MRNAK, JEFFREY D | 0.00 | 215.00 | 0.00 | 0.00 | 0.00 | 0.00 | 215.00 | N/A | 215.00 | 502 |
| 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 | 2 MRNAK, JEFFREY D | 0.00 | 0.00 | 0.00 | 0.00 | 53.25 | 0.00 | 53.25 | N/A | 53.25 | 682 |
| 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 | SMITH, DONALD M | 0.00 | 43.75 | 32.00 | 28.00 | 58.00 | 0.00 | 162.75 | 175.00 | 162.75 | 683 |
| 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 | SORIA, ANTONIO | 0.00 | 40.50 | 75.25 | 54.00 | 80.75 | 0.00 | 250.50 | N/A | 250.50 | 682 |
| 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 | SORIA, VICENTE | 0.00 | 12.25 | 76.75 | 64.00 | 62.25 | 0.00 | 215.25 | 175.00 | 175.00 | 683 |
| 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 | WELCH, DONALD E | 0.00 | 14.00 | 5.00 | 0.00 | 0.00 | 0.00 | 19.00 | 175.00 | 19.00 | 610A |
| | **Total Hours This Page** | 112.50 | 414.75 | 282.00 | | 1,840.25 | | | | 1,657.50 | |
| | | | 841.00 | | 302.50 | | 0.00 | | | | |

Total Items Listed This Period :        14

Total Difference In Hours This Period :        1,657.50

**James Egan & Associates, Ltd.**
**Certified Public Accountants**

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number   23301** | July, 2003 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br>10 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br>1,707.50 Hours |

| Social Security Number | Employee Name | Hours Reported | 07/08 | 07/15 | 07/22 | 07/29 | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BARCO, DANIEL | 37.50 | 137.50 | 0.00 | 0.00 | 0.00 | 0.00 | 37.50 | 137.50 | 0.00 | 101 |
| 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 | 1 BARCO, DANIEL | 0.00 | 119.50 | 19.00 | 21.50 | 0.00 | 0.00 | 160.00 | 137.50 | 137.50 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 176.50 | 15.50 | 8.00 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 503 |
| 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 | DEHMLOW JR, GLENN W | 0.00 | 31.00 | 0.00 | 0.00 | 0.00 | 0.00 | 31.00 | 175.00 | 31.00 | 504 |
| 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 | FARREST, JAMES G | 0.00 | 111.50 | 85.50 | 3.00 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 503 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 111.50 | 77.00 | 36.00 | 0.00 | 0.00 | 224.50 | 175.00 | 175.00 | 502 |
| 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 | HUDSON, SHARON | 0.00 | 24.75 | 23.25 | 23.25 | 23.25 | 23.25 | 117.75 | 175.00 | 117.75 | 682 |
| 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 | KNAPPENBURGER, BRIAN | 0.00 | 200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 504 |
| 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 | MRNAK, JEFFREY D | 0.00 | 65.50 | 56.00 | 42.00 | 0.00 | 0.00 | 163.50 | 175.00 | 175.00 | 502 |
| 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 | 2 MRNAK, JEFFREY D | 0.00 | 29.00 | 0.00 | 0.00 | 0.00 | 0.00 | 29.00 | 0.00 | 0.00 | 682 |
| 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 | SMITH, DONALD M | 0.00 | 30.00 | 47.00 | 0.00 | 0.00 | 0.00 | 77.00 | 77.00 | 77.00 | 505 |
| 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 | 3 SMITH, DONALD M | 0.00 | 0.00 | 0.00 | 9.50 | 7.50 | 16.75 | 33.75 | 98.00 | 33.75 | 683 |
| 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 | SORIA, ANTONIO | 0.00 | 76.75 | 40.25 | 75.25 | 26.00 | 42.25 | 260.50 | N/A | 260.50 | 682 |
| 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 | SORIA, VICENTE | 0.00 | 82.25 | 44.50 | 21.50 | 48.00 | 41.00 | 237.25 | 175.00 | 175.00 | 683 |
| | **Total Hours This Page** | 37.50 | 418.00 | 104.75 | | | | 991.75 | | | |
| | | | 1,115.75 | 230.00 | 123.25 | | | 1,707.50 | | | |

Total Items Listed This Period :        14

Total Difference In Hours This Period :        1,707.50

**James Egan & Associates, Ltd.**
**Certified Public Accountants**

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number** 23301 | August, 2003 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630) 694-0700 | **Page Number**<br><br>11 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br><br>1,360.75 Hours |

| Social Security Number | Employee Name | Hours Reported | Actual Hours Compensated In Period 08/05 | 08/12 | 08/19 | 08/26 | 09/02 | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BARCO, DANIEL | 157.00 | 0.00 | 40.00 | 40.00 | 40.00 | 37.00 | 157.00 | 157.00 | 0.00 | 113A |
| 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 | 1 BARCO, DANIEL | 0.00 | 23.00 | 11.00 | 6.00 | 0.00 | 0.00 | 40.00 | 18.00 | 18.00 | 503A |
| 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 | BAUER, RONALD J | 0.00 | 152.00 | 8.00 | 0.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 75.50 | 55.50 | 29.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | EARNEST, JOSEPH A | 0.00 | 25.00 | 18.50 | 32.00 | 24.00 | 0.00 | 99.50 | 175.00 | 99.50 | 683 |
| 105 | FLOOR COVERING ASSOCIATES | 0.00 | 0.00 | 0.00 | 3.75 | 0.00 | 0.00 | 3.75 | N/A | 3.75 | 601 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 118.50 | 49.50 | 20.00 | 0.00 | 0.00 | 188.00 | 175.00 | 175.00 | 502 |
| 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 | HUDSON, SHARON | 0.00 | 23.25 | 23.25 | 23.25 | 23.25 | 0.00 | 93.00 | 175.00 | 93.00 | 687 |
| 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 | KNAPPENBURGER, BRIAN | 0.00 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 504 |
| 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 | MRNAK, JEFFREY D | 0.00 | 206.50 | 10.00 | 0.00 | 0.00 | 0.00 | 216.50 | 175.00 | 175.00 | 502 |
| 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 | SMITH, DONALD M | 0.00 | 45.00 | 23.00 | 0.00 | 0.00 | 0.00 | 38.00 | 38.00 | 38.00 | 503 |
| 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 | 2 SMITH, DONALD M | 0.00 | 0.00 | 0.00 | 23.50 | 40.00 | 0.00 | 63.50 | 137.00 | 63.50 | 683 |
| 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 | SORIA, ANTONIO | 144.50 | 0.00 | 40.00 | 34.50 | 33.50 | 33.50 | 241.50 | 241.50 | 40.00 | 101A |
| 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 | 3 SORIA, ANTONIO | 0.00 | 23.00 | 11.00 | 6.00 | 0.00 | 0.00 | 40.00 | 108.00 | 40.00 | 503A |
| 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 | SORIA, VICENTE | 0.00 | 38.75 | 19.00 | 85.25 | 67.75 | 0.00 | 210.75 | 175.00 | 175.00 | 683 |
| | **Total Hours This Page** | 298.50 | | 308.75 | | 228.50 | | 1,771.50 | | | |
| | | | 880.50 | | 283.25 | | 70.50 | | | 1,360.75 | |

Total Items Listed This Period :   15

Total Difference In Hours This Period :   1,360.75

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number   23301** | September, 2003 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700<br><br>[ Actual Pay Date ] | **Page Number**<br>12 of 33<br><br>**Total Discrepancies This Period**<br>2,282.00 Hours |

| Social Security Number | Employee Name | Hours Reported | Actual Hours Compensated In Period 09/02 | 09/09 | 09/16 | 09/23 | 09/30 | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BARCO, DANIEL | 84.50 | 40.00 | 40.00 | 37.50 | 0.00 | 0.00 | 84.50 | 84.50 | 0.00 | 101A |
| 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 1 | BARCO, DANIEL | 0.00 | 80.00 | 0.00 | 0.00 | 0.00 | 0.00 | 80.00 | 130.50 | 80.00 | 503A |
| 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 | BAUER, RONALD J | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40.00 | 40.00 | 40.00 | 0.00 | 103 |
| 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 2 | BAUER, RONALD J | 0.00 | 128.50 | 23.50 | 8.00 | 0.00 | 0.00 | 160.00 | 135.00 | 135.00 | 503 |
| 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 2 | BAUER, RONALD J | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 29.50 | 29.50 | 0.00 | 0.00 | 683 |
| 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 | EARNEST, JAMES S | 0.00 | 119.00 | 49.00 | 32.00 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 503 |
| 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 | EARNEST, JOSEPH A | 0.00 | 22.00 | 36.50 | 24.00 | 35.00 | 39.00 | 156.50 | 156.50 | 156.50 | 683 |
| 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 | GAISER, JAMES T | 0.00 | 6.75 | 0.00 | 0.00 | 0.00 | 0.00 | 6.75 | 175.00 | 6.75 | 684 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 157.00 | 46.50 | 47.00 | 0.00 | 0.00 | 251.00 | N/A | 251.00 | 502 |
| 108 | IDEAL GLASS & MIRROR CO. | 0.00 | 0.00 | 56.50 | 0.00 | 0.00 | 0.00 | 56.50 | N/A | 56.50 | 601 |
| 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 | KNAPPENBURGER, BRIAN | 0.00 | 200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 102 |
| 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 | MRNAK, JEFFREY D | 0.00 | 0.00 | 0.00 | 40.00 | 40.00 | 40.00 | 120.00 | N/A | 120.00 | 102 |
| 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 | MRNAK, JEFFREY D | 0.00 | 94.50 | 0.00 | 0.00 | 0.00 | 0.00 | 94.50 | N/A | 94.50 | 502 |
| 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 3 | MRNAK, JEFFREY D | 0.00 | 0.00 | 0.00 | 0.00 | 44.75 | 39.00 | 83.75 | N/A | 83.75 | 682 |
| 114 | OLSON BROS. SERVICE | 0.00 | 0.00 | 0.00 | 53.50 | 0.00 | 0.00 | 53.50 | N/A | 53.50 | 601 |
| 115 | OVERHEAD DOOR COMPANY OF ? | 0.00 | 0.00 | 0.00 | 0.00 | 4.00 | 0.00 | 4.00 | N/A | 4.00 | 601 |
| 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 | RADATTI, JOSEPH | 0.00 | 0.00 | 0.00 | 38.00 | 0.00 | 0.00 | 38.00 | 175.00 | 38.00 | 107 |
| 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 | SMITH, DONALD M | 0.00 | 10.00 | 8.00 | 21.00 | 0.00 | 0.00 | 39.00 | 39.00 | 39.00 | 503 |
| 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 4 | SMITH, DONALD M | 0.00 | 0.00 | 39.00 | 47.00 | 40.00 | 32.00 | 158.00 | 136.00 | 136.00 | 683 |
| 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 | SORIA, ANTONIO | 33.50 | 0.00 | 33.50 | 0.00 | 0.00 | 0.00 | 33.50 | 33.50 | 0.00 | 101 |
| 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 5 | SORIA, ANTONIO | 0.00 | 0.00 | 0.00 | 70.25 | 58.25 | 84.25 | 213.75 | 141.50 | 141.50 | 683 |
| 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 | SORIA, VICENTE | 0.00 | 0.00 | 0.00 | 40.00 | 40.00 | 14.00 | 94.00 | N/A | 94.00 | 103 |
| 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 6 | SORIA, VICENTE | 0.00 | 28.50 | 70.75 | 35.50 | 29.75 | 62.50 | 227.00 | N/A | 227.00 | 683 |
| 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 | TAMEZ, RAUL | 0.00 | 37.75 | 33.25 | 51.25 | 51.25 | 39.50 | 213.00 | 175.00 | 175.00 | 684 |
| | Total Hours This Page | 118.00 | 436.50 | | 344.00 | | 2,636.75 | | | 2,282.00 | |
| | | | 884.00 | 545.50 | | 426.75 | | | | 2,282.00 | |

Total Items Listed This Period :   24

Total Difference In Hours This Period :   2,282.00

James Egan & Associates, Ltd,
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number    23301** | October, 2003 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630) 694-0700 | **Page Number**<br>13 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br>2,067.25 Hours |

| Social Security Number | Employee Name | Hours Reported | 10/07 | 10/14 | 10/21 | 10/28 | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BARCO, DANIEL | 105.50 | 30.50 | 37.50 | 37.50 | 0.00 | 105.50 | 105.50 | 0.00 | 101 |
| 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 | 1 BARCO, DANIEL | 0.00 | 16.00 | 24.00 | 0.00 | 0.00 | 40.00 | 69.50 | 40.00 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 136.50 | 18.50 | 5.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 99.00 | 33.00 | 28.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | EARNEST, JOSEPH A | 0.00 | 0.00 | 45.00 | 33.00 | 32.00 | 110.00 | 175.00 | 110.00 | 683 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 140.00 | 23.50 | 8.50 | 0.00 | 172.00 | 175.00 | 172.00 | 502 |
| 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 | HUDSON, FRANK | 0.00 | 79.00 | 16.00 | 0.00 | 0.00 | 95.00 | 175.00 | 95.00 | 501 |
| 108 | IDEAL GLASS & MIRROR CO. | 0.00 | 0.00 | 0.00 | 0.00 | 131.75 | 0.00 | 131.75 | N/A | 131.75 | 601 |
| 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 | KNAPPENBURGER, BRIAN | 0.00 | 40.00 | 0.00 | 0.00 | 0.00 | 40.00 | 175.00 | 40.00 | 504 |
| 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 | MRNAK, JEFFREY D | 0.00 | 40.00 | 0.00 | 0.00 | 0.00 | 40.00 | 40.00 | 40.00 | 102 |
| 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 | 2 MRNAK, JEFFREY D | 0.00 | 122.00 | 8.00 | 1.00 | 0.00 | 131.00 | 131.00 | 131.00 | 502 |
| 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 | 2 MRNAK, JEFFREY D | 0.00 | 0.00 | 50.50 | 0.00 | 0.00 | 50.50 | 4.00 | 4.00 | 682 |
| 113 | OVERHEAD DOOR COMPANY OF | 0.00 | 0.00 | 0.00 | 27.50 | 0.00 | 27.50 | N/A | 27.50 | 601 |
| 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 | SMITH, DONALD M | 0.00 | 0.00 | 46.00 | 45.00 | 39.00 | 146.00 | 175.00 | 146.00 | 683 |
| 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 | SORIA, ANTONIO | 0.00 | 0.00 | 57.25 | 61.25 | 103.25 | 53.25 | 285.00 | N/A | 285.00 | 683 |
| 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 | SORIA, VICENTE | 0.00 | 0.00 | 44.25 | 73.75 | 53.25 | 50.00 | 221.25 | 175.00 | 175.00 | 683 |
| 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 | STOFFEL, JOSEPH F | 0.00 | 0.00 | 36.00 | 111.25 | 0.00 | 175.00 | 222.25 | 175.00 | 175.00 | 684 |
| 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 | TAMEZ, RAUL | 0.00 | 0.00 | 58.00 | 66.50 | 74.75 | 31.00 | 230.25 | 175.00 | 175.00 | 684 |
| | **Total Hours This Page** | 105.50 | 507.50 | 494.00 | | 2,568.00 | | | | |
| | | | 703.00 | 498.25 | 225.25 | | | | 2,067.25 | |

Total Items Listed This Period :        18

Total Difference In Hours This Period :        2,067.25

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number   23301** | November, 2003 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br><br>14 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br><br>1,076.50 Hours |

| Social Security Number | Employee Name | Hours Reported | 11/04 | 11/11 | 11/18 | 11/25 | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BARCO, DANIEL | 37.50 | 0.00 | 0.00 | 0.00 | 37.50 | 0.00 | 37.50 | 37.50 | 0.00 | 101 |
| 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 | 1 BARCO, DANIEL | 0.00 | 120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 120.00 | 137.50 | 120.00 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 57.00 | 71.00 | 32.00 | 0.00 | 0.00 | 160.00 | 160.00 | 160.00 | 503 |
| 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 | 2 BAUER, RONALD J | 0.00 | 0.00 | 0.00 | 37.75 | 0.00 | 0.00 | 37.75 | 15.00 | 15.00 | 683 |
| 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 | EARNEST, JAMES S | 0.00 | 53.00 | 63.00 | 36.00 | 0.00 | 0.00 | 152.00 | 175.00 | 152.00 | 503 |
| 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 | EARNEST, JOSEPH A | 0.00 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 175.00 | 8.00 | 683 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 44.00 | 21.00 | 6.00 | 0.00 | 0.00 | 71.00 | 175.00 | 71.00 | 507 |
| 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 | HUDSON, FRANK | 0.00 | 211.00 | 0.00 | 0.00 | 0.00 | 0.00 | 211.00 | 175.00 | 175.00 | 507 |
| 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 | MRNAK, JEFFREY D | 0.00 | 16.00 | 16.00 | 0.00 | 0.00 | 0.00 | 44.00 | 175.00 | 44.00 | 502 |
| 115 | OVERHEAD DOOR COMPANY OF ? | 0.00 | 0.00 | 8.00 | 0.00 | 0.00 | 0.00 | 8.00 | N/A | 8.00 | 601 |
| 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 | SORIA, ANTONIO | 0.00 | 28.00 | 15.00 | 0.00 | 51.50 | 0.00 | 84.50 | 175.00 | 84.50 | 683 |
| 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 | SORIA, VICENTE | 0.00 | 12.00 | 0.00 | 0.00 | 34.75 | 0.00 | 46.75 | 175.00 | 46.75 | 683 |
| 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 | STOFFEL, JOSEPH E | 0.00 | 60.00 | 0.00 | 30.00 | 59.00 | 0.00 | 149.00 | 175.00 | 149.00 | 684 |
| 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 | TAMEZ, RAUL | 0.00 | 43.25 | 0.00 | 0.00 | 0.00 | 0.00 | 43.25 | 175.00 | 43.25 | 684 |
| | **Total Hours This Page** | 37.50 | 176.00 | | 182.75 | | 1,172.75 | | | 1,076.50 |
| | | | 672.25 | | 141.75 | 0.00 | | | | |

Total Items Listed This Period :        14

Total Difference In Hours This Period :        1,076.50

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

## Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number  23301** | December, 2003 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630) 694-0700 | **Page Number**<br>15 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br>1,012.25 Hours |

| Social Security Number | Employee Name | Hours Reported | Actual Hours Compensated In Period | | | | | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 12/02 | 12/09 | 12/16 | 12/23 | 12/30 | | | | |
| 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 | BARCO, DANIEL | 112.50 | 0.00 | 37.50 | 37.50 | 37.50 | 0.00 | 112.50 | 112.50 | 0.00 | 101 |
| 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 1 | BARCO, DANIEL | 0.00 | 40.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40.00 | 62.50 | 40.00 | 503 |
| 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 | BAUER, RONALD | 0.00 | 156.50 | 34.00 | 9.50 | 0.00 | 0.00 | 200.00 | 175.00 | 75.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 134.50 | 38.00 | 27.50 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 503 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 82.50 | 16.00 | 9.00 | 0.00 | 0.00 | 107.50 | 175.00 | 107.50 | 502 |
| 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 | HUDSON, FRANK | 0.00 | 132.50 | 0.00 | 0.00 | 0.00 | 0.00 | 132.50 | 175.00 | 132.50 | 507 |
| 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 | MRNAK, JEFFREY D | 0.00 | 0.00 | 0.00 | 56.50 | 73.50 | 0.00 | 120.00 | 175.00 | 120.00 | 682 |
| 115 | OVERHEAD DOOR COMPANY OF ? | 0.00 | 6.50 | 0.00 | 0.00 | 0.00 | 0.00 | 6.50 | N/A | 6.50 | 601 |
| 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 | SORIA, ANTONIO | 0.00 | 75.00 | 44.00 | 21.75 | 61.50 | 0.00 | 160.25 | 175.00 | 160.25 | 683 |
| 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 | SORIA, VICENTE | 0.00 | 0.00 | 15.50 | 24.00 | 40.00 | 16.00 | 95.50 | 175.00 | 95.50 | 683 |
| | Total Hours This Page | 112.50 | 577.50 | 185.00 | 165.75 | 212.50 | 34.00 | 1,174.75 | | 1,012.25 | |

Total Items Listed This Period :          10

Total Difference In Hours This Period :          1,012.25

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number 23301** | January, 2004 |
| J & J INTERIORS SPECIALTIES INC | **Page Number** |
| 214 PARK ST | 16 of 33 |
| BENSENVILLE, IL. 60106 | |
| (630)694-0700 | **Total Discrepancies This Period** |
| [ Actual Pay Date ] | 1,329.00 Hours |

| Social Security Number | Employee Name | Hours Reported | 01/07 | Actual Hours Compensated In Period 01/14 | 01/21 | 01/28 | 02/04 | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BARCO, DANIEL | 75.00 | 0.00 | 0.00 | 0.00 | 37.50 | 37.50 | 75.00 | 75.00 | 0.00 | 101 |
| 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 | 1 BARCO, DANIEL | 0.00 | 80.00 | 0.00 | 0.00 | 0.00 | 0.00 | 80.00 | 100.00 | 80.00 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 118.50 | 41.50 | 0.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 140.00 | 10.00 | 10.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 149.50 | 8.50 | 8.00 | 0.00 | 0.00 | 166.00 | 166.00 | 166.00 | 502 |
| 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 | 2 HUDSON, DOUGLAS M | 0.00 | 0.00 | 0.00 | 0.00 | 35.75 | 0.00 | 35.75 | 9.00 | 9.00 | 682 |
| 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 | HUDSON, FRANK | 0.00 | 194.00 | 0.00 | 0.00 | 0.00 | 0.00 | 194.00 | 175.00 | 175.00 | 501 |
| 108 | IDEAL GLASS & MIRROR CO. | 0.00 | 0.00 | 0.00 | 1.25 | 0.00 | 0.00 | 1.25 | N/A | 1.25 | 601 |
| 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 | MRNAK, JEFFREY D | 0.00 | 0.00 | 45.25 | 58.50 | 1.25 | 0.00 | 105.00 | 175.00 | 105.00 | 682 |
| 115 | OVERHEAD DOOR COMPANY OF ? | 0.00 | 0.00 | 0.00 | 6.75 | 15.25 | 0.00 | 22.00 | N/A | 22.00 | 601 |
| 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 | SORIA, ANTONIO | 0.00 | 48.00 | 56.25 | 29.00 | 34.25 | 0.00 | 117.50 | 175.00 | 117.50 | 683 |
| 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 | SORIA, VICENTE | 0.00 | 24.00 | 69.75 | 64.25 | 42.75 | 0.00 | 200.75 | 175.00 | 175.00 | 683 |
| 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 | STOFFEL, JOSEPH F | 0.00 | 0.00 | 18.00 | 125.25 | 0.00 | 15.00 | 158.25 | 175.00 | 158.25 | 684 |
| | Total Hours This Page | 75.00 | 229.25 | 166.75 | | 1,475.50 | | | | | |
| | | | 724.00 | 303.00 | 52.50 | | | | | 1,329.00 | |

Total Items Listed This Period :    13

Total Difference In Hours This Period :    1,329.00

*James Egan & Associates, Ltd.*
*Certified Public Accountants*

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number** 23301 | February, 2004 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br>17 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br>1,044.25 Hours |

| Social Security Number | Employee Name | Hours Reported | 02/11 | 02/18 | 02/25 | 03/03 | | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BARCO, DANIEL | 112.50 | 37.50 | 37.50 | 0.00 | 37.50 | 0.00 | 112.50 | 112.50 | 0.00 | 101 |
| 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 | 1 BARCO, DANIEL | 0.00 | 40.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40.00 | 62.50 | 40.00 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 50.00 | 10.00 | 0.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 96.00 | 56.00 | 0.00 | 0.00 | 0.00 | 152.00 | 175.00 | 152.00 | 503 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 132.50 | 24.00 | 0.00 | 0.00 | 0.00 | 156.50 | 175.00 | 156.50 | 502 |
| 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 | HUDSON, FRANK | 0.00 | 104.00 | 6.00 | 0.00 | 0.00 | 0.00 | 110.00 | 175.00 | 110.00 | 507 |
| 111 | MGM CONSTRUCTION CO. INC | 0.00 | 20.00 | 0.00 | 0.00 | 20.00 | 0.00 | 20.00 | N/A | 20.00 | 602 |
| 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 | MRNAK, JEFFREY D | 0.00 | 6.25 | 39.25 | 1.00 | 32.25 | 0.00 | 78.75 | 175.00 | 78.75 | 682 |
| 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 | SORIA, ANTONIO J | 0.00 | 16.00 | 27.00 | 29.00 | 15.00 | 0.00 | 77.00 | 175.00 | 77.00 | 683 |
| 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 | SORIA, VICENTE | 0.00 | 53.75 | 57.50 | 45.50 | 56.75 | 0.00 | 213.50 | 175.00 | 175.00 | 683 |
| 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 | STOFFEL, JOSEPH L | 0.00 | 75.00 | 0.00 | 0.00 | 0.00 | 0.00 | 75.00 | 175.00 | 75.00 | 683 |
| | **Total Hours This Page** | 112.50 | 247.25<br>711.00 | 141.50<br>98.50 | 0.00 | 1,195.25 | | | | 1,044.25 | |

Total Items Listed This Period :    11

Total Difference In Hours This Period :    1,044.25

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| Account Number    23301 | March, 2004 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br>18 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br>1,157.00 Hours |

| Social Security Number | Employee Name | Hours Reported | 03/10 | 03/17 | 03/23 | 03/31 | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BARCO, DANIEL | 75.00 | 0.00 | 0.00 | 37.50 | 37.50 | 0.00 | 75.00 | 75.00 | 0.00 | 101 |
| 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 | 1 BARCO, DANIEL | 0.00 | 16.00 | 0.00 | 0.00 | 0.00 | 16.00 | 100.00 | 16.00 | 503 |
| 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 | BADER, RONALD J | 0.00 | 165.00 | 11.00 | 0.00 | 0.00 | 0.00 | 176.00 | 175.00 | 175.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 99.48 | 30.52 | 14.00 | 0.00 | 0.00 | 144.00 | 175.00 | 144.00 | 503 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 103.00 | 28.00 | 0.00 | 0.00 | 0.00 | 131.00 | 175.00 | 131.00 | 502 |
| 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 | HUDSON, FRANK | 0.00 | 80.00 | 19.00 | 9.00 | 0.00 | 0.00 | 108.00 | 175.00 | 108.00 | 507 |
| 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 | MRNAK, JEFFREY D | 0.00 | 80.00 | 0.00 | 0.00 | 0.00 | 0.00 | 80.00 | N/A | 80.00 | 502 |
| 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 | 2 MRNAK, JEFFREY D | 0.00 | 74.00 | 38.50 | 44.75 | 31.00 | 31.00 | 219.25 | N/A | 219.25 | 682 |
| 115 | OVERHEAD DOOR COMPANY OF | 0.00 | 0.00 | 6.25 | 0.00 | 0.00 | 0.00 | 6.25 | N/A | 6.25 | 601 |
| 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 | SORIA, VICENTE | 0.00 | 40.00 | 18.50 | 39.75 | 72.75 | 74.75 | 245.75 | 175.00 | 175.00 | 683 |
| 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 | STOFFEL, JOSEPH P | 0.00 | 72.50 | 0.00 | 0.00 | 0.00 | 30.00 | 102.50 | 175.00 | 102.50 | 684 |
| | **Total Hours This Page** | 75.00 | 151.77 | 145.00 | 141.25 | 135.75 | 1,303.75 | | 1,157.00 | |
| | | | 729.98 | 145.00 | | | | | | |

Total Items Listed This Period :    11

Total Difference In Hours This Period :    1,157.00

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number**   23301 | April, 2004 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br><br>19 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br><br>1,252.25 Hours |

| Social Security Number | Employee Name | Hours Reported | 04/07 | 04/14 | 04/21 | 04/28 | 05/04 | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BARCO, DANIEL | 112.50 | 0.00 | 0.00 | 37.50 | 37.50 | 37.50 | 112.50 | 112.50 | 0.00 | 101 |
| 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 1 | BARCO, DANIEL | 0.00 | 70.50 | 9.50 | 0.00 | 0.00 | 0.00 | 80.00 | 62.50 | 62.50 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 92.00 | 43.50 | 24.50 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 80.00 | 16.00 | 8.00 | 0.00 | 0.00 | 104.00 | 175.00 | 104.00 | 503 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 85.50 | 64.50 | 15.00 | 0.00 | 0.00 | 165.00 | 175.00 | 165.00 | 502 |
| 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 | HUDSON, FRANK | 0.00 | 118.00 | 22.00 | 5.00 | 0.00 | 0.00 | 145.00 | 145.00 | 145.00 | 507 |
| 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 2 | HUDSON, FRANK | 0.00 | 0.00 | 21.00 | 0.00 | 0.00 | 0.00 | 21.00 | 30.00 | 21.00 | 681 |
| 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 | MRNAK, JEFFREY D | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40.00 | 40.00 | N/A | 40.00 | 102 |
| 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 3 | MRNAK, JEFFREY D | 0.00 | 114.50 | 26.50 | 23.50 | 0.00 | 0.00 | 164.50 | N/A | 164.50 | 502 |
| 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 3 | MRNAK, JEFFREY D | 0.00 | 32.00 | 0.00 | 45.00 | 26.75 | 0.00 | 103.75 | N/A | 103.75 | 682 |
| 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 | SORIA, VICENTE | 40.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40.00 | 80.00 | N/A | 40.00 | 101 |
| 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 4 | SORIA, VICENTE | 0.00 | 75.25 | 106.25 | 46.00 | 19.00 | 0.00 | 246.50 | N/A | 246.50 | 683 |
| | **Total Hours This Page** | 152.50 | 309.25 | 123.25 | 1,422.25 | | | | | | |
| | | | 667.75 | 204.50 | 117.50 | | | | | 1,252.25 | |

Total Items Listed This Period :   12

Total Difference In Hours This Period :   1,252.25

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number** 23301 | May, 2004 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br>20 of 33 |
| [ Actual Hours Compensated In Period ] | **Total Discrepancies This Period**<br>1,346.75 Hours |

| Social Security Number | Employee Name | Hours Reported | 05/12 | 05/20 | 05/25 | 06/01 | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BAUER, RONALD J | 0.00 | 94.00 | 20.00 | 0.00 | 0.00 | 0.00 | 114.00 | 175.00 | 114.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 91.00 | 33.50 | 27.50 | 0.00 | 0.00 | 152.00 | 175.00 | 152.00 | 503 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 140.50 | 0.00 | 0.00 | 0.00 | 0.00 | 140.50 | 110.50 | 140.50 | 502 |
| 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 1 | HUDSON, DOUGLAS M | 0.00 | 14.75 | 0.00 | 0.00 | 0.00 | 0.00 | 14.75 | 34.50 | 14.75 | 682 |
| 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 | HUDSON, FRANK | 0.00 | 144.50 | 17.50 | 0.00 | 0.00 | 0.00 | 162.00 | 175.00 | 162.00 | 507 |
| 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 | MRNAK, JEFFREY D | 0.00 | 40.00 | 40.00 | 8.00 | 0.00 | 0.00 | 88.00 | N/A | 88.00 | 102 |
| 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 1 | MRNAK, JEFFREY D | 0.00 | 40.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40.00 | N/A | 40.00 | 502 |
| 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 2 | MRNAK, JEFFREY D | 0.00 | 45.50 | 49.00 | 36.25 | 44.50 | 0.00 | 175.25 | N/A | 175.25 | 682 |
| 115 | OVERHEAD DOOR COMPANY OF | 0.00 | 0.00 | 0.00 | 0.00 | 5.75 | 0.00 | 5.75 | 5.75 | 5.75 | 601 |
| 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 | RICE, MICHAEL J | 0.00 | 0.00 | 0.00 | 0.00 | 28.50 | 0.00 | 28.50 | 175.00 | 28.50 | 684 |
| 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 | SORIA, ANTONIO | 0.00 | 8.50 | 4.25 | 0.00 | 0.00 | 0.00 | 12.75 | 175.00 | 12.75 | 683 |
| 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 | SORIA, VICENTE | 0.00 | 40.00 | 40.00 | 0.00 | 0.00 | 0.00 | 80.00 | N/A | 80.00 | 103 |
| 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 2 | SORIA, VICENTE | 0.00 | 47.00 | 55.25 | 8.50 | 88.50 | 0.00 | 197.25 | N/A | 197.25 | 683 |
| 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 | STOFFEL, JOSEPH F | 0.00 | 0.00 | 0.00 | 12.00 | 0.00 | 0.00 | 12.00 | 175.00 - | 12.00 | 684 |
| 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 | TAMEZ, RAUL | 0.00 | 20.00 | 28.00 | 33.75 | 42.75 | 0.00 | 124.00 | 175.00 | 124.00 | 683 |
| | Total Hours This Page | 0.00 | 282.50 | | 208.00 | | 0.00 | 1,346.75 | | | |
| | | | 726.25 | | 130.00 | | 0.00 | | | 1,346.75 | |

Total Items Listed This Period :       15

Total Difference In Hours This Period :       1,346.75

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number   23301** | June, 2004 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br>21 of 33 |
| [ Actual Hours Compensated In Period ] | **Total Discrepancies This Period**<br>2,166.00 Hours |

| Social Security Number | Employee Name | Hours Reported | Actual Hours Compensated In Period | | | | | | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1st | 2nd | 3rd | 4th | 5th | Total | | | |
| 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 | BARCO, DANIEL | 0.00 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 191.50 | 6.00 | 2.50 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 503 |
| 100 | COMMERCIAL FLOORING | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 145.75 | 145.75 | N/A | 145.75 | 601 |
| 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 | EARNEST, JAMES S | 0.00 | 144.25 | 44.75 | 11.00 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 503 |
| 104 | FIRST CHOICE FLOORING | 0.00 | 0.00 | 4.25 | 0.00 | 0.00 | 0.00 | 4.25 | N/A | 4.25 | 601 |
| 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 | GOETZ, GREG T | 0.00 | 76.50 | 18.50 | 1.50 | 0.00 | 0.00 | 96.50 | 96.50 | 96.50 | 502 |
| 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 2 | GOETZ, GREG T | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13.50 | 13.50 | 78.50 | 13.50 | 682 |
| 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 | HUDSON SR, MICHAEL R | 0.00 | 0.00 | 6.25 | 25.25 | 40.75 | 48.00 | 120.25 | 175.00 | 120.25 | 684 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 110.00 | 16.00 | 5.00 | 0.00 | 0.00 | 131.00 | 131.00 | 131.00 | 502 |
| 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 2 | HUDSON, DOUGLAS M | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12.50 | 12.50 | 44.00 | 12.50 | 682 |
| 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 | HUDSON, FRANK | 0.00 | 142.50 | 26.00 | 24.00 | 0.00 | 0.00 | 192.50 | 175.00 | 175.00 | 503 |
| 108 | IDEAL GLASS & MIRROR CO. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 329.75 | 329.75 | N/A | 329.75 | 601 |
| 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 | KOZIATEK, JOSEPH P | 0.00 | 0.00 | 11.25 | 0.00 | 0.00 | 0.00 | 11.25 | 175.00 | 11.25 | 684 |
| 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 | MRNAK, JEFFREY D | 0.00 | 105.00 | 16.00 | 0.00 | 0.00 | 0.00 | 121.00 | 121.00 | 121.00 | 502 |
| 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 2 | MRNAK, JEFFREY D | 0.00 | 0.00 | 11.25 | 10.00 | 22.00 | 43.00 | 86.25 | 54.00 | 54.00 | 682 |
| 115 | OVERHEAD DOOR COMPANY OF ? | 0.00 | 26.25 | 0.00 | 0.00 | 0.00 | 0.00 | 26.25 | N/A | 26.25 | 601 |
| 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 | RICE, MICHAEL | 0.00 | 15.00 | 21.50 | 13.25 | 0.00 | 0.00 | 51.25 | N/A | 51.25 | 684 |
| 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 | SORIA, ANTONIO | 0.00 | 21.50 | 0.00 | 0.00 | 0.00 | 0.00 | 21.50 | 175.00 | 21.50 | 683 |
| 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 | SORIA, VICENTE | 0.00 | 51.50 | 10.00 | 7.50 | 0.00 | 0.00 | 69.00 | N/A | 69.00 | 503 |
| 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 4 | SORIA, VICENTE | 0.00 | 24.50 | 76.75 | 70.75 | 0.00 | 43.00 | 215.00 | N/A | 215.00 | 683 |
| 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 | STOFFEL, JOSEPH F | 0.00 | 58.25 | 0.00 | 0.00 | 0.00 | 0.00 | 58.25 | 175.00 | 58.25 | 684 |

| Total Hours This Page | 0.00 | 268.50 | 62.75 | | 2,265.75 |
|---|---|---|---|---|---|
| | 1,128.25 | 170.75 | 635.50 | | 2,166.00 |

Total Items Listed This Period :     21

Total Difference In Hours This Period :     2,166.00

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number   23301** | July, 2004 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br>22 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br>1,670.75 Hours |

| Social Security Number | Employee Name | Hours Reported | Actual Hours Compensated In Period | | | | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 07/06 | 07/13 | 07/21 | 07/28 | | | | |
| 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 | BARCO, DANIEL | 67.50 | 0.00 | 0.00 | 30.00 | 36.50 | 0.00 | 66.50 | 66.50 | (1.00) | 101 |
| 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 | 1 BARCO, DANIEL | 0.00 | 80.00 | 0.00 | 0.00 | 0.00 | 0.00 | 80.00 | 108.50 | 80.00 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 157.00 | 3.00 | 0.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 135.00 | 9.00 | 16.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | GOETZ, GREG D | 0.00 | 41.00 | 25.50 | 53.00 | 0.00 | 0.00 | 125.50 | 125.50 | 125.50 | 502 |
| 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 | 2 GOETZ, GREG T | 0.00 | 4.50 | 0.00 | 0.00 | 0.00 | 0.00 | 4.50 | 49.50 | 4.50 | 525 |
| 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 | HUDSON SR, MICHAEL R | 0.00 | 40.00 | 48.00 | 55.00 | 29.75 | 0.00 | 173.50 | 175.00 | 173.50 | 684 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 129.00 | 26.00 | 9.00 | 0.00 | 0.00 | 164.00 | 175.00 | 164.00 | 502 |
| 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 | HUDSON, FRANK | 0.00 | 71.00 | 52.50 | 36.50 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 502 |
| 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 | MRNAK, JEFFREY D | 0.00 | 159.00 | 0.00 | 0.00 | 0.00 | 0.00 | 159.00 | N/A | 159.00 | 502 |
| 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 | MRNAK, JEFFREY D | 0.00 | 0.00 | 52.00 | 37.00 | 66.50 | 0.00 | 155.50 | N/A | 155.50 | 682 |
| 115 | OVERHEAD DOOR COMPANY OF ? | 0.00 | 0.00 | 2.75 | 0.00 | 0.00 | 0.00 | 2.75 | N/A | 2.75 | 601 |
| 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 | SORIA, ANTONIO | 0.00 | 8.50 | 0.00 | 0.00 | 0.00 | 0.00 | 8.50 | 175.00 | 8.50 | 683 |
| 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 | SORIA, VICENTE | 0.00 | 128.00 | 32.00 | 0.00 | 0.00 | 0.00 | 160.00 | 160.00 | 160.00 | 503 |
| 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 | SORIA, VICENTE | 0.00 | 42.00 | 52.00 | 20.00 | 0.00 | 0.00 | 114.00 | 15.00 | 115.00 | 683 |
| 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 | STOFFEL, JOSEPH F | 0.00 | 29.25 | 0.00 | 114.25 | 0.00 | 0.00 | 143.50 | 175.00 | 143.50 | 684 |
| | **Total Hours This Page** | 67.50 | | 302.75 | | 139.75 | | 1,814.25 | | 1,670.75 | |
| | | | 1,001.00 | | 370.75 | | 0.00 | | | | |

Total Items Listed This Period :       16

Total Difference In Hours This Period :       1,670.75

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number**   23301 | August, 2004 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br>23 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br>1,427.25 Hours |

| Social Security Number | Employee Name | Hours Reported | 08/03 | 08/10 | 08/17 | 08/24 | 08/31 | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BAUER, RONALD J | 0.00 | 200.00 | 40.00 | 0.00 | 0.00 | 0.00 | 240.00 | 175.00 | 175.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 200.00 | 40.00 | 0.00 | 0.00 | 0.00 | 240.00 | 175.00 | 175.00 | 503 |
| 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 | GOETZ, GREG T | 25.00 | 0.00 | 0.00 | 25.00 | 0.00 | 0.00 | 25.00 | 25.00 | 0.00 | 101 |
| 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 | 1 GOETZ, GREG T | 0.00 | 52.00 | 60.00 | 26.00 | 0.00 | 0.00 | 138.00 | 150.00 | 138.00 | 503 |
| 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 | HUDSON SR, MICHAEL T | 0.00 | 50.75 | 41.75 | 54.50 | 49.25 | 15.75 | 212.00 | 175.00 | 135.00 | 684 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 502 |
| 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 | 2 HUDSON, DOUGLAS M | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | 10.00 | 0.00 | 0.00 | 682 |
| 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 | HUDSON, FRANK | 0.00 | 145.00 | 55.00 | 0.00 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 507 |
| 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 | MRNAK, JEFFREY D | 63.00 | 41.00 | 0.00 | 33.00 | 30.00 | 0.00 | 63.00 | N/A | 0.00 | 101 |
| 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 | 3 MRNAK, JEFFREY D | 0.00 | 99.00 | 25.00 | 11.00 | 0.00 | 0.00 | 135.00 | N/A | 135.00 | 503 |
| 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 | 3 MRNAK, JEFFREY D | 0.00 | 16.00 | 19.00 | 0.00 | 24.75 | 0.00 | 59.75 | N/A | 59.75 | 683 |
| 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 | SORIA, VICENTE | 40.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40.00 | 40.00 | N/A | 0.00 | 101 |
| 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 | SORIA, VICENTE | 0.00 | 101.00 | 19.00 | 0.00 | 0.00 | 0.00 | 120.00 | N/A | 120.00 | 503 |
| 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 | 4 SORIA, VICENTE | 0.00 | 15.00 | 11.00 | 51.50 | 22.00 | 0.00 | 99.50 | N/A | 99.50 | 683 |
| | **Total Hours This Page** | 128.00 | 1,078.75 | 309.75 | 201.00 | 127.00 | 65.75 | 1,782.25 | | 1,427.25 | |

Total Items Listed This Period :      14

Total Difference In Hours This Period :      1,427.25

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

## Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number   23301** | September, 2004 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br><br>24 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br><br>1,620.00 Hours |

| Social Security Number | Employee Name | Hours Reported | 09/07 | 09/14 | 09/21 | 09/28 | | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BARCO, DANIEL | 36.50 | 0.00 | 0.00 | 0.00 | 36.50 | 0.00 | 36.50 | 36.50 | 0.00 | 101 |
| 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 | 1 BARCO, DANIEL | 0.00 | 120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 120.00 | 138.50 | 120.00 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 0.00 | 0.00 | 0.00 | 40.00 | 0.00 | 40.00 | 40.00 | 40.00 | 103 |
| 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 | 2 BAUER, RONALD J | 0.00 | 116.50 | 0.00 | 0.00 | 0.00 | 0.00 | 116.50 | 135.00 | 116.50 | 503 |
| 100 | COMMERCIAL FLOORING | 0.00 | 0.00 | 0.00 | 0.00 | 181.25 | 0.00 | 181.25 | N/A | 181.25 | 601 |
| 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 | EARNEST, JAMES S | 0.00 | 120.00 | 73.50 | 6.50 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 503 |
| 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 | GOETZ, GREG T | 0.00 | 108.00 | 21.50 | 0.00 | 0.00 | 0.00 | 129.50 | 128.50 | 129.50 | 503 |
| 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 | 3 GOETZ, GREG T | 0.00 | 0.00 | 0.00 | 0.00 | 1.50 | 0.00 | 1.50 | 45.50 | 1.50 | 683 |
| 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 | HUDSON SR, MICHAEL R | 0.00 | 21.50 | 16.75 | 28.25 | 48.00 | 0.00 | 104.50 | 175.00 | 104.50 | 684 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 | 160.00 | 160.00 | 502 |
| 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 | 4 HUDSON, DOUGLAS M | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | 15.00 | 10.00 | 682 |
| 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 | HUDSON, FRANK | 0.00 | 111.00 | 9.00 | 0.00 | 0.00 | 0.00 | 120.00 | 175.00 | 120.00 | 507 |
| 108 | IDEAL GLASS & MIRROR CO | 0.00 | 0.00 | 0.00 | 36.75 | 0.00 | 0.00 | 36.75 | N/A | 36.75 | 601 |
| 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 | MRNAK, JEFFREY D | 0.00 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 | 160.00 | 160.00 | 503 |
| 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 | 5 MRNAK, JEFFREY D | 0.00 | 0.00 | 27.00 | 18.00 | 35.00 | 0.00 | 80.00 | 15.00 | 15.00 | 683 |
| 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 | SORIA, VICENTE | 0.00 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 | N/A | 160.00 | 503 |
| 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 | 6 SORIA, VICENTE | 0.00 | 0.00 | 20.00 | 29.50 | 28.50 | 0.00 | 90.00 | N/A | 90.00 | 683 |
| | **Total Hours This Page** | 36.50 | | 215.75 | | 330.75 | | 1,746.50 | | | |
| | | | 1,091.00 | | 109.00 | | 0.00 | | | 1,620.00 | |

Total Items Listed This Period :   17

Total Difference In Hours This Period :   1,620.00

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| ═ Report on the Compliance of ═ | ═ Covering the Period of ═ |
|---|---|
| **Account Number  23301** | October, 2004 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br>25 of 33 |
| [ Actual Hours Compensated In Period ] | **Total Discrepancies This Period**<br>1,261.25 Hours |

| Social Security Number | Employee Name | Hours Reported | Actual Hours Compensated In Period 1st | 2nd | 3rd | 4th | 5th | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BAUER, RONALD J | 0.00 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 120.00 | 24.00 | 16.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | GOETZ, GREG | 0.00 | 30.50 | 16.50 | 4.00 | 0.00 | 0.00 | 51.00 | 175.00 | 51.00 | 503 |
| 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 | HUDSON SR, MICHAEL R | 0.00 | 25.75 | 32.75 | 24.25 | 22.50 | 0.00 | 105.25 | 175.00 | 105.25 | 684 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 117.00 | 40.00 | 3.00 | 0.00 | 0.00 | 160.00 | 160.00 | 160.00 | 502 |
| 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 1 | HUDSON, DOUGLAS M | 0.00 | 0.00 | 0.00 | 5.00 | 0.00 | 0.00 | 5.00 | 15.00 | 5.00 | 682 |
| 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 | HUDSON, FRANK | 0.00 | 59.00 | 44.50 | 42.00 | 0.00 | 0.00 | 145.50 | 175.00 | 145.50 | 502 |
| 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 | MRNAK, JEFFREY D | 0.00 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 | N/A | 160.00 | 503 |
| 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 2 | MRNAK, JEFFREY D | 0.00 | 11.50 | 63.50 | 7.50 | 32.00 | 0.00 | 114.50 | N/A | 114.50 | 683 |
| 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 | SORIA, ANTONIO | 0.00 | 0.00 | 25.00 | 0.00 | 0.00 | 0.00 | 25.00 | 175.00 | 25.00 | 683 |
| 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 | SORIA, VICENTE | 0.00 | 142.00 | 8.00 | 0.00 | 0.00 | 0.00 | 150.00 | 150.00 | 150.00 | 503 |
| 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 3 | SORIA, VICENTE | 0.00 | 0.00 | 30.00 | 28.00 | 0.00 | 0.00 | 58.00 | 25.00 | 25.00 | 683 |
| | **Total Hours This Page** | 0.00 | 825.75 | 284.25 | 129.75 | 54.50 | 0.00 | 1,294.25 | | 1,261.25 | |

Total Items Listed This Period :      12

Total Difference In Hours This Period :      1,261.25

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number   23301** | November, 2004 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br>26 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br>1,611.25 Hours |

| Social Security Number | Employee Name | Hours Reported | 11/03 | 11/09 | 11/16 | 11/23 | 11/30 | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BARCO, DANIEL | 73.00 | 36.50 | 36.50 | 0.00 | 0.00 | 0.00 | 73.00 | 73.00 | 0.00 | 101 |
| 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 | 1 BARCO, DANIEL | 0.00 | 40.00 | 31.50 | 39.50 | 0.00 | 0.00 | 111.00 | 102.00 | 102.00 | 503 |
| 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 | BAUER, RONALD W | 0.00 | 168.00 | 0.00 | 0.00 | 0.00 | 0.00 | 168.00 | 175.00 | 168.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 160.00 | 24.00 | 16.00 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 503 |
| 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 | HUDSON SR, MICHAEL R | 0.00 | 3.25 | 1.00 | 29.50 | 29.50 | 28.75 | 92.00 | 175.00 | 92.00 | 684 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 157.50 | 31.50 | 6.00 | 0.00 | 0.00 | 195.00 | 175.00 | 175.00 | 502 |
| 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 | 2 HUDSON, DOUGLAS M | 0.00 | 3.50 | 0.00 | 0.00 | 0.00 | 0.00 | 3.50 | 0.00 | 0.00 | 682 |
| 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 | HUDSON, SHARON | 0.00 | 87.00 | 32.50 | 26.00 | 0.00 | 0.00 | 145.50 | 175.00 | 145.50 | 507 |
| 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 | MRNAK, JEFFREY D | 0.00 | 169.00 | 4.50 | 3.00 | 0.00 | 0.00 | 176.50 | N/A | 176.50 | 503 |
| 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 | 3 MRNAK, JEFFREY D | 0.00 | 0.00 | 30.75 | 23.75 | 31.50 | 0.00 | 86.00 | N/A | 86.00 | 683 |
| 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 | SORIA, VICENTE | 0.00 | 176.00 | 0.00 | 0.00 | 0.00 | 0.00 | 176.00 | N/A | 176.00 | 503 |
| 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 | 4 SORIA, VICENTE | 0.00 | 20.50 | 13.50 | 25.50 | 31.50 | 10.75 | 101.75 | N/A | 101.75 | 683 |
| 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 | STOFFEL, JOSEPH E | 0.00 | 72.00 | 0.00 | 0.00 | 41.50 | 0.00 | 41.50 | 175.00 | 41.50 | 684 |
| 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 | TAMEZ III, RALPH | 0.00 | 39.50 | 30.00 | 38.00 | 41.50 | 23.00 | 172.00 | 175.00 | 172.00 | 683 |
| | **Total Hours This Page** | 73.00 | 235.75 | 175.50 | 1,741.75 | | | | | 1,611.25 | |
| | | 1,060.75 | 207.25 | 62.50 | | | | | | | |

Total Items Listed This Period :       14

Total Difference In Hours This Period :       1,611.25

Case 1:08-cv-01934    Document 32-4    Filed 06/04/2008    Page 1 of 7

**James Egan & Associates, Ltd.**
**Certified Public Accountants**

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number** 23301 | December, 2004 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br><br>27 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br><br>1,373.25 Hours |

| Social Security Number | Employee Name | Hours Reported | 12/08 | 12/15 | 12/22 | 12/29 | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BARCO, DANIEL | 36.50 | 36.50 | 0.00 | 0.00 | 0.00 | 0.00 | 36.50 | 96.50 | 0.00 | 101 |
| 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 | 1 BARCO, DANIEL | 0.00 | 40.00 | 50.00 | 30.00 | 0.00 | 0.00 | 120.00 | 138.50 | 120.00 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 120.00 | 30.00 | 10.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 76.40 | 41.60 | 25.00 | 0.00 | 0.00 | 143.00 | 175.00 | 143.00 | 503 |
| 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 | EARNEST, JOSEPH A | 0.00 | 0.00 | 0.00 | 4.25 | 26.50 | 0.00 | 30.75 | 175.00 | 30.75 | 683 |
| 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 | HUDSON SR, MICHAEL R | 0.00 | 0.00 | 57.50 | 53.25 | 15.50 | 0.00 | 126.25 | 175.00 | 126.25 | 684 |
| 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 | HUDSON, DOUGLAS P | 0.00 | 102.00 | 21.50 | 10.00 | 0.00 | 0.00 | 123.50 | 175.00 | 123.50 | 502 |
| 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 | HUDSON, SHARON | 0.00 | 119.00 | 12.00 | 13.00 | 0.00 | 0.00 | 144.00 | 175.00 | 144.00 | 507 |
| 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 | MRNAK, JEFFREY D | 0.00 | 144.50 | 0.00 | 0.00 | 0.00 | 0.00 | 144.50 | 144.50 | 144.50 | 503 |
| 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 | 2 MRNAK, JEFFREY D | 0.00 | 0.00 | 58.25 | 29.25 | 0.00 | 0.00 | 87.50 | 30.50 | 30.50 | 683 |
| 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 | SORIA, VICENTE | 0.00 | 88.50 | 0.00 | 0.00 | 0.00 | 0.00 | 88.50 | 86.50 | 88.50 | 503 |
| 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 | 3 SORIA, VICENTE | 0.00 | 0.00 | 58.00 | 0.00 | 0.00 | 0.00 | 58.00 | 86.50 | 58.00 | 683 |
| 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 | STOFFEL, JOSEPH J | 0.00 | 0.00 | 0.00 | 29.25 | 0.00 | 0.00 | 29.25 | 175.00 | 29.25 | 684 |
| 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 | TAMEZ III, RALPH | 0.00 | 0.00 | 138.25 | 69.25 | 24.50 | 0.00 | 232.00 | 175.00 | 175.00 | 683 |
| | **Total Hours This Page :** | 36.50 | 457.10 | 66.50 | | 1,523.75 | | | 1,373.25 | |
| | | | 726.90 | 273.25 | | 0.00 | | | | |

Total Items Listed This Period :    14

Total Difference In Hours This Period :    1,373.25

Case 1:08-cv-01934     Document 35-7     Filed 06/19/2008     Page 5 of 10

Case 1:08-cv-01934     Document 32-4     Filed 06/04/2008     Page 2 of 7

**James Egan & Associates, Ltd.**
**Certified Public Accountants**

*Benefit Hours*

## Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number   23301** | January, 2005 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630) 694-0700 | **Page Number**<br>28 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br>1,499.50 Hours |

| Social Security Number | Employee Name | Hours Reported | 01/04 | 01/11 | 01/18 | 01/25 | | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | BARCO, DANIEL | 109.50 | 0.00 | 36.50 | 36.50 | 36.50 | 0.00 | 109.50 | 109.50 | 0.00 | 503 |
| 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 | 1 BARCO, DANIEL | 0.00 | 40.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40.00 | 65.50 | 40.00 | 503 |
| 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 | BAUER, RONALD W | 0.00 | 120.00 | 20.00 | 20.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | HUDSON SR, MICHAEL R | 0.00 | 20.00 | 52.00 | 20.50 | 53.00 | 0.00 | 145.50 | 175.00 | 145.50 | 684 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 120.00 | 120.00 | 120.00 | 502 |
| 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 | 2 HUDSON, DOUGLAS M | 0.00 | 0.00 | 42.25 | 0.00 | 52.00 | 0.00 | 94.25 | 55.00 | 55.00 | 682 |
| 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 | HUDSON, FRANK | 0.00 | 146.00 | 0.00 | 0.00 | 0.00 | 0.00 | 146.00 | 146.00 | 146.00 | 507 |
| 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 | 3 HUDSON, FRANK | 0.00 | 21.00 | 0.00 | 5.25 | 2.00 | 0.00 | 76.25 | 29.00 | 29.00 | 682 |
| 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 | HUDSON, FRANK I | 0.00 | 0.00 | 0.00 | 57.50 | 0.00 | 0.00 | 57.50 | 175.00 | 57.50 | 683 |
| 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 | MRNAK, JEFFREY D | 0.00 | 114.50 | 0.00 | 0.00 | 0.00 | 0.00 | 114.50 | 114.50 | 114.50 | 503 |
| 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 | 4 MRNAK, JEFFREY D | 0.00 | 0.00 | 36.00 | 25.00 | 0.00 | 0.00 | 61.00 | 60.50 | 60.50 | 683 |
| 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 | SORIA, VICENTE | 0.00 | 127.50 | 0.00 | 0.00 | 0.00 | 0.00 | 127.50 | 127.50 | 127.50 | 503 |
| 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 | 5 SORIA, VICENTE | 0.00 | 0.00 | 39.00 | 35.00 | 26.00 | 0.00 | 100.00 | 47.50 | 47.50 | 683 |
| 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 | STOFFEL, JOSEPH F | 0.00 | 0.00 | 0.00 | 0.00 | 101.50 | 0.00 | 101.50 | 175.00 | 101.50 | 684 |
| 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 | TAMEZ III, RALPH | 0.00 | 0.00 | 64.25 | 39.00 | 32.25 | 0.00 | 135.50 | 175.00 | 135.50 | 683 |
| | Total Hours This Page | 109.50 | 290.00 | 302.75 | | | | 1,748.50 | | 1,499.50 | |
| | | | 849.00 | | 306.75 | 0.00 | | | | | |

Total Items Listed This Period :        16

Total Difference In Hours This Period :        1,499.50

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number** 23301 | February, 2005 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br>29 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br>1,754.25 Hours |

| Social Security Number | Employee Name | Hours Reported | Actual Hours Compensated In Period | | | | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 02/01 | 02/08 | 02/15 | 02/22 | | | | |
| 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 | BARCO, DANIEL | 79.00 | 36.50 | 36.50 | 0.00 | 0.00 | 0.00 | 73.00 | 73.00 | 0.00 | 101 |
| 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 1 | BARCO, DANIEL | 0.00 | 48.50 | 30.00 | 1.50 | 0.00 | 0.00 | 80.00 | 102.00 | 80.00 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 155.80 | 0.00 | 0.00 | 0.00 | 0.00 | 155.00 | 175.00 | 155.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 93.50 | 25.50 | 41.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | EARNEST, JOSEPH A | 0.00 | 10.50 | 80.00 | 0.00 | 0.00 | 0.00 | 90.50 | 175.00 | 90.50 | 503 |
| 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 2 | EARNEST, JOSEPH A | 0.00 | 17.50 | 0.00 | 33.00 | 0.00 | 0.00 | 50.50 | 175.00 | 50.50 | 683 |
| 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 | HUDSON SR, MICHAEL R | 0.00 | 25.25 | 0.00 | 0.00 | 0.00 | 0.00 | 32.25 | 175.00 | 32.25 | 684 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 96.50 | 20.00 | 0.00 | 0.00 | 0.00 | 116.50 | 116.50 | 116.50 | 502 |
| 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 3 | HUDSON, DOUGLAS | 0.00 | 4.50 | 0.00 | 0.00 | 0.00 | 0.00 | 4.50 | 58.30 | 4.50 | 682 |
| 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 | HUDSON, FRANK | 0.00 | 149.00 | 11.00 | 0.00 | 0.00 | 0.00 | 160.00 | 160.00 | 160.00 | 507 |
| 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 | HUDSON, FRANK | 0.00 | 0.00 | 0.00 | 8.00 | 0.00 | 0.00 | 8.00 | 15.00 | 8.00 | 687 |
| 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 | HUDSON, MICHAEL | 0.00 | 7.00 | 80.00 | 0.00 | 0.00 | 0.00 | 87.00 | 175.00 | 87.00 | 502 |
| 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 | MRNAK, JEFFREY D | 0.00 | 125.00 | 12.00 | 0.00 | 0.00 | 0.00 | 137.00 | 137.00 | 137.00 | 503 |
| 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 5 | MRNAK, JEFFREY D | 0.00 | 27.50 | 0.00 | 0.00 | 21.00 | 0.00 | 48.50 | 38.00 | 38.00 | 683 |
| 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 | SORIA, VICENTE | 0.00 | 154.00 | 6.00 | 0.00 | 0.00 | 0.00 | 160.00 | N/A | 160.00 | 503 |
| 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 6 | SORIA, VICENTE | 0.00 | 23.50 | 36.00 | 38.50 | 27.00 | 0.00 | 125.00 | N/A | 125.00 | 683 |
| 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 | STOFFEL, JOSEPH | 0.00 | 43.75 | 0.00 | 160.25 | 43.75 | 0.00 | 247.75 | 175.00 | 175.00 | 684 |
| 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 | TAMEZ III, RALPH | 0.00 | 30.00 | 69.00 | 7.00 | 0.00 | 0.00 | 106.00 | 106.00 | 106.00 | 503 |
| 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 | TAMEZ III, RALPH | 0.00 | 12.50 | 12.75 | 2.75 | 10.00 | 0.00 | 88.00 | 69.00 | 69.00 | 683 |
| **Total Hours This Page** | | 73.00 | 408.75 | 108.75 | | 1,929.50 | | | | 1,754.25 | |
| | | | 1,120.00 | 292.00 | | 0.00 | | | | | |

Total Items Listed This Period :     19

Total Difference In Hours This Period :     1,754.25

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

## Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number   23301** | March, 2005 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700 | **Page Number**<br>30 of 33 |
| [ Actual Pay Date ] | **Total Discrepancies This Period**<br>2,294.75 Hours |

| Social Security Number | Employee Name | Hours Reported | 03/01 | 03/08 | 03/15 | 03/22 | 03/29 | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | ARENS, MICHAEL E | 0.00 | 88.00 | 0.00 | 0.00 | 0.00 | 0.00 | 88.00 | 175.00 | 88.00 | 504 |
| 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 | BARCO, DANIEL | 0.00 | 157.50 | 12.50 | 6.00 | 24.00 | 0.00 | 200.00 | 175.00 | 175.00 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 503 |
| 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 | COULSON, DONALD T | 0.00 | 157.00 | 0.00 | 0.00 | 0.00 | 0.00 | 157.00 | 175.00 | 157.00 | 504 |
| 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 | EARNEST, JAMES S | 0.00 | 167.50 | 26.00 | 6.50 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 503 |
| 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 | EARNEST, JOSEPH A | 0.00 | 190.75 | 11.50 | 8.50 | 0.00 | 0.00 | 210.75 | 175.00 | 175.00 | 503 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 223.00 | 14.00 | 3.00 | 0.00 | 10.00 | 170.00 | 175.00 | 170.00 | 502 |
| 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 | HUDSON, FRANK | 0.00 | 200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 200.00 | 175.00 | 175.00 | 507 |
| 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 | HUDSON, FRANK I | 0.00 | 0.00 | 55.00 | 6.50 | 0.00 | 0.00 | 61.50 | 61.50 | 61.50 | 503 |
| 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 1 | HUDSON, FRANK I | 0.00 | 0.00 | 41.50 | 35.50 | 0.00 | 0.00 | 77.00 | 113.50 | 77.00 | 683 |
| 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 | HUDSON, MICHAEL | 0.00 | 213.00 | 17.00 | 18.00 | 0.00 | 0.00 | 248.00 | 175.00 | 175.00 | 502 |
| 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 | MRNAK, JEFFREY D | 0.00 | 180.50 | 11.00 | 14.00 | 0.00 | 0.00 | 205.50 | 175.00 | 175.00 | 503 |
| 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 | PADRON, ALBERTO | 21.00 | 0.00 | 0.00 | 0.00 | 0.00 | 21.00 | 24.00 | 24.00 | 0.00 | 101 |
| 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 2 | PADRON, ALBERTO | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3.50 | 3.50 | 151.00 | 3.50 | 683 |
| 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 | PAULSEN, ABIGALE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.50 | 8.50 | 175.00 | 8.50 | 685 |
| 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 | PECK, WILLIAM | 0.00 | 108.00 | 0.00 | 0.00 | 0.00 | 0.00 | 108.00 | 175.00 | 108.00 | 505 |
| 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 | SANDE, JOHN M | 0.00 | 13.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13.00 | 175.00 | 13.00 | 513 |
| 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 | SORIA, VICENTE | 200.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 200.00 | N/A | 0.00 | 101 |
| 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 2 | SORIA, VICENTE | 0.00 | 103.50 | 2.00 | 3.00 | 0.00 | 0.00 | 108.50 | N/A | 108.50 | 503 |
| 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 | STOFFEL, JOSEPH F | 0.00 | 0.00 | 0.00 | 122.50 | 29.25 | 0.00 | 151.75 | 175.00 | 151.75 | 684 |
| 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 | TAMEZ III, RALPH | 120.00 | 40.00 | 40.00 | 40.00 | 0.00 | 0.00 | 120.00 | 120.00 | 0.00 | 101 |
| 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 4 | TAMEZ III, RALPH | 0.00 | 95.50 | 20.00 | 0.00 | 0.00 | 0.00 | 115.50 | 175.00 | 55.00 | 503 |
| 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 | WILSON, WILLIAM I | 0.00 | 68.00 | 0.00 | 0.00 | 0.00 | 0.00 | 68.00 | 175.00 | 68.00 | 507 |
| | **Total Hours This Page** | 344.00 | 272.00 | | 93.25 | | | 2,938.50 | | | |
| | | 2,205.25 | | 292.00 | | 76.00 | | 2,294.75 | | | |

Total Items Listed This Period :      23

Total Difference In Hours This Period :      2,294.75

James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number** · 23301 | April, 2005 |
| J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630) 694-0700 | **Page Number**<br>31 of 33 |
| [ Actual Hours Compensated In Period ] | **Total Discrepancies This Period**<br>2,538.75 Hours |

| Social Security Number | Employee Name | Hours Reported | 1st | 2nd | 3rd | 4th | 5th | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | ALCANTAR, ALEJANDRO | 0.00 | 35.00 | 8.00 | 8.00 | 0.00 | 0.00 | 51.00 | 175.00 | 51.00 | 504 |
| 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 | ARENS, MICHAEL E | 0.00 | 40.00 | 43.00 | 0.00 | 0.00 | 0.00 | 83.00 | 175.00 | 83.00 | 504 |
| 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 | BARCO, DANIEL | 0.00 | 120.00 | 35.00 | 5.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 120.00 | 32.00 | 0.00 | 0.00 | 0.00 | 152.00 | 175.00 | 152.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 48.00 | 74.00 | 38.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | EARNEST, JOSEPH A | 0.00 | 193.50 | 16.00 | 0.00 | 0.00 | 0.00 | 209.50 | 175.00 | 175.00 | 503 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 197.75 | 8.00 | 0.00 | 0.00 | 0.00 | 205.75 | 175.00 | 175.00 | 502 |
| 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 | HUDSON, FRANK | 0.00 | 175.00 | 0.00 | 0.00 | 0.00 | 0.00 | 175.00 | 175.00 | 175.00 | 507 |
| 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 | HUDSON, FRANK | 0.00 | 0.00 | 0.00 | 0.00 | 3.00 | 0.00 | 3.00 | N/A | 0.00 | 687 |
| 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 | HUDSON, MICHAEL | 0.00 | 215.00 | 10.50 | 0.00 | 0.00 | 0.00 | 225.50 | 175.00 | 175.00 | 502 |
| 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 | JUAREZ, JOSE | 0.00 | 121.50 | 4.00 | 0.00 | 0.00 | 0.00 | 125.50 | 175.00 | 125.50 | 503 |
| 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 | 2 JUAREZ, JOSE | 0.00 | 0.00 | 1.75 | 0.00 | 0.00 | 0.00 | 1.75 | 49.50 | 1.75 | 683 |
| 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 | MRNAK, JEFFREY D | 0.00 | 123.50 | 24.50 | 0.00 | 0.00 | 0.00 | 148.00 | 148.00 | 148.00 | 503 |
| 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 | 3 MRNAK, JEFFREY D | 0.00 | 6.00 | 0.00 | 0.00 | 27.00 | 0.00 | 33.00 | 27.00 | 27.00 | 683 |
| 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 | PADRON, ALBERTO | 0.00 | 95.50 | 38.00 | 0.00 | 0.00 | 0.00 | 133.50 | 133.50 | 133.50 | 683 |
| 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 | 4 PADRON, ALBERTO | 0.00 | 3.50 | 0.00 | 0.00 | 0.00 | 0.00 | 3.50 | 41.50 | 3.50 | 683 |
| 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 | PATERNO, ROBERT R | 0.00 | 11.25 | 4.00 | 0.00 | 17.00 | 0.00 | 32.25 | N/A | 32.25 | 684 |
| 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 | PAULSEN, ABIGALE | 0.00 | 33.00 | 0.00 | 10.00 | 0.00 | 0.00 | 43.00 | 175.00 | 43.00 | 685 |
| 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 | PECK, WILLIAM | 0.00 | 35.50 | 0.00 | 0.00 | 0.00 | 0.00 | 35.50 | 175.00 | 35.50 | 505 |
| 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 | RODRIGUEZ, RAUL | 0.00 | 35.00 | 8.00 | 8.00 | 0.00 | 0.00 | 51.00 | 175.00 | 51.00 | 513 |
| 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 | SORIA, VICENTE | 0.00 | 160.00 | 33.00 | 11.00 | 0.00 | 0.00 | 204.00 | N/A | 204.00 | 503 |
| 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 | 5 SORIA, VICENTE | 0.00 | 0.00 | 67.75 | 0.00 | 0.00 | 0.00 | 67.75 | N/A | 67.75 | 683 |
| 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 | STOFFEL, JOSEPH | 0.00 | 133.25 | 0.00 | 113.75 | 0.00 | 0.00 | 247.00 | 175.00 | 175.00 | 684 |
| 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 | TAMEZ III, RALPH | 0.00 | 228.50 | 0.00 | 0.00 | 0.00 | 0.00 | 228.50 | 175.00 | 175.00 | 503 |
| 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 | WILSON, WILLIAM L | 0.00 | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 | 175.00 | 10.00 | 507 |
| | Total Hours This Page | 0.00 | 403.50 | 47.00 | | 0.00 | | 2,789.00 | | 2,538.75 | |
| | | | 2,140.75 | | 197.75 | | 0.00 | | | | |

Total Items Listed This Period :     25

Total Difference In Hours This Period :     2,538.75



Case 1:08-cv-01934    Document 35-4    Filed 06/04/2008    Page 6 of 7    *Benefit Hours*

James Egan & Associates, Ltd.
Certified Public Accountants

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number   23301**<br><br>J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630) 694-0700<br><br>[ Actual Pay Date ] | May, 2005<br><br>**Page Number**<br><br>32 of 33<br><br>**Total Discrepancies This Period**<br><br>3,133.50 Hours |

| Social Security Number | Employee Name | Hours Reported | 05/03 | 05/10 | 05/17 | 05/24 | | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | ALCANTAR, ALEJANDRO | 0.00 | 38.00 | 0.00 | 0.00 | 0.00 | 0.00 | 38.00 | 175.00 | 38.00 | 504 |
| 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 | BARCO, DANIEL | 72.50 | 0.00 | 0.00 | 36.50 | 36.00 | 0.00 | 72.50 | 72.50 | 0.00 | 101 |
| 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 | BARCO, DANIEL | 0.00 | 80.00 | 0.00 | 0.00 | 0.00 | 0.00 | 80.00 | 102.50 | 80.00 | 503 |
| 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 | BAUER, RONALD J | 0.00 | 114.00 | 20.00 | 10.00 | 16.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 128.00 | 16.00 | 16.00 | 0.00 | 0.00 | 160.00 | 175.00 | 160.00 | 503 |
| 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 | EARNEST, JOSEPH A | 0.00 | 173.50 | 8.00 | 0.00 | 0.00 | 0.00 | 181.50 | 175.00 | 175.00 | 503 |
| 106 | FLOORS & MORE CARPET & TILE | 0.00 | 0.00 | 0.00 | 0.00 | 342.75 | 0.00 | 342.75 | N/A | 342.75 | 601 |
| 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 | GAMBOTZ, ROBERT M | 0.00 | 0.00 | 30.25 | 0.00 | 0.00 | 0.00 | 30.25 | 175.00 | 30.25 | 684 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 115.75 | 33.25 | 12.25 | 0.00 | 0.00 | 161.25 | 175.00 | 175.00 | 502 |
| 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 | HUDSON, FRANK | 0.00 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 | 160.00 | 160.00 | 507 |
| 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 | HUDSON, FRANK | 0.00 | 3.25 | 0.00 | 0.00 | 0.00 | 0.00 | 3.25 | 175.00 | 3.25 | 687 |
| 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 | HUDSON, MICHAEL | 0.00 | 195.50 | 0.00 | 0.00 | 0.00 | 0.00 | 195.50 | 175.00 | 175.00 | 502 |
| 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 | JUAREZ, JOSE | 0.00 | 44.50 | 0.00 | 0.00 | 0.00 | 0.00 | 44.50 | 175.00 | 44.50 | 503 |
| 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 | MRNAK, JEFFREY D | 0.00 | 247.00 | 0.00 | 0.00 | 0.00 | 0.00 | 247.00 | 175.00 | 175.00 | 503 |
| 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 | PADRON, ALBERTO | 0.00 | 44.50 | 0.00 | 0.00 | 0.00 | 0.00 | 44.50 | 175.00 | 44.50 | 503 |
| 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 | PATERNO, ROBERT R | 0.00 | 25.25 | 1.75 | 20.75 | 0.00 | 0.00 | 47.75 | 175.00 | 47.75 | 684 |
| 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 | RINKER, JEFFREY J | 0.00 | 3.75 | 0.00 | 0.00 | 0.00 | 0.00 | 3.75 | 175.00 | 3.75 | 513 |
| 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 | RODRIGUEZ, RAUL | 0.00 | 38.00 | 0.00 | 0.00 | 0.00 | 0.00 | 38.00 | 175.00 | 38.00 | 513 |
| 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 | SMALL, JEROME | 0.00 | 110.00 | 3.50 | 0.00 | 0.00 | 0.00 | 113.50 | 175.00 | 113.50 | 505 |
| 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 | SORIA, VICENTE | 0.00 | 160.00 | 34.00 | 8.00 | 0.00 | 0.00 | 202.00 | N/A | 202.00 | 503 |
| 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 | SORIA, VICENTE | 0.00 | 59.25 | 0.00 | 0.00 | 0.00 | 0.00 | 59.25 | N/A | 59.25 | 683 |
| 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 | STOFFEL, JOSEPH F | 0.00 | 0.00 | 106.50 | 54.75 | 0.00 | 0.00 | 161.25 | 175.00 | 161.25 | 684 |
| 116 | TAMEZ CONSTRUCTION | 0.00 | 0.00 | 132.75 | 0.00 | 437.00 | 0.00 | 569.75 | N/A | 569.75 | 601 |
| 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 | TAMEZ III, RALPH | 0.00 | 232.50 | 4.00 | 0.00 | 0.00 | 0.00 | 236.50 | 175.00 | 175.00 | 503 |

| | Total Hours This Page | 72.50 | 390.00 | | 831.75 | | 3,372.75 | | | 3,133.50 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1,992.75 | | 158.25 | | | | | |

Total Items Listed This Period :        24

Total Difference In Hours This Period :        3,133.50



James Egan & Associates, Ltd.
Certified Public Accountants

*Benefit Hours*

Detailed Discrepancy Hours By Period

| Report on the Compliance of | Covering the Period of |
|---|---|
| **Account Number   23301**<br><br>J & J INTERIORS SPECIALTIES INC<br>214 PARK ST<br>BENSENVILLE, IL. 60106<br>(630)694-0700<br><br>[ Actual Pay Date ] | June, 2005<br><br>**Page Number**<br><br>33 of 33<br><br>**Total Discrepancies This Period**<br><br>2,844.00 Hours |

| Social Security Number | Employee Name | Hours Reported | Actual Hours Compensated In Period | | | | | Total | Cap Hours | Discrepancy Hours | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 06/01 | 06/08 | 06/14 | 06/21 | 06/30 | | | | |
| 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 | BADER, RONALD J | 0.00 | 240.00 | 0.00 | 0.00 | 0.00 | 0.00 | 240.00 | 175.00 | 175.00 | 503 |
| 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 | EARNEST, JAMES S | 0.00 | 240.00 | 0.00 | 0.00 | 0.00 | 0.00 | 240.00 | 175.00 | 175.00 | 503 |
| 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 | EARNEST, JOSEPH A | 0.00 | 147.00 | 0.00 | 0.00 | 0.00 | 0.00 | 147.00 | 175.00 | 147.00 | 503 |
| 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 | HUDSON SR, MICHAEL R | 0.00 | 2.00 | 5.00 | 2.00 | 0.00 | 0.00 | 9.00 | 175.00 | 9.00 | 684 |
| 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 | HUDSON, DOUGLAS M | 0.00 | 235.50 | 6.00 | 0.00 | 0.00 | 0.00 | 241.50 | 175.00 | 175.00 | 502 |
| 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 | HUDSON, FRANK | 0.00 | 161.00 | 45.00 | 34.00 | 0.00 | 0.00 | 240.00 | 175.00 | 175.00 | 507 |
| 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 | HUDSON, MICHAEL | 0.00 | 269.00 | 0.00 | 0.00 | 0.00 | 0.00 | 269.00 | N/A | 269.00 | 502 |
| 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 | HUNDRIESER, LANCE A | 0.00 | 154.00 | 0.00 | 0.00 | 0.00 | 0.00 | 154.00 | 175.00 | 154.00 | 513 |
| 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 | JAMES, BRET | 0.00 | 161.00 | 0.00 | 0.00 | 0.00 | 0.00 | 161.00 | 175.00 | 161.00 | 505 |
| 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 | MRNAK, JEFFREY D | 0.00 | 199.50 | 50.50 | 0.00 | 0.00 | 0.00 | 250.00 | N/A | 250.00 | 503 |
| 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 | MRNAK, JEFFREY D | 0.00 | 240.00 | 0.00 | 0.00 | 0.00 | 0.00 | 240.00 | N/A | 240.00 | 683 |
| 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 | PADRON, ALBERTO | 0.00 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 175.00 | 8.00 | 503 |
| 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 | PAULSEN, ABIGALE | 0.00 | 66.00 | 6.00 | 0.00 | 0.00 | 0.00 | 72.00 | 72.00 | 72.00 | 505 |
| 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 | 2 PAULSEN, ABIGALE | 0.00 | 0.00 | 7.50 | 37.50 | 0.00 | 0.00 | 45.00 | 103.00 | 45.00 | 685 |
| 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 | RINKER, JEFFREY S | 0.00 | 179.75 | 0.00 | 0.00 | 0.00 | 0.00 | 179.75 | 175.00 | 175.00 | 513 |
| 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 | SMALL, JEROME | 0.00 | 165.00 | 16.00 | 4.00 | 0.00 | 0.00 | 185.00 | 175.00 | 175.00 | 505 |
| 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 | SORIA, VICENTE | 0.00 | 157.50 | 82.00 | 0.00 | 0.00 | 0.00 | 239.50 | 175.00 | 175.00 | 503 |
| 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 | STOFFEL, JOSEPH F | 0.00 | 28.25 | 0.00 | 99.00 | 0.00 | 141.50 | 268.75 | N/A | 268.75 | 684 |
| 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 | TAMEZ III, RALPH | 0.00 | 263.00 | 0.00 | 0.00 | 0.00 | 0.00 | 263.00 | N/A | 263.00 | 503 |
| 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 | 3 TAMEZ III, RALPH | 0.00 | 0.00 | 7.25 | 5.00 | 37.00 | 0.00 | 49.25 | N/A | 49.25 | 683 |
| Total Hours This Page | | 0.00 | 2,596.50 | 225.25 | 184.50 | 37.00 | 141.50 | 3,184.75 | | 2,844.00 | |

Total Items Listed This Period :    20

Total Difference In Hours This Period :    2,844.00

# EXHIBIT C

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 1145 | **DATE** | 6/13/2008 |
| **CASE TITLE** | Chicago Carpenters Pen. Fd., et al. vs. JJ Interior Specialties | | |

**DOCKET ENTRY TEXT**

This matter comes before the Court on Plaintiffs' Motion to Enforce Settlement Agreement. On March 3, 2006, Plaintiffs filed suit to recover funds owed to Plaintiffs pursuant to a collective bargaining agreement entered into between Plaintiffs and Defendant JJ Interior Specialties, Inc. ("JJ"). In addition, Plaintiffs claimed that Defendant Norwood Commercial Contractors, Inc. ("Norwood") was the alter ego of JJ and was also bound by the collective bargaining agreement. Defendants denied the claims.

■[ For further details see text below.]                                   Notices Mailed by Judicial Staff

| STATEMENT |
|---|

On October 17, 2007, the Court conducted a settlement conference at which time an agreement in principle was reached, subject to a final agreement being signed. The parties documented the settlement by means of a Settlement Agreement and Release dated November 20, 2007. The parties agreed that this Court should retain jurisdiction to enforce the settlement.

On April 29, 2008, Plaintiffs filed a Motion to Enforce Settlement Agreement. The issue in dispute is whether a second audit to be performed by Plaintiffs for the dates of July 1, 2005 through December, 2007, includes work performance by or on behalf of JJ and Norwood or only JJ. The parties have each submitted briefs.

Paragraph 6 of the Settlement Agreement provides in relevant part as follows:

> 6. The PARTIES further agree that the FUNDS will conduct a FINAL AUDIT relating to JJ/NORWOOD for the period of July 1, 2005 through present, where the FUNDS agree that JJ/NORWOOD will only be responsible for any past due contributions for employees' that worked for JJ Interiors Specialties, Inc. and have been or are also on Norwood Commercial Contractors, Inc. payroll, during this time period of July 1, 2005 through present. In consideration of the timely

| | Courtroom Deputy | DK |
|---|---|---|

This interpretation is consistent with the language of Paragraph 6 and the intent of the parties. Norwood was never a signatory to the collective bargaining agreements. The parties agreed to compromise on the basis of including certain claims against Norwood raised in the first audit, but to exclude work performed by Norwood from July 1, 2005 to the present. Accordingly, Plaintiff's Motion to Enforce Settlement Agreement is denied and the second audit for the period after July 1, 2005 should only reference work performed by employees of JJ Interior Specialties, Inc. and who were also on Norwood's payroll after July 1, 2005.


**MORTON DENLOW**
**United States Magistrate Judge**


Dated: June 13, 2008