IN UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES E. ANDERSON, Trustee on behalf Of PAINTER'S DISTRICT COUNCIL NO. 30 HEALTH AND WELFARE FUND, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> JJ INTERIOR SPECIALTIES, INC. and NORWOOD COMMERCIAL CONTRACTORS, INC. <br><br> Defendants <br> Third-Party Plaintiffs, <br><br> v. <br><br> CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, <br><br> Third-Party Defendants. | Case No. 08 CV 1934 <br><br> Judge St. Eve <br><br> Magistrate Judge Denlow |

**DEFENDANTS/THIRD-PARTY PLAINTIFFS' RESPONSE TO THIRD PARTY DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS**

Defendants/Third-Party Plaintiffs', NORWOOD COMMERCIAL CONTRACTORS, INC., ("Norwood") and JJ INTERIOR SPECIALTIES, INC. ("JJ Interior") (collectively, Defendants), by and through their attorneys, by Walter J. Liszka and Sean F. Darke, state as follows:

I.  **INTRODUCTION**

This case involves Plaintiffs' attempt to collect pension fund contributions from JJ Interiors or Norwood pursuant to JJ Interior's obligation under a collective bargaining agreement ("CBA") with the Painters Union. The contributions Plaintiffs seek on behalf of employees are

pursuant to Defendants'/Third-Party Plaintiffs' obligation arising from the CBA, however, in a prior dispute with Third-Party Defendants, Chicago Regional Council of Carpenters Pension Fund, contributions were paid for the same employees for work performed allegedly under the Carpenters' jurisdiction.

Plaintiffs claim JJ Interiors violated the Employee Retirement Income Security Act ("ERISA") and the Taft-Hartley Act ("Taft-Hartley") 29 U.S.C. §§1132 and 185 by failing to make contributions. Plaintiffs also purport to allege that Norwood is the alter ego of JJ Interior, or alternatively, that both entities are single or joint employers. Plaintiffs claim that Norwood is bound by the CBA and must therefore allow Plaintiffs to audit its records.

## II. ARGUMENT

### A. DEFENDANTS'/THIRD-PARTY PLAINTIFFS' AMENDED COMPLAINT SHOULD NOT BE DISMISSED

To survive a motion to dismiss "a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory...but such allegations need only state a possible claim, not a winning claim." *Herdrich v. Pegram*, 154 F.3d 362, 369 (7th Cir. 1998), rev'd on other grounds, 530 U.S. 211 (2000). See also *Panaras v. Liquid Container Indus. Corp.*, 74 F.3d. 786, 792 (7th Cir. 1998); *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000). A claim "must be presented with intelligibility sufficient for . . . opposing party to understand whether a valid claim is alleged and if so what it is." See *Wade v. Hopper*, 993 F.2d 1246, 1249 (7th Cir.1994).

Under the federal rule of notice pleading, "all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Leatherman v. Tarrant County Narcotics and Intelligence*

*Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163 (1993), *quoting Conley v. Gibson,* 355 U.S. at 47, 78 S.Ct., at 103. For fair notice to be given, a complaint must at least include some "operative facts" upon which a plaintiff bases his claim. *Lucien v. Preiner*, 967 F. 2d 1166, 1168 (7th Cir.1992) *quoting Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 198 (7th Cir.1985). Accordingly, Third-Party Plaintiffs' Complaint does comply with the requirements of the Federal Rules because it provides Third-Party Defendants with a short and plain statement of the claim, provides Third-Party Defendants with fair notice of what the claim is, and the grounds upon which it rests. The Complaint sets out, at the very least, a possible claim that Third-Party Defendants are liable, at least in part, to Plaintiffs for owed contributions that have already been paid to the Carpenters and are now sought by the Painters.

### B. DEFENDANTS STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

In a Rule 12(b)(6) motion, the court considers only the Complaint. See *Gibson v. City of Chicago,* 910 F.2d 1510, 1520-21 (7th Cir. 1990). All well-plead factual allegations are deemed true, and the courts draw all reasonable inferences in favor of the non-moving party. See *Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir. 1992). A 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957). The Complaint, however, must still allege either direct or inferential allegations relating to the material elements necessary to recover under a viable legal theory. *See Herdrich v. Pegram,* 154 F.3d 362, 369 (7th Cir. 1998). Defendants'/Third-Party Plaintiffs' complaint contains well-plead factual allegations. Defendants/Third-Party Plaintiffs set out the

facts it is relying upon to make its claim that the Carpenters are liable for part of the Painters claim against Defendants and Third-Party Plaintiffs.

The purpose of a motion to dismiss is not to decide the merits of the challenged claims but to test the sufficiency of the counterclaim and third-party complaint. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996). A court will only grant a motion to dismiss if it is impossible for the plaintiff to prevail under any set of facts that could be proven consistent with the allegations. *Forseth v. Village of Sussex*, 199 F.2d 363, 368 (7th Cir. 2000).

The set of facts consistent with the allegation that the Third-Party Defendants are liable to the Plaintiffs for contributions paid to the Third-Party Defendants that should have been paid to the Plaintiffs are as follows:

1. JJ Interiors is signatory to a collective bargaining agreement with two independent unions, the Carpenters and the Painters.

2. The Carpenters completed an audit of JJ Interior's records for the period of January 1, 2003 through June 30, 2005. As a result of that audit, Carpenters determined that JJ Interiors was delinquent in benefit fund contributions. Hours worked by Ralph Tamez and James Earnest were included in the audit finding.

3. On or about Fall 2007, pursuant to a settlement agreement signed by the parties with Magistrate Judge Denlow's assistance, JJ Interiors paid $325,000 in past due contributions as determined by the first audit.

4. The Carpenters conducted a second audit for the time period of July 1, 2005 through December 31, 2007. Any individual that worked for JJ Interiors and whose name appeared on the payroll of Norwood Commercial Contractors during that same time

4

period would be an individual for whom the Union can claim payments due. Hours worked by Abel Mariscal, James Earnest and Ralph Tamez were included in this audit.

5. The Painters filed a complaint on April 4, 2008 seeking past due benefit fund contributions. Abel Mariscal was named in the complaint.

6. Painting work does not fall within the Carpenter's jurisdiction. Article I defines bargaining unit employees as "Journeymen, Foremen, Apprentices and Trainees engaged in work at the construction site covered by the occupational jurisdiction of the "UNION" including but not limited to,......" The language of Article I includes a long list of occupations, none of which include painting work. Painting work is historically outside the scope of the Carpenters occupational jurisdiction.

7. The Painters Union typically covers painters, drywall tapers and applicators that use tools of the trade to apply or remove materials used for or preparatory to decorating or protecting surfaces.

8. The Carpenters CBA further states in Article I, "Union agrees that it will not interfere with existing practices or other union's affiliated with the building trades." The Painters are precisely one of those building trades referred to the in the CBA.

9. As presented in the amended complaint, Defendants have evidence that demonstrates the employees named in the audits were performing painting work. *See* Exhibit 1.

Accordingly, the Carpenters can not claim that Defendants can not prove a set of facts in support of their claim and thus Third-Party Defendants should not prevail in their 12(b)(6) motion to dismiss.

C.   DEFENDANTS COMPLAINT IS BASED IN FACT AND LAW

Third-Party Defendants allege in their 12 (b)(6) motion that the Carpenters are not seeking contributions for Abel Mariscal. Third-Party Defendants further allege there is no basis in fact or law upon which relief can be granted regarding contributions paid for Ralph Tamez and James Earnest.

Under Rule 14(a), a defendant who believes that a third person is liable to him for all or part of the plaintiff's claim against him may sue that person as a third-party defendant. *Chicago District Council of Carpenters Pension Fund v. F.H. Paschen/S.N. Nielsen*, 2005 WL 736588 (N.D. Ill.) (March 31, 2005). Defendants believe the Carpenters are liable for all or part of Plaintiff's claim because the Carpenters have made a determination of liability regarding all three above-named individuals and have in fact sought payment of past due contributions under the Carpenter's contract. The Painters are now in fact seeking contributions for the work performed by the same employees whom the Carpenters included in the last two audits they conducted. The Carpenter's collective bargaining agreement does not include painting work or even work such as drywall tapers or applicators. Deposition testimony revealed that JJ Interior employees were also performing painting work which is work traditionally covered under the jurisdiction of the painters CBA. *See* Deposition testimony by Mr. Ralph Tamez Exhibit 1.

In support of its position that Defendants and Third-Party Plaintiffs have no basis in law, Third-Party Defendants cite the Seventh Circuit's non-precedential decision in *Trustees of Glaziers Union Local No. 27 Welfare & Pension Funds v. Gibson*, 99 Fed.Appx. 740, 741 (7th Cir. Apr.20, 2004). The *Glaziers* case is distinct from this case because in the *Glaziers* case the employer was signatory to two collective bargaining agreements with two independent unions

that specifically covered the same kind of work that was the subject of the dispute. There the employer did not dispute that the work was covered by both unions and he simply chose to assign it to one union over the other. In this particular case, there is no overlapping jurisdiction. Painting work is not covered by the Carpenters' CBA, thus the issue in the *Glaziers* case is inapposite to the instant case.

Section 515 of ERISA states, in relevant part: "Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collective bargaining agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement." 29 U.S.C §1145. For §515 to apply, the conditions triggering an obligation under the relevant CBA agreement must first be met. *Teamsters Industrial Employees Welfare Fund v. Rolls Royce Motor Cars, Inc.*, 989 F.2d 132, 138 (3d Cir. 1993) (noting that CBA's trigger obligations under ERISA §515 and that plaintiffs are not entitled to enforce a nonexistent contractual obligation).

Here the Carpenters' CBA does not create an obligation for JJ Interiors to pay the Carpenters Funds for work that is covered by the Painters Union. Article XII states that contributions must be made "for all employees covered by this agreement." The employees covered by the agreement are those employees performing work under the jurisdiction of the CBA. Article I enumerates the categories of work that fall within the Carpenters' jurisdiction. Painting work is not one of the categories, thus it falls outside of the Carpenters' jurisdiction and thus the employer is not obligated to make contributions for work not falling under the Carpenters' jurisdiction. The employees for which the Painters are now seeking past due contributions are precisely those employees for which contributions were already paid or alleged to be paid to the Carpenters' Union. Those employees for which the Carpenters are charging

hours worked and contributions owed were not performing work covered by the Carpenters' CBA. Rather the work they were performing was work covered by the Painters' CBA. The relevant CBA does not create a duty for the employer to contribute to the union benefit funds for work performed by members of another union. See *Trs. For Mich. BAC Health Care Fund v. OCP Contrs., Inc.* 136 Fed. Appx. 849, 851 (6th Cir. June 17, 2005). Furthermore, the relevant CBA is silent on the issue of double paying to the benefit funds and thus there is no contractual obligation under the Carpenters' CBA to make contributions for work performed under a competing CBA. See *Cement Mason's Union Local No. 592 Pension Fund v. Allen Zappone*, 501 F. Supp.2d 714, 718 (E.D. Penn. Aug. 16, 2007).

### III.  CONCLUSION

Defendants/Third-Party Plaintiffs have stated a claim for which relief could be granted. Defendants/Third-Party Plaintiffs have alleged sufficient facts to support its claim that there is no contractual obligation to pay the Carpenters' Funds for work outside of its jurisdiction. The Defendants/Third-Party Plaintiffs have also alleged sufficient facts to support its claim that the Third-Party Defendants should reimburse the Plaintiffs for their claim of delinquent contributions so as to avoid a double payment. As such, Third-Party Defendant's 12(b)(6) motion to dismiss should be denied.

Dated this 10th day of July, 2008

                                            **JJ INTERIOR SPECIALTIES INC. and NORWOOD COMMERCIAL CONTRACTORS, INC.**

                                            By:   s/ Sean F. Darke
                                                One of Their Attorneys

Walter J. Liszka
Sean F. Darke
Wessels Pautsch & Sherman P.C.
33 West Monroe, Suite 1120
Chicago, IL 60603
(312) 629-9300 (Telephone)
(312) 629-9301 (Facsimile)

**ATTORNEYS FOR DEFENDANTS/THIRD PARTY PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 10, 2008, he served a true and correct copy of **DEFENDANTS/THIRD-PARTY PLAINTIFFS' RESPONSE TO THIRD PARTY DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS** to the Clerk of Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following individual(s):

>Terrance McGann
>Karen Rioux
>Whitfield & McGann
>111 E. Wacker Drive, Suite 2600
>Chicago, Illinois 60601
>
>Marisel A. Hernandez
>Mark Garrett Hohimer
>William Walter Leathem
>Jacobs, Burns, Orlvoe, Stanton & Hernandez
>122 S. Michigan Avenue, Suite 1720
>Chicago, Illinois 60603

>s/ Sean F. Darke
>Sean F. Darke

1

```
          IN THE DISTRICT COURT OF THE UNITED STATES
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION


CHICAGO REGIONAL COUNCIL OF        )
CARPENTERS PENSION FUND,           )
CHICAGO REGIONAL COUNCIL OF        )
CARPENTERS WELFARE FUND,  THE      )
CHICAGO REGIONAL COUNCIL OF        )
CARPENTERS APPRENTICE &            )
TRAINEE PROGRAM FUND, and          )
their Trustees,                    )
                                   )
                 Plaintiffs,       ) Judge Harry D.
                                   ) Leinenweber
         -vs-                      ) NO. 06 C 1145
                                   )
JJ INTERIOR SPECIALTIES,           )
INC., and NORWOOD COMMERCIAL       )
CONTRACTORS, INC.,                 )
                                   )
                 Defendants.       )
```

 14    Deposition of RALPH TAMEZ taken before

 15  PAULINE STROHL, C.S.R., and Notary Public, pursuant

 16  to the Federal Rules of Civil Procedure for the

 17  United States District Courts pertaining to the

 18  taking of depositions, at Suite 2600, 111 East Wacker

 19  Drive, in the City of Chicago, Cook County, Illinois

 20  at 11:30 a.m. on October 9th, 2007.

 21     There were present at the taking of this

 22  deposition the following counsel:



            LAURA L. KOOY REPORTING, LTD.
                 (312) 782-KOOY (5669)

2

WHITFIELD, McGANN & KETTERMAN by
MS. KAREN RIOUX,
111 East Wacker Drive, Suite 2600
Chicago, Illinois  60601
(312) 251-9700

   on behalf of the Plaintiffs;

WESSELS & PAUTSCH, P.C. by
MR. SEAN DARKE,
321 South Plymouth Court, Suite 900
Chicago, Illinois  60604
(312) 461-0500

   on behalf of the Defendants.

- - - - -

EXAMINATION INDEX

|  | PAGE |
|---|---|
| By Ms. Rioux | 2, 79 |
| By Mr. Darke | 58 |

- - - - -

(Witness duly sworn.)
RALPH TAMEZ,

called as a witness herein, having been first duly sworn, was examined upon oral interrogatories and testified as follows:

EXAMINATION

BY MS. RIOUX:

   Q   Mr. Tamez, could you please state your name and spell your last name for the court reporter?

   A   My name is Ralph Tamez, R-a-l-p-h, T-a-m-e-z.

   MS. RIOUX:  Let the record reflect that this is

34

1  employees of Norwood?
2      A    Yes.
3      Q    And how did you know they were employees of
4  Norwood?
5      A    Well, they have worked for Norwood for quite
6  a few years.  They have been employed with them for
7  quite a few years so I know them as Norwood.  Any of
8  their jobs that were out of town, most of their jobs
9  out of town were under Norwood.
10     Q    And what type of work did they perform at
11 this Gurnee job, the Lane Bryant store?  And when I
12 say they, I mean Joe, Alex and Oscar.
13     A    Joey helped me with some framing, some
14 drywall.  Oscar helped me with the paneling.  When I
15 say paneling that's a slat wall.  He helped me with
16 the slat wall.  He helped me with taping.  He did
17 some ceiling work, some acoustical ceiling work there
18 as well.
19          And then Alejandro, he helped me with the
20 hanging the doors.  He helped me with, when I say
21 hanging the doors, that's installing the doors,
22 installing the frames and installing the doors, doing
23 the hardware.  Putting up shelves in the bathrooms.
24 Painting, he helped me with painting.  As far as

35

1  Oscar, Oscar also helped me with painting there.
2      Q   Were there any other employees, carpenters
3  employed by JJ or Norwood on this job?
4      A   Vince Soria came and he helped me for a
5  couple of days.  Vince and Abel.  Abel, I think his
6  last name is Madrigal, I think.  He came and he
7  helped me for a number of days.  Maybe about a week,
8  week and a half, Vince and Abel came and helped me.
9      Q   Did you ever have a conversation with Sam or
10 Doug as to why there were Norwood employees on a JJ
11 job?
12     A   Well, really, yeah.  If any union delegates
13 or anything like that were to come by, anybody under
14 Norwood would pretty much have to walk off the job,
15 would have to leave the job, at least until the
16 delegates were gone.  And then they'd come back maybe
17 the following day or a couple hours later.
18     Q   Did this in fact occur on the Lane Bryant job
19 in Gurnee where the Norwood employees walked off the
20 job, if a union official --
21     A   Yes, there was a couple times where Oscar
22 would have to go run.
23     Q   Did you speak to any representatives of the
24 carpenters union while you were working in Gurnee on

1   2005?
2   A   Yes.
3   Q   Now you also mentioned that you performed
4   work with Joe Earnest, Alejandro.
5   A   Yes.
6   Q   And a brother-in-law/cousin of Doug Hudson,
7   possibly nephew?
8   A   There were several cousins and
9   brother-in-laws that worked.  Several cousins and
10  brother-in-laws of Doug Hudson that worked for the
11  company of Norwood.
12  Q   Now you mentioned that for Joe Earnest, that
13  he performed some carpentry work.  Were there any
14  other jobs that he performed other than carpentry?
15  A   ~~He would paint.  Sometimes they would trust~~
16  ~~him to paint.~~  He would do more labor work, too.  If
17  you needed something moved or if you needed a wall
18  knocked down or something like that, to that effect.
19  Or you know, pretty much clean up.  What we would do
20  is at the beginning of the job, you would have a
21  demolition phase where you have to go there and demo
22  whatever walls.  Joey would sometimes be present.
23  Q   Now is this when he was working for or you
24  were working for JJ?

in Indiana.  During '04 and '05 it was a lot of work out there in Indiana.

Q  Okay.  Anything else you can recall, any other jobs?

A  No, not offhand.

MS. RIOUX:  I have no further questions.

MR. DARKE:  I have no follow-up.

MS. RIOUX:  Mr. Tamez, you have the right to review the transcript and make any corrections, but no substantive changes to your testimony.  Or you can waive your signature and just allow it to go into the record, your testimony as you stated it today.

A  Okay.

MS. RIOUX:  Would you like to waive your signature and not review the transcript?

A  Yes, I don't really feel the need to review it.

MS. RIOUX:  Okay.

- - - - -

```
1      STATE OF ILLINOIS    )
                            ) ss:
2      COUNTY OF COOK       )

3
              I, PAULINE STROHL, a Certified Shorthand
4      Reporter within and for the State of Illinois, do
       hereby certify:
5
              That previous to the commencement of the
6      examination of the witness, the witness was duly
       sworn to testify the whole truth concerning the
7      matters herein;

8             That the foregoing deposition was reported
       stenographically by me, was thereafter reduced to a
9      printed transcript by me, and constitutes a true
       record of the testimony given and the proceedings
10     had;

11            That the said deposition was taken before me
       at the time and place specified;
12
              That the reading and signing by the witness
13     of the deposition transcript was agreed upon as
       stated herein;
14
              That I am not a relative or employee or
15     attorney or counsel, nor a relative or employee of
       such attorney or counsel for any of the parties
16     hereto, nor interested directly or indirectly in the
       outcome of this action.
17
              IN WITNESS WHEREOF, I do hereunto set my
18     hand this  12th  day of  October  , 2007

19
                                    _____
20                                  PAULINE STROHL, CSR
21     [Notary Seal:                 Notary Public
        Pauline Strohl                CSR No. 084-001253
22      My Commission Expires
        August 30, 2009]
23

24
```